BRIAN SHULL, IL Bar No. 6293797
JULIA A. HORWITZ, DC Bar No. 1018561
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Phone: (202) 326-3734
Fax: (202) 326-3062
bshull@ftc.gov
jhorwitz@ftc.gov

ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>KOCHAVA INC., corporation,<br><br>    Defendant. | **Case No. 2:22-cv-377**<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), which authorizes the FTC to seek, and the Court to order, permanent injunctive relief and other relief for Defendant's acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).   Defendant's violations are in connection with acquiring consumers' precise geolocation data and selling the data in a format that allows entities to track the consumers' movements to and from sensitive locations, including, among others, locations associated with medical care, reproductive health, religious worship, mental health,

1

temporary shelters, such as shelters for the homeless, domestic violence survivors, or other at-risk populations, and addiction recovery.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

3.    Venue is proper in this District under 28 U.S.C. § 1391 (b)(1), (b)(2), and (c)(2) and 15 U.S.C. § 53(b).

## PLAINTIFF

4.    The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys.   15 U.S.C. §§ 41–58.   The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

## DEFENDANT

5.    Defendant Kochava Inc. ("Kochava") is a Delaware corporation with its principal place of business at 201 Church Street, Sandpoint, Idaho 83864.   Kochava transacts or has transacted business in this District and throughout the United States.

## COMMERCE

6.    At all times relevant to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANT'S BUSINESS ACTIVITIES

### Kochava Sells Precise Location Information for Hundreds of Millions of Mobile Devices

7.      Kochava is, among other things, a location data broker that provides its customers massive amounts of precise geolocation data collected from consumers' mobile devices. Through Kochava's services, customers can "[l]icense premium data" including the "precision location" of a consumer's mobile device.

8.      Kochava collects a wealth of information about consumers and their mobile devices by, among other means, purchasing data from other data brokers to sell to its own customers.

9.      Kochava then sells customized data feeds to its clients to, among other purposes, assist in advertising and analyzing foot traffic at stores or other locations.   Among other categories, Kochava sells timestamped latitude and longitude coordinates showing the location of mobile devices.   For example, in the Amazon Web Services ("AWS") Marketplace, a website through which customers could subscribe to Kochava's data feed until approximately June 2022, Kochava displayed the following table explaining the data it sells:

| Field name | Description | Example | Data type |
|---|---|---|---|
| device_id_value | Unique device ID associated with the device | - | string |
| device_id_type | Device type associated with the device ( IDFA and ADID only ) | - | string |
| activity_timestamp | Timestamp of when the device hits the location | - | timestamp |
| latitude | Precise latitude of the device | - | string |
| longitude | Precise longitude of the device | - | string |
| horizontal_accuracy | Horizontal accuracy of the precision of the lat and lon ( in meters) | - | string |
| ip_address | IP Address of the device | - | string |

10.      As noted in Kochava's explanation, each pair of timestamped latitude and longitude coordinates is associated with a "device_id_value," which is also known as a Mobile Advertising ID ("MAID").   A MAID is a unique identifier assigned to a consumer's mobile

3

device to assist marketers in advertising to the consumer.   Although a MAID may be changed by a consumer, doing so requires the consumer to proactively reset the MAID on the consumer's mobile device.

11.     In describing its product in the online marketplace, Kochava has asserted that it offers "rich geo data spanning billions of devices globally."   It has further claimed that its location data feed "delivers raw latitude/longitude data with volumes around 94B+ geo transactions per month, 125 million monthly active users, and 35 million daily active users, on average observing more than 90 daily transactions per device."

### Kochava Provides Public Access to Consumers' Location Data

12.     Kochava has sold access to its data feeds on online data marketplaces that are publicly accessible.   Kochava typically charges a monthly subscription fee of thousands of dollars to access its location data feed but has also offered a free sample (the "Kochava Data Sample").   Kochava has made the Kochava Data Sample publicly available with only minimal steps and no restrictions on usage.

13.     For example, the Kochava Data Sample was available on the AWS Marketplace until approximately June 2022.   In order to access the Kochava Data Sample on the AWS Marketplace, a purchaser needed a free AWS account.   A purchaser would then search the AWS marketplace for "Kochava," which resulted in two available datasets appearing – a $25,000 location data feed subscription and the Kochava Data Sample.

14.     The Kochava Data Sample consisted of a subset of the paid data feed, covering a rolling seven-day period.   It was formatted as a text file, which could be converted into a spreadsheet.   Put into a spreadsheet, one day of the Kochava Data Sample contained over

4

327,480,000 rows and 11 columns of data, corresponding to over 61,803,400 unique mobile devices.

15.     When an AWS purchaser clicked on the "subscribe" button for the Kochava Data Sample feed, the purchaser was directed to a screen that included a "Subscription terms" notification that stated that the Kochava Data Sample "has been marked by the provider [*i.e.,* Kochava] as containing sensitive categories of information:"



16.     Below this notice, a form was displayed, requesting the purchaser's company name, name of the purchaser, email address, and intended use case:

17.     A purchaser could use an ordinary personal email address and describe the intended use simply as "business."   The request would then be sent to Kochava for approval. Kochava has approved such requests in as little as 24 hours.

18.     Once Kochava approved the request, the purchaser was notified by email and then gained access to the data, along with a data dictionary explaining the categories of data provided.

19.     The Kochava Data Sample included precise location data gathered in the seven days prior to the date Kochava approved the subscription request.

