CRAIG J. MARIAM  (SBN: 11061)
cmariam@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
999 W. Main Street, #100
Boise, ID 83702
Telephone:  (208) 49-9095
Facsimile:  (208) 957-5704

Attorneys for Defendant
KOCHAVA, INC.


## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## NORTHERN (COEUR D'ALENE) DIVISION


| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | CASE NO. 2:22-cv-00377-BLW |
| | ) | |
| Plaintiff, | ) | Honorable B. Lynn Winmill |
| | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **OF MOTION TO DISMISS** |
| KOCHAVA INC., corporation | ) | **PURSUANT TO FED. R. CIV. P.** |
| | ) | **12(b)(6)** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |


TO THIS HONORABLE COURT:

    Kochava, Inc. ( "Kochava") hereby respectfully submits its brief in support of its Motion

to Dismiss the Complaint of the Federal Trade Commission ( "FTC") pursuant to Federal Rule of

Civil Procedure 12(b)(6).

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND .......................................................................... 3

   A.   Kochava and the Kochava Collective ................................................. 3

   B.   Geolocation Data Services .................................................................. 4

   C.   The Data in the Marketplace ............................................................... 4

III.   PLEADING STANDARD ............................................................................. 6

IV.   MERIT STANDARDS AND ARGUMENT .................................................. 6

   A.   There Exists No Underlying Predicate Violation Supporting the FTC's
        Claim .................................................................................................. 6

   B.   The FTC cannot meet the requirements of Section 5(a) of the FTCA, 15
        U.S.C. § 45(a), (n) .............................................................................. 8

      1.   The FTC cannot assert an ongoing or imminent violation ......................... 8

      2.   The FTC cannot assert an unfair act or practice in violation of
           established public policy .................................................................. 9

      3.   The conduct as alleged is not immoral, unethical, oppressive,
           unscrupulous or substantially injurious to consumers ............................ 11

      4.   The FTC's proposed injunction is impermissibly vague ........................ 13

   C.   The FTC Cannot Prosecute the Instant Claims Without Running Afoul of
        Constitutional Mandates ................................................................... 14

      1.   The FTC lacks Constitutional authority to initiate litigation seeking
           injunctive relief ............................................................................. 14

         a.   The 1935 FTC and its quasi-legislative and quasi-judicial
              powers ................................................................................ 14

         b.   Congress unconstitutionally grants the executive powers to
              the present-day FTC in 1970s ................................................. 16

      2.   The non-delegation doctrine and major questions doctrine prohibit
           the FTC from brining this lawsuit............................................................. 17

V.    CONCLUSION..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Fin. Servs. v. FTC*,
767 F.2d 957 (D.C. Cir. 1985) ................................................................ 12

*AMG Capital Mgmt., LLC v. FTC*,
141 S. Ct. 1341 (2021) ............................................................................ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................. 6, 9

*Barr v. American Ass'n of Political Consultants*,
140 S. Ct. 2335 (2020) ........................................................................... 17

*Bell Atl. Corp v. Twombly*,
550 U.S. 544 (2007) ............................................................................. 6, 9

*Bowsher v. Synar*,
478 U.S. 714 (1986) ............................................................................... 17

*Buckley v. Valeo*,
424 U.S. 1 (1976) ............................................................................. 16, 17

*City of Arlington v. FCC*,
569 U.S. 290 (2013) ............................................................................... 18

*Collins v. Yellen*,
141 S. Ct. 1761 (2020) ........................................................................... 16

*F.T.C. v. Sperry and Hutchinson Company*,
405 U.S. 233 (1972) ................................................................. 1, 9, 11, 12

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ................................................................................. 2

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ............................................................................... 19

*FTC v. Credit Bureau Ctr., LLC*,
937 F.3d 764 (7th Cir. 2019) ................................................................... 8

*FTC v. Facebook, Inc.*,
560 F. Supp. 3d 1 (D.D.C. 2021) ............................................................. 8

*FTC v. Meta Platforms, Inc.*,
  No. 1:20-cv-03590 (D.C. 2020) ............................................................. 7

*Gundy v. United States*,
  139 S. Ct. 2116 (2019) .......................................................................... 18

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ................................................................. 2, 14, 15, 16

*In re Int'l Harvester*,
  104 F.T.C. 949 (1984) ........................................................................... 12

*In re Smartphone Geolocation Data Application*,
  977 F. Supp. 2d 129 (E.D.N.Y. 2013) ..................................................... 4

*In the Matter of Snapchat, Inc.*,
  No. 132-3078 (FTC, December 23, 2014) ................................................ 7

*Jeter v. Credit Bureau Inc.*,
  760 F.2d 1168 (11th Cir. 1985) ............................................................. 11

*LabMD, Inc. v. Fed. Trade Comm'n*,
  894 F.3d 1221 (11th Cir. 2018) ............................................. 2, 9, 10, 13, 14

*LeBlanc v. Unifund CCR Partners*,
  601 F.3d 1185 (11th Cir. 2010) ............................................................. 11

*Mistretta v. United States*,
  488 U.S. 361 (1989) ............................................................................. 10

*Seila Law LLC v. CFPB*,
  140 S. Ct. 2183 (2020) ...................................................... 2, 3, 14, 15, 16, 17

*Skilling v. United States*,
  561 U.S. 358 (2010) ............................................................................. 10

*Spiegel, Inc. v. FTC*,
  540 F.2d 287 (7th Cir. 1976) ........................................................... 11, 12

*Touby v. U.S.*,
  500 U.S. 160 (1991) ............................................................................. 17

*United States of America v. Musical.ly, Inc.*,
  No. 2:19-cv-1439 (C.D. Cal. 2019) ......................................................... 7

*United States of America v. Twitter, Inc.*,
  No. 3:22-cv-03070 (N.D. Cal. 2022) ........................................................ 7

KOCHAVA, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
FRCP 12(b)(6)

*Usher v. City of Los Angeles*,
828 F.2d 556 (9th Cir. 1987) ........................................................................... 6

*Util. Air Regulatory Grp. v. EPA*,
573 U.S. 302 (2014) ...................................................................................... 19

*West Virginia v. EPA*,
142 S. Ct. 2587 (2022) ................................................................................... 10

**Statutes**

12 U.S.C. § 1232g ............................................................................................ 7

15 U.S.C. § 41 ............................................................................................. 2, 15

15 U.S.C. § 45 ................................................................................................ 12

15 U.S.C. § 45(a) ........................................................................... 1, 6, 8, 10, 13

15 U.S.C. § 45(n) .............................................................................. 1, 6, 8, 10

15 U.S.C. § 5(n) .............................................................................................. 12

15 U.S.C. § 53(b) ........................................................................ 3, 6, 8, 14, 16, 17

15 U.S.C. § 57 ................................................................................................ 17

15 U.S.C. § 6801 .............................................................................................. 7

15 U.S.C. §§ 1681-1681x ................................................................................. 7

15 U.S.C. §§ 6501–6505 ................................................................................... 7

42 U.S.C. § 201 ............................................................................................... 7

Va. Code Ann. § 59.1-575 (2023) ....................................................................... 3

**Other Authorities**

U.S. Const. Art. I, § 1 ................................................................................ 17, 18

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 6

Fed. R. Civ. P. 65 ........................................................................................... 13

KOCHAVA, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
FRCP 12(b)(6)

**Regulations**

Pub. L. No. 63-203,
    ch. 311, §§ 5-7, 38 Stat. 717, 719-22 (1914)............................................................................ 15

Pub. L. No. 93-153,
    § 408(f), 87 Stat. 576, 592 (1973)........................................................................................... 16

KOCHAVA, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
FRCP 12(b)(6)

## I.    INTRODUCTION

The FTC seeks to enjoin Kochava's business activities by attempting to hold Kochava liable for purported violations of non-existent laws and regulations, and for alleged *past* conduct. Because no law prohibits the alleged business activities, the FTC is creating new law and therefore vaguely and broadly alleges that Kochava has committed "unfair or deceptive trade practices" in violation of Section 5(a) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §45(a). The Complaint fails for each of several reasons.

First, the FTC does not meet the requirements of Section 5(a) of the FTCA, 15 U.S.C. § 45(a) and (n). Even if the allegations were true (they are *not*), the FTC's sole claim rests entirely on "long-past conduct," which does not meet the "ongoing" and "imminent" requirement to bring a claim under Section 13(b). *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 158-59 (3d Cir. 2019) (The pleadings require more than simply alleging "a violation in the distant past and a vague and generalized likelihood of recurrent conduct."). The FTC itself concedes that its entire Complaint is premised on a data sample from AWS Marketplace that is no longer available in the marketplace. *See* Complaint, ¶ 13 ("the Kochava Data Sample was available on the AWS Marketplace until approximately June 2022.").

Second, the "unfair" practice alleged is not, on its face, a public policy violation by Kochava, nor is the alleged conduct immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *F.T.C. v. Sperry and Hutchinson Company*, 405 U.S. 233, 244, fn. 5 (1972) ("a practice is unfair (1) when it offends established public policy and (2) when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"). The alleged violations are predicated on alleged misconduct of third parties with whom Kochava lacks privity, and whose speculative and sensationalized tracking of consumers to supposed sensitive

KOCHAVA, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
FRCP 12(b)(6)

locations for nefarious purposes has no nexus with Kochava or with the legitimate pro-competitive purposes of its geolocation data services.

Third, the FTC's Complaint and its attempted creation of new law, disguised as alleged "unfair" conduct, violates the fair notice requirement of the Constitution's Due Process Clause. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."). The FTC did not afford Kochava with constitutionally mandated fair notice.

Fourth, the FTC is seeking an injunction that is vague and uncertain on its face: it seeks "to prevent future violations of the FTC Act by [Kochava]." The basis for the proposed injunction is the FTC's allegations of consumer injury that are nothing more than speculative hypotheticals about how unidentified third parties could potentially misuse Kochava's data (*e.g.*, "the data may be used," "the data could be used"). *See* Complaint, ¶¶ 25-28. As such, any injunction based on these hypothetical scenarios is improper because it will be impermissibly vague and uncertain as to the conduct that it seeks to enjoin. *LabMD, Inc. v. Fed. Trade Comm'n*, 894 F.3d 1221, 1237 (11th Cir. 2018) ("an injunction identical to the FTC cease and desist order at issue would be unenforceable under a district court's contempt power" because "Commission's cease and desist order …. does not enjoin a specific act or practice.")

Fifth, the FTC lacks valid constitutional authority to bring this action because Congress unconstitutionally vested the independent FTC with executive litigation powers. *See* 15 U.S.C. § 41; *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) (interpreting *Humphrey's Executor v. United States*, 295 U.S. 602 (1935)) (executive litigation authority may not be granted to officers the President cannot remove, in order to ensure "control[] [of] those who execute the laws.")

Specifically, Congress appears to have usurped the US Constitution when it amended the FTCA in 1973 to grant the independent FTC the executive litigation powers to seek permanent injunctive relief, set forth in 15 U.S.C. § 53(b). *See id.* Relatedly, under the non-delegation and major questions doctrines, the FTC is precluded from bringing these claims because the FTC is not simply interpreting existing law or promulgating administrative rules and regulations.

## II.  FACTUAL BACKGROUND

### A.  Kochava and the Kochava Collective

Kochava provides a range of digital analytics services to its clients, including the Kochava Collective[1] that serves as an aggregator of certain data made available through Kochava's proprietary data marketplace ("the Marketplace"). The FTC's Complaint is concerned with alleged precise[2] geolocation data that the FTC (incorrectly) alleges Kochava acquires and sells to its customers. Complaint, ¶ 1. The FTC acknowledges that Kochava obtains the data from third parties. *Id.* at ¶ 8.

/ / /

---

[1] Kochava populates the Collective with audience data received with consent from device users and third-party suppliers.

[2] The Complaint alleges that Kochava sells "timestamped latitude and longitude coordinates … associated with a 'device_id_value,' which is also known as a Mobile Advertising ID ("MAID"). Complaint, ¶ 10. The Complaint also alleges that "precise geolocation data [is] associated with MAIDs …. [and] may be used to track consumers to sensitive locations." *Id.* at ¶ 20. The FTC thus misrepresents the truth by alleging that the timestamped latitude and longitude coordinates are the same as "precise geolocation data," which is simply incorrect. "'Precise geolocation data' means information derived from technology, including but not limited to global positioning system ["GPS"] level latitude and longitude coordinates or other mechanisms, that *directly identifies the specific location* of a *natural person* with precision and accuracy within a radius of 1,750 feet." Va. Code Ann. § 59.1-575 (2023)(emphasis added). As such, precise geolocation data is akin to GPS' real-time coordinates of an individual's location – which is not the case here because Kochava does not provide real-time coordinates as the FTC itself concedes, "the data is gathered in the seven days prior to the date Kochava approved the subscription request." Complaint, ¶ 19.

### B.       Geolocation Data Services

Geolocation data services are a vital and integral part of our modern lives and their benefits are undisputed for ad-tech companies, governments and consumers. *See In re Smartphone Geolocation Data Application*, 977 F. Supp. 2d 129, 138-139 (E.D.N.Y. 2013) ("Geolocation technology provides a broad range of functions, from the vital to the prosaic"; listing vital services such as "enhanced 9–1–1 systems transmit geolocation data to 9–1–1 dispatchers"; "turn-by-turn driving directions", "localized weather information"; "recovery of lost or stolen smartphones"; "parental monitoring of children"; and "allowing advertisers access to geolocation data to promote nearby businesses.") Geolocation services serve pro-competitive, legitimate, and essential purposes in the modern-day commerce ecosystem. *In re Smartphone Geolocation Data Application*, 977 F. Supp. 2d at 138-139.  In fact, the FTC itself acknowledges that consumer products and services that utilize precise geolocation data "make consumers' lives easier and more efficient." Request for Judicial Notice ("RJN"), <u>Exhibit A</u>.

### C.       The Data in the Marketplace

The Marketplace contains only raw data, which may include latitude and longitude coordinates and Mobile Advertising Identifier ("MAID") associated with a device and which may be used by third parties for advertising and mobile analytics. As the FTC explains, a MAID is a unique identifier assigned to a mobile device to assist marketers in advertising. Although latitude and longitude coordinates and MAID are data points that are part of the data feed in the Marketplace, Kochava does not uniquely identify end users. Complaint, ¶¶ 9-11. And, as the FTC acknowledges, a MAID can be changed by a consumer. *Id*. at ¶ 10.

The FTC alleges that Kochava provides public access to certain (non-end user) data but the only instance of such purported conduct (which is not a violation of law in any event) in the

Complaint – a free data sample on the AWS Marketplace ("Kochava Data Sample") – is no longer available. Complaint, ¶¶ 12-19. As the FTC acknowledges, "the Kochava Data Sample was available on the AWS Marketplace until approximately June 2022." *Id.* at ¶ 12.

The FTC alleges that the sample "included precise location data gathered in *the seven days prior to the date Kochava approved the subscription request*." Complaint, ¶ 19 (emphasis added). But, unlike a GPS tool providing real-time location information, the purported sample location data does not contain precise geolocation data because as the FTC concedes, "the data is gathered in the seven days prior to the date Kochava approved the subscription request." *See id*. This latency means, by definition, that the conjectural harms arising out of real-time location data alleged by the FTC are implausible, and cannot and do not actually materialize. Nor is this a violation of any law, anyway.

The FTC claims that said precise geolocation data is associated with MAIDs and this combination makes it possible to track consumers to sensitive locations, such as "places of religious worship, places that may be used to infer an LGBTQ+ identification, domestic abuse shelters, medical facilities, and welfare and homeless shelters, women's reproductive health clinics, and other sensitive locations." *Id.* at ¶ 20. The FTC also claims that, because each set of coordinates is time-stamped, it is possible to identify when a mobile device visited the location. *Id.* at ¶ 21. The FTC thus wrongly and speciously concludes that Kochava employs no technical controls to prohibit its customers from identifying consumers or tracking them to sensitive locations.[3] *Id.* at ¶ 23. Kochava does not sell a *combined* set of geolocation data, MAIDs, or other data points that would allow third parties to identify and track end users to alleged sensitive

---

[3] Kochava also introduced a proprietary Privacy Block feature that enables location insights for marketing and business intelligence use cases while preserving the privacy of consumers with respect to sensitive locations.

locations. In fact, the FTC acknowledges that some other unspecified data brokers, and not Kochava, "advertise services to match MAIDs with 'offline' information, such as consumers' names and physical addresses." *Id.* at ¶ 21.

## III.  PLEADING STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do "'legal conclusion[s] couched as . . . factual allegation[s].'" *Id.*

A complaint must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987); *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 557 (2007) (internal brackets omitted). In keeping with these principles, when considering the viability of a claim in the face of a Rule 12(b)(6) challenge, the Court rejects sheer speculation, bald assertions, and unsupported conclusory statements. *See Iqbal*, 556 U.S. at 678, 681; *Twombly*, 550 U.S. at 555.

## IV.  MERIT STANDARDS AND ARGUMENT

### A.  There Exists No Underlying Predicate Violation Supporting the FTC's Claim

As discussed in more detail below, the FTC brings this lawsuit under Section 13(b) of the FTCA, 15 U.S.C. § 53(b), alleging a violation of Section 5(a) of the FTCA, 15 U.S.C. § 45(a), (n). However, there is no alleged violation of an underlying predicate law, statute, or regulation that would serve as the basis for the allegations. In fact, the FTC cannot in good faith allege a

violation of any such law because none exist that would be applicable to the rightful conduct at issue herein.

Although there are several federal privacy laws that may serve the basis for some form of potential alleged misconduct, none are applicable to Kochava. For example, Children's Online Privacy Protection Act of 1998, 15 U.S.C. §§ 6501–6505, ("COPPA") imposes certain requirements on operators of websites or online services directed to children under 13 years of age, and on operators of other websites or online services that have actual knowledge that they are collecting personal information online from a child under 13 years of age. Other examples of federal privacy laws include Family Educational Rights and Privacy Act, 12 U.S.C. § 1232g ("FERPA"), Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.* ("GLBA"), Fair Credit Report Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), and Health Insurance Portability and Accountability Act, 42 U.S.C. § 201 *et seq.* ("HIPAA"). Not one of these federal laws and regulations applies to companies like Kochava, which is not directly collecting data from consumers.

Kochava, for example, is not alleged to have deceptively collected data from consumers. *See e.g. United States of America v. Twitter, Inc.*, No. 3:22-cv-03070 (N.D. Cal. 2022) (FTC's allegations that Twitter, Inc. misrepresented the extent to which it protects the security and privacy of users' nonpublic contact information); *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590, (D.C. 2020) (FTC seeking permanent injunction to undo and prevent Facebook's anticompetitive conduct and unfair methods of competition); *United States of America v. Musical.ly, Inc.*, No. 2:19-cv-1439 (C.D. Cal. 2019) (FTC's allegations that Musical.ly, Inc. (now known as TikTok) illegally collected personal information from children in violation of COPPA); *In the Matter of Snapchat, Inc.*, No, 132-3078 (FTC, December 23, 2014) (The FTC's allegations that Snapchat, Inc. deceived consumers over the amount of personal data it collected

-7-

and the security measures taken to protect that data from misuse and unauthorized disclosure.)

Not a single one of these cases deal with third-party data brokers, like Kochava.

**B.     The FTC cannot meet the requirements of Section 5(a) of the FTCA, 15 U.S.C. § 45(a), (n)**

**1.     The FTC cannot assert an ongoing or imminent violation**

The FTC brings this action under Section 13(b) of the FTCA, 15 U.S.C. § 53(b), which allows the FTC to obtain an injunction only if the defendant "*is violating, or is about to violate*, any provision of law enforced by the Federal Trade Commission*.*" 15 U.S.C. § 53(b) (emphasis added); Complaint, ¶ 33.

By "requir[ing] that the defendant must be 'violating' or 'about to violate' the law," Section 13(b)'s text "require[s]" the FTC to demonstrate "the existence of *ongoing* or *imminent* unlawful conduct." *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 772-73 (7th Cir. 2019) (emphasis added); *see also AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1348 (2021). At the pleading stage, this requires more than simply alleging "a violation in the distant past and a vague and generalized likelihood of recurrent conduct." *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 158-59 (3d Cir. 2019); *see also, e.g.*, *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 26-27 (D.D.C. 2021) ("conclusory allegation" that "Facebook is likely to reinstitute [unlawful] policies" based on its past conduct is "insufficient to establish the requisite imminence").

The FTC cannot allege that Kochava "is violating, or is about to violate" Section 5 of the FTCA, 15 U.S.C. §45(a), (n). *See* 15 U.S.C. § 53(b). Rather, all of the FTC's allegations are concededly premised on Kochava's purported past conduct stemming from the Kochava Data Sample, which is no longer available. *See* Complaint, ¶12 ("[T]he Kochava Data Sample *was available* on the AWS Marketplace until approximately June 2022.") (emphasis added); ¶¶ 13-19.

Indeed, even if the Kochava Data Sample was still available, the FTC's incorrect allegation that "the Kochava Data Sample included precise location data gathered in *the seven days prior to the date Kochava approved the subscription request*[]" renders any ongoing violation or conjectural harm from the alleged location tracking implausible. Complaint, ¶ 19. Unlike a GPS tool providing live location information, Kochava's customers are unable to receive the location data until a week after the request has been made. *See id.*

The FTC offers no evidence of any present or future violations that would justify the claim or issuance of an injunction, other than its conclusory and insufficient allegations that "[c]onsumers are suffering, have suffered, and will continue to suffer substantial injury as a result of [Kochava's] violations of the [FTCA]" and that Kochava "is likely to continue to injure consumers and harm the public interest." Complaint, ¶ 39. The FTC's "sheer speculation, bald assertions, and unsupported conclusory statements" are insufficient. *See Iqbal*, 556 U.S. at 678, 681; *Twombly*, 550 U.S. at 555. The fact that: (1) the Kochava Data Sample is no longer available, (2) the data's latency renders it impossible to locate a consumer's real-time location, and (3) Kochava's implementation of the Privacy Block, each confirms that the permanent injunction is unwarranted, while the combination of the three highlights the fact that the Complaint should be dismissed.

### 2.      The FTC cannot assert an unfair act or practice in violation of established public policy

An "act or practice's 'unfairness' must be grounded in" a "well-established legal policy" embodied in a "statute, judicial decisions —*i.e.*, the common law—or the Constitution." *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1229 (11th Cir. 2018); *see Sperry*, 405 U.S. 233 at 244, fn. 5. "An act or practice that . . . lacks such grounding is not unfair within Section 5(a)'s meaning." *LabMD*, 894 F.3d at 1229. Grounding Section 5(a)'s unfairness prohibition in well-established legal policies

reduces the risk that Section 5 will be applied in unfair or unexpected ways. *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 405-06 (2010) (courts must interpret statutes to "'avoid constitutional difficulties,'" including "impermissibl[e] vague[ness]"). And, as discussed above, because an overbroad interpretation of "unfairness" would empower the agency to bring Section 5 litigation without a clear congressional statement of what conduct is actually prohibited, a narrower construction requiring the agency to point to "established public policy" avoids running headlong into the major questions doctrine. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022); *see Mistretta v. United States*, 488 U.S. 361, 371-73 (1989) (a narrow interpretation of "unfair" also avoids constitutional difficulties under the non-delegation doctrine, because Congress could not constitutionally delegate near-limitless authority to the FTC to determine that a company is acting unfairly.)

The FTC contends that Kochava's conduct is "unfair" because Kochava "has sold, licensed, or otherwise transferred precise geolocation data associated with unique persistent identifiers that reveal consumers' visits to sensitive locations." Complaint, ¶ 36. The FTC's allegations have no support in any "'clear and well-established' policies that are expressed in the Constitution, statutes, or the common law." *LabMD*, 894 F.3d at 1231. The Complaint does not identify any settled constitutional, statutory, or common law policy supporting the FTC's position. In fact, the FTC fails to allege that Kochava violated "clear and well-established polices." Other than the FTC's non-specific reference to Section 5, the Complaint contains no mention of an existing law, rule, regulation or policy specifically prohibiting the alleged conduct related to geolocation data. Indeed, 15 U.S.C. §45(a), (n) contain no reference to collection of geolocation data or any other related practices that the FTC here has arbitrarily deemed as "unfair." Also, the

FTC fails to identify a single law or rule that requires – or even mentions – any of the safeguards to remove data associated with sensitive locations that Kochava allegedly failed to implement.[4]

Kochava is allegedly selling the *combined* precise geolocation data, MAIDs and other data points that would allow anybody to identify and track end users to the purported sensitive locations – but this is not true on the face of the pleading. The FTC acknowledges (1) the Kochava Data Sample's removal, and (2) seven days of data latency. In fact, the FTC acknowledges that other data brokers, *not Kochava*, "advertise services to match MAIDs with 'offline' information, such as consumers' names and physical addresses." Complaint, ¶ 21.

### 3. The conduct as alleged is not immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers

The FTC fails to satisfy the U.S. Supreme Court's additional requirement that Section 5 "unfair" conduct be either "immoral, unethical, oppressive, unscrupulous," or "substantially injurious to consumers." *Sperry*, 405 U.S. at 244, at fn. 5; *Spiegel*, 540 F.2d at 293.

The Complaint on its face illustrates that Kochava's conduct is not "immoral," "unethical," "oppressive," or "unscrupulous" – and the FTC does not even plead these allegations in the affirmative, anywhere.  Regardless, in interpreting this phrase, the *LeBlanc* court has noted that the plain meaning of "unfair" is "marked by injustice, partiality, or deception." *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1200 (11th Cir. 2010). Significantly, in *Jeter v. Credit Bureau Inc.*, 760 F.2d 1168, 1172 (11th Cir. 1985), the court noted that in the FTC context, "[a]n act or practice is deceptive or unfair ... if it has *the tendency or capacity to deceive*." (emphasis added).

---

[4] In fact, as recently as September 2022, the FTC is "asking the public to weigh in on whether new rules are needed to protect people's privacy and information in the commercial surveillance economy." RJN, Exhibit B.

The FTC also cannot allege that Kochava's conduct is "substantially injurious to consumers." *Sperry*, 405 U.S. at 244 at fn. 5; *Spiegel, Inc. v. FTC*, 540 F.2d 287, 293 (7th Cir. 1976). Section 5(n) of the FTCA clarifies the meaning of the "substantial injury" requirement and thereby limits the FTC's authority to "declare" conduct unfair in rulemaking and agency adjudication. 15 U.S.C. § 5(n). Specifically, Section 5(n) states the FTC cannot under 15 U.S.C. § 45 "declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." *Id.*

Yet, the FTC's Complaint does not address this standard. The FTC instead offers speculative hypotheticals about how unidentified third parties could potentially misuse Kochava's data (*e.g.*, "the data may be used," "the data could be used") to harm consumers who visit various sensitive locations. *See* Complaint, ¶¶ 24-29. This is not a plausible or well-pled factual allegation supporting that Kochava "causes or is likely to cause substantial injury to consumers."

Further, a "substantial injury" suffered by consumers that is "not reasonably avoidable by consumers themselves" requires "some form of seller behavior that unreasonably creates or takes advantage of an obstacle to the free exercise of consumer decision-making." FTC Statement of Policy on the Scope of the Consumer Unfairness Jurisdiction (Dec. 17, 1980) *appended to In re Int'l Harvester*, 104 F.T.C. 949, 1070, 1074 (1984) (*1980 Policy Statement*) ("consumer choice—the ability of individual consumers to make their own private purchasing decisions without regulatory intervention—[will] govern the market"); *see Am. Fin. Servs. v. FTC*, 767 F.2d 957, 976 (D.C. Cir. 1985) (an injury is "reasonably avoidable" if consumers can make a "free and informed" choice to avoid it).

-12-

### 4.      The FTC's proposed injunction is impermissibly vague

The FTC's Complaint asks this Court to enter "a permanent injunction to prevent future violations of the FTC Act by [Kochava]" based on the FTC's allegations that "[c]onsumers are suffering, have suffered, and will continue to suffer substantial injury as a result of [Kochava's] violations of the FTC Act." However, as discussed above, the FTC "allegations" of substantial injury to consumer are nothing more than speculative hypotheticals about how unidentified third parties could potentially misuse Kochava's data (*e.g.*, "the data may be used," "the data could be used") to harm consumers who visit various sensitive locations. *See* Complaint, ¶¶ 24-29.

*LabMD, Inc.*, 894 F.3d at 1221, illustrates the FTC's ultra vires power in seeking vague and unenforceable injunctive relief. In *LabMD*, the FTC brought an enforcement action against LabMD, Inc., alleging that LabMD's data-security program was inadequate and thus constituted an "unfair act or practice" under Section 5(a) of the FTCA, 15 U.S.C. § 45(a). 894 F.3d at 1227. Following a trial before an administrative law judge, the FTC issued a cease and desist order directing LabMD to create and implement a variety of protective measures. *Id*. LabMD appealed, petitioning the Court of Appeals to vacate the order, arguing that the order is unenforceable because it does not direct LabMD to cease committing an unfair act or practice within the meaning of Section 5(a). *Id*. The Court of Appeals agreed with LabMD, vacating the FTC's cease and desist order. *Id.* at 1237. The Court of Appeals reasoned that under Federal Rules of Procedure, Rule 65, injunctive orders must "state the reasons for its coercive provisions, state the provisions 'specifically,' and describe the acts restrained or required 'in reasonable detail.' " *Id.* at 1235. The court vacated the FTC's cease and desist order because it "contains no prohibitions. It does not instruct LabMD to stop committing a specific act or practice. Rather, it commands

LabMD to overhaul and replace its data-security program to meet an indeterminable standard of reasonableness. This command is unenforceable." *Id*. at 1236.

Similarly, here, the FTC is seeking an injunction that is vague and uncertain on its face – it seeks "to prevent future violations of the FTC Act by [Kochava]." As the *LabMD* Court held, "an injunction identical to the FTC cease and desist order at issue would be unenforceable under a district court's contempt power" because "Commission's cease and desist order …. does not enjoin a specific act or practice." *LabMD*, 894 F.3d at 1237. This is precisely the issue with the FTC's proposed vague injunction here and, just like in the *LabMD* case, the FTC's injunction against Kochava should be flatly rejected.

### C.    The FTC Cannot Prosecute the Instant Claims Without Running Afoul of Constitutional Mandates

#### 1.    The FTC lacks Constitutional authority to initiate litigation seeking injunctive relief

The FTC alleges that Section 13(b) of the FTCA, 15 U.S.C. § 53(b), authorizes it to seek injunctive relief in this case. As discussed below, the argument is wrong because, if it were the case, such executive litigation authority would be unconstitutional on its face as it exceeds the scope of powers that can be constitutionally vested in an agency whose members are not removable at will by the President. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) (interpreting *Humphrey's Executor v. United States*, 295 U.S. 602 (1935)) (executive litigation authority may not be granted to officers the President cannot remove, in order to ensure "control[] [of] those who execute the laws.").

##### a.    The 1935 FTC and its quasi-legislative and quasi-judicial powers

When Congress created the FTC in 1914, it gave this administrative agency only "quasi-legislative or quasi-judicial powers" – *i.e.*, conducting administrative adjudications, making

-14-

investigations and reports to Congress, and making recommendations to courts as a master in chancery. *Humphrey's Executor*, 295 U.S. at 628 (citing Pub. L. No. 63-203, ch. 311, §§ 5-7, 38 Stat. 717, 719-22 (1914)). However, in 1970s, Congress provided the FTC with quintessentially executive law enforcement powers, such as the FTC's ability to sue for monetary and permanent injunctive relief. *See Seila Law*, 140 S. Ct. 2183. The problem for the FTC is that this act of Congress is in direct violation of the Constitution.

Under Article II of the Constitution, "the 'executive Power'—all of it—is 'vested in [the] President.'" *Seila Law*, 140 S. Ct. at 2191. Because principal executive officers "must remain accountable to the President, whose authority they wield," the President's executive power includes "appointing, overseeing, and controlling" such officers. *Id.* at 2197. And "[t]hat power, in turn, generally includes the ability to remove" such officers on an "unrestricted" basis, as "has long been confirmed by history and precedent." *Id.* at 2197-98.

In 1935, the U.S. Supreme Court in *Humphrey's Executor* held that the FTC may act independently of the President, thereby upholding the constitutionality of 15 U.S.C. § 41 and confirming an FTC Commissioner can only be removed for "inefficiency, neglect of duty, or malfeasance" and not for any other reasons. 295 U.S. at 618-20, 625-32. Importantly, as *Seila Law* determined, the *Humphrey's Executor* holding was based on the Court's "view[ing] the [1935] FTC as exercising '*no part of the executive power*.'" *Seila Law*, 140 S. Ct. at 2198 (*quoting Humphrey's Executor*, 295 U.S. at 628) (emphasis added); *accord Humphrey's Executor*, 295 U.S. at 624, 628 (asserting that the 1935 FTC's powers were "neither political nor executive," such that it could not "in any proper sense be characterized as an arm or an eye of the executive"; that the FTC was "an administrative body" that performed "specified duties as a legislative or as a judicial aid"). The *Humphrey's Executor* Court reasoned that the 1935 FTC was, instead, an

"administrative body" that exercised only "quasi-legislative or quasi-judicial powers"—i.e., conducting administrative adjudications, making investigations and reports for Congress, and serving as a master in chancery for courts of equity. 295 U.S. at 628. Accordingly, in *Seila Law*, the Court clarified that *Humphrey's Executor* establishes only a narrow exception "for multimember expert agencies that do not wield substantial executive power." *Seila Law*, 140 S. Ct. at 2199-2200; *see also id.* at 2200-07 (refusing to extend *Humphrey's Executor* to the Consumer Financial Protection Bureau, a single-headed agency wielding substantial executive power); *Collins v. Yellen*, 141 S. Ct. 1761, 1783-87 (2020) (same for the Federal Housing Finance Agency).

> **b.    Congress unconstitutionally grants the executive powers to the present-day FTC in 1970s**

In 1973, Congress granted the FTC the power to seek permanent injunctive relief in the absence of an agency adjudication. *See* 15 U.S.C. § 53(b) (amended in Pub. L. No. 93-153, § 408(f), 87 Stat. 576, 592 (1973)). This grant of authority, however, is clearly unconstitutional and is incompatible with the FTC's status as a valid independent agency – in 1935, the FTC's independence was upheld because the agency exercised "only . . . quasi-legislative or quasi-judicial powers." *Seila Law*, 140 S. Ct. at 2198.

Indeed, *Seila Law* emphasized and the Justice Department recognized in its brief submitted in that case, that the ability to bring enforcement suits in federal court seeking monetary and injunctive relief, is "a quintessentially executive power *not considered* in *Humphrey's Executor.*" 140 S. Ct. at 2200; *see also* Gov't Br. 32, *Seila Law, supra* (No. 19-7), 2019 WL 6727094 (emphasis added).   The U.S. Supreme Court made this clear in *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), where it held that Article II precluded the Federal Election Commission from exercising the "discretionary power to seek judicial relief" against election-law violators in court.

*Id.* at 113, 137-38 ("[a] lawsuit is the ultimate remedy for a breach of the law, and it is to the President . . . that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed'"). Just as "conducting civil litigation in the courts of the United States for vindicating public rights" is an "'executive power'" that may not be granted to officers the President cannot appoint (*see id.* at 139-40), such litigation authority may not be granted to officers the President cannot remove, in order to ensure "control[] [of] those who execute the laws." *Seila Law*, 140 S. Ct. at 2197; 2199-2200 (recognizing that for-cause removal restrictions for purely executive officials have been upheld only for certain "inferior officers with limited duties").

As such, Congress violated the Constitution when it amended the FTCA to grant the independent FTC the executive litigation powers to seek permanent injunctive relief, set forth in 15 U.S.C. § 53(b). Such "unconstitutional statutory amendment 'is a nullity' and 'void' when enacted," and thus grants no valid power that can be exercised in this case. *Barr v. American Ass'n of Political Consultants*, 140 S. Ct. 2335, 2353 (2020) (plurality op.) (citations omitted); *see Bowsher v. Synar,* 478 U.S. 714, 734-35 (1986) (invalidating executive powers unconstitutionally granted to the Comptroller General); 15 U.S.C. § 57 (FTCA's separability clause).

### 2. The non-delegation doctrine and major questions doctrine prohibit the FTC from brining this lawsuit

The non-delegation and major questions doctrines also preclude the FTC's suit. The U.S. Supreme Court has derived the non-delegation doctrine from the constitutional provision that all legislative powers herein granted shall be vested in a Congress of the United States, meaning that Congress may not constitutionally delegate its legislative power to another branch of government. U.S. Const. Art. I, § 1; *Touby v. U.S.*, 500 U.S. 160 (1991). The non-delegation doctrine provides that it is unconstitutional for Congress to delegate legislative authority to an agency without providing an intelligible principle to guide such agency's actions. *See Gundy v. United States*, 139

S. Ct. 2116, 2119 (2019) (plurality opinion) ("[A] statutory delegation is constitutional as long as Congress lays down by legislative act an intelligible principle to which the person or body authorized to exercise that authority is directed to conform."). Non-delegation's guiding principle is therefore discretion, and a statute either confers the requisite intelligible principle or it does not.

Section 5(a) of the FTCA did not provide an "intelligible principle" to guide the FTC's exercise of authority in prohibiting "unfair practices." Though Section 5 of the FTCA declares "unfair methods of competition in or affecting commerce" to be unlawful, such unlawful acts must arise out of some underlying predicate violation. But that is not the standard used by the FTC relative to its attempted prosecution of this case. Other than a vague "standard of proof" for acts or practices to be found unfair under Section 5, the FTC lacks any concrete (or, foundational) determinate criteria for declaring an act or practice unfair.

Congress wrongfully chose not to define the specific acts and practices that constitute unfair methods of competition; thus, the FTC is left to create alleged wrongful underlying predicate acts that support the statute as it sees fit. This is the precise definition of "creating" law that the non-delegation doctrine prevents. Through this action, and as discussed hereinabove, the FTC unconstitutionally embarks on legislative powers that are vested in Congress by attempting to create laws and regulations not currently in existence. Such legislative act by the FTC is in direct conflict with the bedrock principle of separation of powers. *See* U.S. Const. Art. I, § 1 (vesting the legislative power of the federal government in Congress); *see also City of Arlington v. FCC*, 569 U.S. 290, 307 (2013) ("The fox-in-the-henhouse syndrome is to be avoided not by establishing an arbitrary and undefinable category of agency decision making that is accorded no deference, but by taking seriously, and applying rigorously, in all cases, statutory limits on agencies' authority. Where Congress has established a clear line, the agency cannot go beyond it[.]").

The major questions doctrine provides that Congress will be assumed to have delegated rulemaking authority to executive agencies over questions of great economic and political magnitude only when it does so *explicitly*. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159-60 (2000). The major questions doctrine forbids agencies from interpreting ambiguous statutory language in a way that "would bring about an enormous and transformative expansion in [their] regulatory authority without clear congressional authorization." *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014). The basic idea is that, if agencies are to exercise authority over some large sector of the economy, it must be because Congress has explicitly said that they can do so, particularly if the authority was not clearly granted when the statute was initially enacted.

Interpreting Kochava's purported acts or practices as "unfair" without an express congressional authorization would bring about "an enormous and transformative expansion in [the FTC's] regulatory authority." *Util. Air*, 573 U.S. at 324 (holding EPA's interpretation of the statute at issue unreasonable because "it would bring about an enormous and transformative expansion in EPA's regulatory authority without clear congressional authorization" – "it would be patently unreasonable—not to say outrageous—for EPA to insist on seizing expansive power that … the statute is not designed to grant.")

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V.      CONCLUSION

For the reasons set forth above, Kochava respectfully requests that this Court dismiss the

FTC's Complaint with prejudice.

Dated: October 28, 2022                              Respectfully submitted,


                                          By:    */s/ Craig J. Mariam*
                                                 Craig J. Mariam
                                                 GORDON REES SCULLY MANSUKHANI, LLP
                                                 999 W. Main Street, Suite 100
                                                 Boise, ID 83702
                                                 (208) 489-9095
                                                 *cmariam@grsm.com*

                                                 **Attorneys for Defendant Kochava, Inc.**