**Kochava's Data Can Be Used to Identify People and Track Them to Sensitive Locations**

20.     Precise geolocation data associated with MAIDs, such as the data sold by Kochava, may be used to track consumers to sensitive locations, including places of religious worship, places that may be used to infer an LGBTQ+ identification, domestic abuse shelters, medical facilities, and welfare and homeless shelters.   For example, by plotting the latitude and longitude coordinates included in the Kochava data stream using publicly available map programs, it is possible to identify which consumers' mobile devices visited reproductive health clinics.   Further, because each set of coordinates is time-stamped, it is also possible to identify when a mobile device visited the location.   Similar methods may be used to trace consumers' visits to other sensitive locations.

21.     The location data provided by Kochava is not anonymized.   It is possible to use the geolocation data, combined with the mobile device's MAID, to identify the mobile device's user or owner.   For example, some data brokers advertise services to match MAIDs with "offline" information, such as consumers' names and physical addresses.

6

22.     Even without such services, however, location data can be used to identify people. The location data sold by Kochava typically includes multiple timestamped signals for each MAID.   By plotting each of these signals on a map, much can be inferred about the mobile device owners.   For example, the location of a mobile device at night likely corresponds to the consumer's home address.   Public or other records may identify the name of the owner or resident of a particular address.   Indeed, Kochava has recognized that its data may be used to track mobile devices to home addresses.   In its marketing on the AWS Marketplace, it has suggested "Household Mapping" as a potential use case of the data:

**HOUSEHOLD MAPPING:**

Group devices by dwelling time and frequency at shared locations to map individual devices to households.

23.     Kochava employs no technical controls to prohibit its customers from identifying consumers or tracking them to sensitive locations.   For example, it does not employ a blacklist that removes from or obfuscates in its data set location signals around sensitive locations including, among others, locations associated with medical care, reproductive health, religious worship, mental health, temporary shelters, such as shelters for the homeless, domestic violence survivors, or other at-risk populations, and addiction recovery.

**Kochava's Practices Cause and Are Likely to Cause Substantial Injury to Consumers**

24.     As described above, the data sold by Kochava may be used to identify individual consumers and their visits to sensitive locations.   The sale of such data poses an unwarranted intrusion into the most private areas of consumers' lives and causes or is likely to cause substantial injury to consumers.

7

25.      For example, the data may be used to identify consumers who have visited an abortion clinic and, as a result, may have had or contemplated having an abortion. In fact, in just the data Kochava made available in the Kochava Data Sample, it is possible to identify a mobile device that visited a women's reproductive health clinic and trace that mobile device to a single-family residence.   The data set also reveals that the same mobile device was at a particular location at least three evenings in the same week, suggesting the mobile device user's routine. The data may also be used to identify medical professionals who perform, or assist in the performance, of abortion services

26.      As another example, the data could be used to track consumers to places of worship, and thus reveal the religious beliefs and practices of consumers. In fact, the Kochava Data Sample identifies mobile devices that were located at Jewish, Christian, Islamic, and other religious denominations' places of worship.

27.      As another example, the data could be used to track consumers who visited a homeless shelter, domestic violence shelter, or other facilities directed to at-risk populations. This information could reveal the location of consumers who are escaping domestic violence or other crimes. In addition, because Kochava's data allows its customers to track consumers over time, the data could be used to identify consumers' past conditions, such as homelessness.   In fact, the Kochava Data Sample identifies a mobile device that appears to have spent the night at a temporary shelter whose mission is to provide residence for at-risk, pregnant young women or new mothers.

28.     As another example, the data could be used to track consumers who have visited addiction recovery centers.   The data could show how long consumers stayed at the center and whether a consumer relapses and returns to a recovery center.

29.     Identification of sensitive and private characteristics of consumers from the location data sold and offered by Kochava injures or is likely to injure consumers through exposure to stigma, discrimination, physical violence, emotional distress, and other harms.

30.     These injuries are exacerbated by the fact that, as described above, Kochava lacks any meaningful controls over who accesses its location data feed, including the Kochava Data Sample.

31.     The collection and use of their location data are opaque to consumers, who typically do not know who has collected their location data and how it is being used.   Indeed, once information is collected about consumers from their mobile devices, the information can be sold multiple times to companies that consumers have never heard of and never interacted with. Consumers have no insight into how this data is used – they do not, for example, typically know or understand that the information collected about them can be used to track and map their past movements and that inferences about them and their behaviors will be drawn from this information.   Consumers are therefore unable to take reasonable steps to avoid the above-described injuries.

32.     The harms described above are not outweighed by countervailing benefits to consumers or competition.   Defendant could implement safeguards to remove data associated with sensitive locations from its data feeds.   Such safeguards could be implemented at a reasonable cost and expenditure of resources.

*     *     *

33.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendant is violating or is about to violate laws enforced by the Commission.

## VIOLATIONS OF THE FTC ACT

34.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

35.     Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

### Count I

### Unfair Sale of Sensitive Data

36.     In numerous instances, Defendant has sold, licensed, or otherwise transferred precise geolocation data associated with unique persistent identifiers that reveal consumers' visits to sensitive locations, including, among others, locations associated with medical care, reproductive health, religious worship, mental health, temporary shelters, such as shelters for the homeless, domestic violence survivors, or other at-risk populations, and addiction recovery.

37.     Defendant's actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

10

38.     Therefore, Defendant's acts or practices as set forth in Paragraph 35 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n).

## <u>CONSUMER INJURY</u>

39.     Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendant's violations of the FTC Act.   Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers and harm the public interest.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff requests that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act by Defendant; and

B.     Award any additional relief as the Court determines to be just and proper.

Respectfully submitted,


Dated:   August 29, 2022          /s Brian Shull

BRIAN SHULL
JULIA A. HORWITZ
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-3734 (Shull)
(202) 326-2269 (Horwitz)
bshull@ftc.gov
jhorwitz@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION