BRIAN SHULL, IL Bar No. 6293797
JULIA A. HORWITZ, DC Bar No. 1018561
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Phone: (202) 326-3734
Fax: (202) 326-3062
bshull@ftc.gov
jhorwitz@ftc.gov

ELIZABETH C. SCOTT, IL Bar No. 6278075
Federal Trade Commission
230 S. Dearborn St., Ste. 3030
Chicago, IL 60604
Phone: (312) 960-5609
Fax: (312) 960-5600
escott@ftc.gov

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>KOCHAVA INC., corporation,<br><br>    Defendant. | **Case No. 2:22-cv-00377-BLW**<br><br>**RESPONSE TO DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) [DKT. 7]** |

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................... 1

II.  LEGAL STANDARD............................................................................................. 2

III. ARGUMENT ......................................................................................................... 2

   1.  The Complaint Properly Pleads a Violation of the FTC Act by Kochava........................... 2

       a.   Kochava's Practices Cause or Are Likely to Cause Substantial Injury to
       Consumers.......................................................................................................... 3

           i.    Kochava's practices impermissibly injure consumers' privacy ........................... 3

           ii.   Kochava is liable for the injury it causes to consumers' privacy ......................... 6

       b.   The Injury Caused by Kochava Is Not Reasonably Avoidable ................................. 8

       c.   Kochava's Injurious Conduct Is Not Outweighed by Benefits to Consumers or
       Competition........................................................................................................ 9

   2.  The FTC Does Not Need to Plead Additional Elements to State Its Claim ..................... 10

       a.   The FTC Does Not Need to Plead Violation of a Predicate Law, Statute, or
       Regulation ........................................................................................................ 10

       b.   The FTC Does Not Need to Plead a Violation of Public or Legal Policy .............. 11

       c.   The FTC Does Not Need to Plead the Violation is Immoral, Unethical, Oppressive,
       or Unscrupulous ............................................................................................... 12

   3.  Kochava Had Fair Notice of the Requirements of the FTC Act....................................... 13

   4.  The Complaint Alleges Ongoing Misconduct .................................................................. 15

       a.   The Conduct at Issue Is Ongoing..................................................................... 15

       b.   Even if Kochava Stops the Injurious Conduct, There Would Be a Danger of
       Recurring Misconduct....................................................................................... 17

   5.  The Commission Has Not Yet Presented the Court with a Proposed Injunction .............. 18

   6.  The FTC's Action Is Constitutional................................................................................. 18

IV. CONCLUSION.................................................................................................... 20

**TABLE OF AUTHORITIES**

**Cases**

*Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957 (D.C. Cir. 1985) ........................................ 9

*AMG Capital Mgmt., LLC v. FTC*, 141 S.Ct. 1341 (2021)..................................... 2, 19

*Avilez v. Garland*, 48 F.4th 915 (9th Cir. 2022) ......................................................... 11

*CFPB v. D&D Marketing*, 2016 WL 8849698 (C.D. Cal. Nov. 17, 2016) .................. 15

*CFPB v. ITT Educ. Servs., Inc*., 219 F. Supp. 3d 878 (S.D. Ind. 2015) ..................... 15

*Comm. Fin. Serv. Ass'n of Am. v. CFPB*, 51 F.4th 616 (5th Cir. 2022) ...................... 20

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ..................................... 2, 7

*FCC v. Fox TV Stations, Inc.*, 567 U.S. 239 (2012) .............................................. 13, 14

*FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009)................................... 10, 13

*FTC v. Adept Mgmt. Inc.*, 2018 WL 893803 (D. Or. Feb. 13, 2018).......................... 13

*FTC v. Affordable Media*, 179 F.3d 1228 (9th Cir. 1999)............................................ 17

*FTC v. Amazon.com, Inc.*, 2016 WL 10654030 (W.D. Wash. July 22, 2016) ............. 10

*FTC v. Amazon.com, Inc.*, 71 F. Supp. 3d 1158 (W.D. Wash. 2014)............................ 9

*FTC v. American National Cellular*, 810 F.2d 1511 (9th Cir. 1987) .......................... 19

*FTC v. Commerce Planet, Inc.*, 642 Fed. Appx. 680 (9th Cir. Mar. 3, 2016) ............. 13

*FTC v. Elegant Solutions, Inc.*, 2022 WL 2072735 (9th Cir. June 9, 2022)................. 19

*FTC v. Fleetcor Techs., Inc.*, 2022 WL 3273286 (N.D. Ga Aug. 9, 2022) .................. 10

*FTC v. Ideal Fin. Solutions, Inc.*, 2016 WL 756527 (D. Nev. Feb. 23, 2016) ............ 18

*FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010)........................................... 2, 8, 9, 11

*FTC v. Sequoia One, LLC*, 2015 WL 9462082 (D. Nev. Dec. 23, 2015).................... 14

*FTC v. Sperry & Hutchinson Co*., 405 U.S. 233 (1972)...................................... 11, 12

*FTC v. Vizio, Inc.*, 17-cv-00758 (D.N.J. Feb. 6, 2017)............................................... 14

*FTC v. Wellness Support Network, Inc.*, 2014 WL 644749 (N.D. Cal. Feb. 19, 2014)............... 15

*FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015)........................................ passim

*Gundy v. U.S.*, 139 S. Ct. 2116 (2019)........................................................................ 19

*Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935) ............................................... 18, 19

*In re Crawford*, 194 F.3d 954 (9th Cir. 1999 ................................................................. 6

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ................................ 5

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................... 4, 5, 12

*In re Grago*, 2019 WL 1932140 (FTC 2019) ............................................................. 14

*Jeter v. Credit Bureau Inc.*, 760 F.2d 1168 (11th Cir. 1985)........................................ 13

*Jones v. Liberty Mut. Fire Ins. Co.*, 2008 WL 490584 (W.D. Ky. Feb. 20, 2008)...................... 16

*LabMD, Inc. v. FTC*, 894 F.3d 1221 (11th Cir. 2018)............................... 11, 12, 14, 18

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) ............................................ 3, 4, 6

*Pedersen v. Idaho*, 2012 WL 2060797 (D. Idaho June 6, 2012) ...................................... 2

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) .......................................................... 13

*SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980)......................................................... 17

*Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) .................................................... 19

*Spiegel, Inc. v. FTC*, 540 F.2d 287 (7th Cir. 1976) ................................................... 12

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................................. 3

*Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898 (S.D. Cal. 2020) ...................... 5

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ................................................. 3

*U.S. v. Melgar-Diaz*, 2 F.4th 1263 (9th Cir. 2021) ................................................... 20

*U.S. v. MyLife.com, Inc.*, 499 F. Supp. 3d 757 (C.D. Cal. 2020)................................ 17

*U.S. v. Ornelas*, 906 F.3d 1138 (9th Cir. 2018)....................................................... 4

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982)................ 14

**Statutes**

15 U.S.C. § 45(a) ................................................................................... 13, 20

15 U.S.C. § 45(n) ........................................................................................ 2, 11, 12, 13

15 U.S.C. § 53(b) ............................................................................................ 14, 19, 20

# I.   INTRODUCTION

Defendant Kochava, Inc. ("Kochava") invades consumers' privacy for profit.  It does so by purchasing, compiling, and then selling to advertisers and other commercial entities enormous amounts of data that tracks consumers' precise location over time.  Kochava sells its data in a format that makes it easy to identify individual consumers and the places the consumers visit.

Unsatisfied with the already staggering amount of information it discloses to third parties about consumers, Kochava's location data also reveals consumers' visits to sensitive locations. Indeed, Kochava fails to take any technical steps to remove such information from its data feeds or otherwise implement controls to protect consumers' privacy.  Thus, Kochava's location data reveals sensitive information about consumers, such as where they are seeking medical help and for what, where and how often they worship, and even when and how they are escaping abusive relationships.  The Federal Trade Commission ("FTC" or "Commission") filed its Complaint for Permanent Injunction and Other Relief (Dkt. 1) ("Complaint" or "Compl.") to stop Kochava from disclosing such sensitive information.

Unwilling to accept what the law and commonsense should tell it – that consumers' sensitive information should not be disclosed to third parties in this manner – Kochava requests that this Court dismiss the FTC's Complaint.  In doing so, Kochava applies a scattershot approach.  It raises a host of arguments, primarily in conclusory fashion that ignores the procedural posture of this case and fails to address controlling law.  Indeed, in several instances, Kochava makes arguments based on outdated standards and caselaw or that are contrary to controlling precedent.  In every instance, Kochava's arguments are refuted by the law and the factual allegations of the Complaint.

In short, both Congress and the Ninth Circuit have provided the elements of an unfairness

claim, such as the one asserted by the Commission in this action.  The Complaint pleads each element of this claim with specific allegations, including, in many cases, with actual examples drawn from Kochava's data.  The Complaint more than satisfies the applicable pleading standard and Kochava's motion to dismiss should be denied.

## II.  LEGAL STANDARD

To survive a motion to dismiss, a "claim must be plausible on its face." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Pedersen v. Idaho*, 2012 WL 2060797, at *1 (D. Idaho June 6, 2012).  In considering a motion to dismiss, courts "accept as true all factual allegations in the operative complaint, and … construe them in the light most favorable to Plaintiff as the non-moving party." *Eichenberger*, 876 F.3d at 981.

## III.  ARGUMENT

### 1.  The Complaint Properly Pleads a Violation of the FTC Act by Kochava

As the Ninth Circuit has recognized, the FTC has "broad powers under the FTC Act to prevent businesses from engaging in unfair or deceptive practices." *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1153 (9th Cir. 2010).  Under the FTC Act, a practice is unfair if it (1) "causes or is likely to cause substantial injury to consumers," (2) "which is not reasonably avoidable by consumers themselves," and (3) is "not outweighed by countervailing benefits to consumers or to competition." *Id*. at 1155 (quoting 15 U.S.C. § 45(n)).  The FTC may either declare a practice as unfair through its own administrative procedures or it may, as in this matter, seek adjudication by the federal courts that a practice meets the elements of an unfairness claim. *See AMG Capital Mgmt., LLC v. FTC*, 141 S.Ct. 1341, 1346 (2021).

Kochava acknowledges these elements, yet oddly asserts that "the FTC's Complaint does not address this standard." (Def.'s Memo in Support of Motion to Dismiss ("Def. Br."), Dkt. 7-1, at 12.) This is facially incorrect. In addition to specifically identifying the unfairness standard (*see, e.g.,* Compl. ¶¶ 24, 31-32, 35-37), the Complaint also pleads specific facts demonstrating that Kochava's sale or transfer of precise geolocation data associated with unique persistent identifiers meets each element of the standard.

### a. Kochava's Practices Cause or Are Likely to Cause Substantial Injury to Consumers

#### i. Kochava's practices impermissibly injure consumers' privacy

At the heart of the FTC's Complaint is the allegation that Kochava's practices intrude "into the most private areas of consumers' lives." (Compl. ¶ 24.) As the Complaint explains, Kochava does this by collecting, compiling, and then disclosing precise location data that identifies consumers' visits to sensitive locations, such as medical facilities, places of worship, and shelters for at-risk individuals. (*Id.* ¶¶ 20, 25-27, 36.) Kochava thus discloses to third parties data that reveals consumers who are making or have made some of the most sensitive decisions in their lives. Such disclosures are a "substantial injury" to consumers' privacy. (*Id.* ¶ 24.) Such disclosures further expose consumers to additional injuries, including stigma, discrimination, physical violence, and emotional distress. (*Id.* ¶ 29.)

Privacy harms have been recognized as legally cognizable injuries by the Supreme Court, Ninth Circuit, and other federal courts. "Privacy rights have long been regarded 'as providing a basis for a lawsuit in English or American courts.'" *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1271-72 (9th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("Various intangible harms can also be concrete. … These include, for example, reputational harms, disclosure of private

information, and intrusion upon seclusion.").[1]  A violation of a consumer's privacy is an injury on its own – that is, "an intrusion into privacy rights by itself makes a defendant subject to liability." *Patel*, 932 F.3d at 1274.  Thus, courts in the Ninth Circuit have concluded that disclosure of sensitive information about consumers is a legal injury even without any other "credible risk of real-world harm such as identity theft or other economic consequences." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784-787 (N.D. Cal. 2019) (internal quotation marks removed).  Invasions of consumers' privacy may be caused by electronic means, including online tracking. *See Patel*, 932 F.3d at 1272-73 (noting that the Supreme Court's "views regarding enhanced technological intrusions on the right to privacy," including "tracking cell-site location information," supported conclusion that "invasion of an individual's biometric privacy rights" was a cognizable legal injury).

As the facts alleged in the Complaint demonstrate, Kochava's practices invade consumers' privacy on a massive scale.  Each timestamped coordinate in Kochava's data set is tied to a persistent identifier – i.e., a static identifier tied to a consumer that does not change over time (in this case a Mobile Advertising ID or MAID).  (Compl. ¶ 10.)  As a result, Kochava's data tracks the same consumer's daily movements over time and to multiple locations.  (*Id*. ¶ 27.) Indeed, Kochava itself has bragged that its data, "on average," includes "more than 90 daily transactions [i.e., timestamped coordinates] per device."  (*Id*. ¶ 11.)  These "90 daily

---

[1] These cases address whether plaintiffs have pled a sufficiently concrete injury for purposes of Article III standing.  Although the FTC's standing to bring this lawsuit is not at issue, these cases are instructive because Congress used the legal term of art "injury" in defining unfairness. *See U.S. v. Ornelas*, 906 F.3d 1138, 1143 (9th Cir. 2018) ("[W]hen Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, we presume that Congress knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken.") (quotation omitted).

transactions," which could potentially pinpoint consumers' locations approximately once every fifteen minutes, include tracking consumers to sensitive and private locations.  (*Id*. ¶ 20.)

Using the timestamped "precise latitude" and "precise longitude"[2] coordinates from Kochava data that the FTC acquired from a publicly accessible website, the Commission was able to easily track consumers to medical facilities, places of worship, and at-risk shelters. (Compl. ¶¶ 9, 13, 25-28.)  Kochava's data thus reveals, among other private details, where a consumer seeks medical help, what medical conditions the consumer suffers from (e.g., visits to an oncologist's office reveal the consumer is seeking treatment for cancer), where the consumer worships and how often, and whether the consumer identifies as LGBTQ+.  (*Id*. ¶¶ 20, 25-28.) These are areas of consumers' private lives that the Ninth Circuit and other courts in this Circuit have found to be sensitive and protected by a right to privacy.  *See, e.g., In re Facebook*, 402 F. Supp. 3d at 786-87 (holding that plaintiffs properly pled injury as a result of the disclosure of "information about [the consumers'] locations, their religious and political preferences, … and other sensitive matters"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (holding that plaintiffs adequately alleged injury when Facebook compiled profiles that included "a user's employment history and political and religious affiliations"); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 912 (S.D. Cal. 2020) (agreeing with plaintiffs' argument that "they suffered a privacy injury by having their sensitive medical information disclosed") (internal quotation marks removed).  By disclosing such sensitive information, Kochava invades consumers' privacy and causes substantial injury to them.

---

[2] Kochava takes issue with the Complaint's description of its location data as "precise," claiming that "precise" geolocation data must be in real-time and citing to a Virginia data security law. (*See* Def. Br. at 3 n.2.)  Although the FTC disagrees with Kochava's definition and does not believe the law cited supports it, more importantly, as the Complaint alleges, Kochava *itself* describes its data as "precise."  (Compl. ¶¶ 7, 9.)

In addition to invading their privacy, Kochava's disclosure of sensitive information causes other injuries to consumers.  As the Complaint alleges, disclosure of this information exposes consumers to additional harms, such as "stigma, discrimination, physical violence, [and] emotional distress."  (Compl. ¶ 29.)  The Ninth Circuit has recognized that the disclosure of sensitive information leads to these additional harms.  *See In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999) (noting that disclosure of "HIV status, sexual orientation, or genetic makeup" could lead to "injury, embarrassment or stigma").

### ii. Kochava is liable for the injury it causes to consumers' privacy

The sensitivity of the data compiled and sold by Kochava cannot be doubted – indeed, Kochava itself publicly conceded that its location data contained "sensitive" information. (Compl. ¶ 15.)  Instead, in an attempt to shift the blame and turn a blind eye to its liability here, Kochava asserts that the Complaint only provides "speculative hypotheticals" of how third parties could misuse the data.  (Def. Br. at 12, 13.)  But these assertions ignore the law and misread the Complaint.

Contrary to Kochava's assertions, the Complaint alleges that Kochava's practices directly cause consumers injury.  (*See, e.g.,* Compl. at ¶ 24 ("The sale of such data poses an unwarranted intrusion into the most private areas of consumers' lives and causes or is likely to cause substantial injury to consumers.").)  And as outlined above, the Ninth Circuit has made clear that intruding into consumers' privacy and disclosing sensitive information about them, both of which Kochava does, are injuries that the federal court system recognizes and protects against.

Further, there is nothing "speculative" or "hypothetical" about these injuries.  *See Patel*, 932 F.3d at 1270, 1273 (holding a "concrete" injury existed when technology could be used to identify an "individual in any of the other hundreds of millions of photos uploaded to Facebook

6

each day" and to "determine when the individual was present at a specific location").[3]  The

Complaint alleges that the data compiled and sold by Kochava tracks and reveals consumers'

visits to sensitive locations.  (Compl. ¶ 36.)  Indeed, the Complaint even gives examples of how

the Commission was able to do just that using Kochava's data.  (*Id*. ¶¶ 25-28.)

Kochava also suggests that the Complaint's allegations that third-party data may be used

to assist in re-identifying consumers somehow relieves Kochava of any blame.  (Def. Br. at 6,

11.)  As explained above, each set of timestamped coordinates in Kochava's data stream is

attached to a MAID.  (Compl. ¶¶ 10, 20-21.)   The MAID is like a virtual fingerprint – unless the

consumer proactively resets the MAID, the MAID can be used to identify the consumers' mobile

activity, including geolocation, over time.  (*See id*. ¶ 27.)

The association of a MAID with each set of coordinates makes the data sold by Kochava

re-identifiable – that is, it makes it possible to associate each set of coordinates with a specific

consumer.  Although Kochava focuses only on the Complaint's allegations about third-party

products being commercially available to assist with this, the Complaint also alleges that "[e]ven

without such services, however, location data can be used to identify people."  (Compl. ¶ 22.)

The Complaint then even gives an example – tracking a phone to a single-family residence at

night reveals the location of the phone owner's home.  (*Id*.)  It is then a simple matter to connect

that residence to a specific consumer, through public records or from someone's own knowledge.

*See Eichenberger*, 876 F.3d at 986 (suggesting that precise geolocation data could constitute

"personally identifiable information" under statutory definition).  Kochava itself has advertised

---

[3] Although Kochava's practices are currently causing consumers harm, the FTC Act also protects future victims from Kochava's practices that are "likely" to cause substantial injury.  *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 246 (3d Cir. 2015) ("And the FTC Act expressly contemplates the possibility that conduct can be unfair before actual injury occurs.").

that its data may be used to track individuals to their homes.  (Compl. ¶ 22.)

Even if a third party's data is used in connection with Kochava's data to invade a consumer's privacy, it does not absolve Kochava of liability.  "[A] single violation of the Act may have more than one perpetrator."  *Neovi*, 604 F.3d at 1155.  Indeed, in *Neovi*, the Ninth Circuit considered the appeal of a company whose software allowed third parties to remotely create and send checks by mail or email.  *Id*. at 1153.  In affirming the district court's decision, the Ninth Circuit rejected the defendant's argument that it was not liable under the Act because its checks could not be created without "user input."  *Id*. at 1155.   Instead, the Ninth Circuit concluded that the defendant "engaged in behavior that was, *itself*, injurious to consumers."  *Id*. at 1157 (emphasis in original).  The same is true of Kochava.

### b.   The Injury Caused by Kochava Is Not Reasonably Avoidable

The second element of an unfairness claim is whether the injury caused by the defendant is reasonably avoidable by consumers.  *Neovi*, 604 F.3d at 1155.  Although Kochava appears to assert that this element is not met, its reasoning is unclear.  (Def. Br. at 12.)  Regardless, however, under the standard set by the Ninth Circuit, the FTC has adequately alleged this element of the unfairness claim.

"In determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free and informed choice."  *Neovi*, 604 F.3d at 1158.  Here, the Complaint alleges that consumers did not make a free and informed choice to allow Kochava to collect and sell location data revealing their visits to sensitive locations.  First, it alleges that "[t]he collection and use of their location data are opaque to consumers."  (Compl. ¶ 31.) Indeed, Kochava purchases consumers' location data from other brokers and does not directly interact with consumers.  (*Id*. ¶ 8.)  Thus, consumers' sensitive information is in the hands of a company that "consumers have never heard of and never interacted with."  (*Id*. ¶ 31.)  Second, as

the Complaint further alleges, consumers have no insight into how Kochava uses their data.  (*Id*.)

Consumers are unable to make a "free and informed choice" about practices that they neither

know about nor understand by a company they have never heard of and do not interact with.

*See, e.g., Neovi,* 604 F.3d at 1158 (affirming district court's conclusion that consumers could not

reasonably avoid injury when "[i]t is likely that some consumers never noticed the unauthorized

withdrawals"); *FTC v. Amazon.com, Inc.*, 71 F. Supp. 3d 1158, 1166 (W.D. Wash. 2014)

(holding that "not reasonably avoidable" element was met when complaint "suggests not all

users were aware of the in-app purchases they were making").

### c.   Kochava's Injurious Conduct Is Not Outweighed by Benefits to Consumers or Competition

The final element of an unfairness claim is whether the substantial injury to consumers is

"outweighed by countervailing benefits to consumers or to competition."  *Neovi*, 604 F.3d at

1155.  This is a "cost-benefit" analysis that takes into account "the potential costs that the

proposed remedy would impose on the parties and society in general."  *Am. Fin. Servs. Ass'n v.*

*FTC*, 767 F.2d 957, 975 (D.C. Cir. 1985); *see also Wyndham*, 799 F.3d at 255 (considering the

harms to consumers "given a certain level of cybersecurity and the costs to consumers that would

arise from investment in stronger cybersecurity").

Here, the injury caused by Kochava is substantial, both qualitatively and quantitatively.

It intrudes on the most sensitive parts of consumers' lives and, by Kochava's own admission,

affects over a hundred million consumers every month.  (Compl. ¶ 11.)  The Complaint alleges

that Kochava could, but does not, implement safeguards to protect consumers' privacy, such as

removing location data associated with sensitive locations from its data feeds, at a reasonable

cost and expenditure of resources.  (*Id*. ¶ 32.)  Thus, the "potential costs" of correcting

Kochava's injurious conduct is low (*Am. Fin. Servs.*, 767 F.2d at 975), and the Complaint

adequately alleges that Kochava's misconduct fails the unfairness cost-benefit analysis.[4]

## 2. The FTC Does Not Need to Plead Additional Elements to State Its Claim

Despite both Congress and the Ninth Circuit setting forth the three elements of an unfairness claim, Kochava argues that the FTC needed to plead additional elements to survive a motion to dismiss. (Def. Br. at 6-8, 9-12.) Yet no such requirements are found in either the statute or the Ninth Circuit's caselaw. *FTC v. Amazon.com, Inc.*, 2016 WL 10654030, at *6 (W.D. Wash. July 22, 2016) ("The three-part test for whether a practice is 'unfair' under the FTC Act, found in the statute itself, is followed without embellishment by courts in this Circuit.").

### a. The FTC Does Not Need to Plead Violation of a Predicate Law, Statute, or Regulation

Kochava's first additional element is that the FTC needed to base its unfairness claim on an "alleged violation of an underlying predicate law, statute, or regulation that would serve as the basis for the allegations." (Def. Br. at 6.) But courts have rejected this argument outright. *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1194 (10th Cir. 2009) (rejecting argument that "a practice cannot be an unfair one unless it violates some law independent of the [FTC Act]"). Indeed, the FTC Act contains no such requirement. "On the contrary, the [FTC Act] enables the FTC to take action against unfair practices that have not yet been contemplated by more specific laws." *Id.*

---

[4] Kochava suggests location data may have benefits to consumers. (*See* Def. Br. at 4.) Although the benefit, if any, of the unfair practice at issue here – that is, disclosing consumers' visits to sensitive locations – is a proper subject for discovery, any such hypothetical benefit would still be there if consumers were able to make "free and informed" choices about the collection and use of their location data. *See FTC v. Fleetcor Techs., Inc.*, 2022 WL 3273286, at *42 (N.D. Ga Aug. 9, 2022) ("However, even accepting that evidence as true, those general benefits … are not incompatible with the practice of affirmatively seeking a customer's authorized consent to charge the fees at issue….") (quotation omitted). Thus, any benefit purportedly offered by Kochava's practices would still be there if the practices complied with the law.

**b.   The FTC Does Not Need to Plead a Violation of Public or Legal Policy**

Kochava's second additional element is that an unfair act must be grounded in established public or legal policy.[5]  (Def. Br. at 9-11.)  Reliance on public or legal policies is not a required element under the unfairness standard as articulated by the Ninth Circuit.  *Neovi*, 604 F.3d at 1155.  To the contrary, in amending the FTC Act to codify the unfairness standard, Congress expressly declared, "In determining whether an act or practice is unfair, the Commission *may consider* established public policies as evidence *to be considered* with all other evidence."  15 U.S.C. § 45(n) (emphasis added).  Thus, it is permissive for the FTC (and courts) to consider public and legal policy when determining what practices are unfair, but it is not a requirement.  *See Avilez v. Garland*, 48 F.4th 915, 919-20 (9th Cir. 2022) ("Because of Subsection A's permissive language—specifically, the word 'may'—detention under Subsection A is discretionary.").  That public or legal policy is a discretionary consideration is further strengthened by the next sentence in 15 U.S.C. § 45(n):  "Such public policy considerations may not serve as a primary basis for such determination."

Kochava relies on a case from the Eleventh Circuit, *LabMD, Inc. v. FTC*, to support its argument that "[a]n 'act or practice's 'unfairness' must be grounded in'" public or legal policy.  (Def. Br. at 9 (quoting *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1229 (11th Cir. 2018).)[6]  In addition to being an element that the Ninth Circuit does not require, *see Neovi*, 604 F.3d at 1155, the Eleventh Circuit's reasoning on this point is unpersuasive.  The Eleventh Circuit noted the permissive language quoted above from 15 U.S.C. § 45(n), but asserted the language is

---

[5] Kochava interchanges the terms "legal policy" and "public policy" during the course of this argument.  (Def. Br. at 9-11.)  Because Kochava treats the terms as interchangeable, the FTC uses both in addressing this argument, except where quoting from caselaw or statutes.

[6] Kochava also cites to *FTC v. Sperry & Hutchinson Co*., 405 U.S. 233 (1972).  As explained below, that opinion quotes an outdated statement of the Commission.  405 U.S. at 244 n.5.

"ambiguous" and, without further elaboration, concluded that an injury under the unfairness standard must be grounded in "a well-established legal standard, whether grounded in statute, the common law, or the Constitution."  *LabMD*, 894 F.3d at 1229 n.24.  The language of 15 U.S.C. § 45(n) is not, however, ambiguous, and neither the Eleventh Circuit nor Kochava have offered substantive arguments to the contrary.

Regardless, the FTC's action here is firmly grounded in both public and legal policy.  As another court in this Circuit has explained, ignoring the invasion of consumers' privacy rights would "disregard the importance of privacy in our society, not to mention the historic role of the federal judiciary in protecting it."  *In re Facebook*, 402 F. Supp. 3d at 786.  Further, as explained above, the injury forming the basis of this action is firmly rooted in the common law of privacy. *See LabMD*, 894 F.3d at 1231 ("It is apparent to us, though, that the source [of the "standard of unfairness used" in the Commission's decision] is the common law of negligence.").

### c.  The FTC Does Not Need to Plead the Violation is Immoral, Unethical, Oppressive, or Unscrupulous

The final additional element proposed by Kochava is that the Commission must plead that an unfair act is "immoral, unethical, oppressive, [or] unscrupulous."  (Def. Br. at 11.)  In positing this addition, Kochava points to the Supreme Court's 1972 opinion in *Sperry* and the 1976 Seventh Circuit opinion in *Spiegel, Inc. v. FTC*, 540 F.2d 287 (7th Cir. 1976).  (*Id*.)  Both of these opinions quote from or cite to a 1964 Commission statement explaining the factors the Commission considered at the time in making an unfairness determination.  *Sperry*, 405 U.S. at 244 n.5; *Spiegel*, 540 F.2d at 293 & n.8.

In 1980, however, the Commission issued a new statement on the unfairness standard in which it "abandoned the theory of immoral or unscrupulous conduct … altogether" and announced the three-part unfairness test currently used by the FTC and courts.  *Wyndham*, 799

F.3d at 243-44 (quotation omitted).  In 1994, Congress amended the FTC Act to codify this three-part test in 15 U.S.C. § 45(n).  *Id.* at 244.  Thus, under the current unfairness standard, as codified by Congress and used by the Ninth Circuit, there is no requirement that an unfair act be immoral, unethical, oppressive, or unscrupulous.[7]

### 3.  **Kochava Had Fair Notice of the Requirements of the FTC Act**

In the introduction to its brief, Kochava asserts that the FTC is attempting to create "new law" and this violates the "fair notice requirement of the Constitution's Due Process Clause." (Def. Br. at 2 (citing *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012).)  However, the words "fair notice" or "Due Process" do not appear in the body of its brief.  Neither does the case it cites, *FCC v. Fox Television*.  As a result, the Commission and the Court are left guessing as to what precisely Kochava's argument is here.

To the extent Kochava's argument is summarized on page 10 of its brief, in which Kochava asserts that the Complaint "contains no mention of an existing law, rule, regulation or policy specifically prohibiting the alleged conduct related to geolocation data," this argument has already been addressed above.  (*See supra* at 10 (citing *Accusearch*, 570 F.3d at 1194).)  If Kochava's contention is that it is entitled to specific instructions as to what is legal and not legal, the Ninth Circuit has rejected this argument directly:  "That the FTC did not provide guidance specifically tailored to Commerce Planet's activities does not immunize the company from liability." *FTC v. Commerce Planet, Inc.*, 642 Fed. Appx. 680, 682 (9th Cir. Mar. 3, 2016); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947) ("And the choice made between

---

[7] Kochava also cites to *Jeter v. Credit Bureau Inc.*, 760 F.2d 1168 (11th Cir. 1985), for the proposition that an unfair act must be deceptive.  (Def. Br. at 11.)  The FTC Act prohibits both "unfair" and "deceptive" acts.  15 U.S.C. § 45(a).  Whether a representation is deceptive is a required element of a deception claim.  *See, e.g., FTC v. Adept Mgmt. Inc.*, 2018 WL 893803, at *1 (D. Or. Feb. 13, 2018).  Here, the FTC has pled an unfairness claim, not a deception claim.

proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency.").

Kochava had sufficient fair notice of the requirements of the FTC Act.  The Commission is using its Section 13(b) authority to ask that this Court "interpret [Section 5 of the FTC Act] in the first instance to decide whether it prohibits the alleged conduct here." *Wyndham*, 799 F.3d at 253.  Thus, "[t]he relevant question is not whether [Kochava] had fair notice of the *FTC's interpretation* of the statute, but whether [Kochava] had fair notice of what the *statute itself* requires." *Id*. at 253-54 (emphasis in original).[8]

As the Supreme Court has explained, "laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *Fox TV Stations*, 567 U.S. at 253. However, "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).

Kochava has not, and cannot, argue that the FTC Act is so facially vague that it fails to provide fair notice.  "The [FTC Act] is now more than a century old and Courts have given shape to the meaning of its ban on 'unfair or deceptive acts or practices.'"  *CFPB v. D&D Marketing*,

---

[8] Although not required to satisfy fair notice in this matter, courts have found that past FTC actions serve as additional information for companies.  *See Wyndham*, 799 F.3d at 257.  Indeed, Kochava should not be surprised by this action as the FTC has brought past actions protecting consumers' privacy (*see, e.g., LabMD,* 894 F.3d at 1231 (explaining the Commission's underlying decision was based on the defendant's invasion of consumers' privacy) (vacating FTC order on other grounds); *In re Grago*, 2019 WL 1932140, at *4 (FTC 2019) (pleading that misuse of data was likely to lead to privacy harms)), against data brokers for misuse of consumer data (*see, e.g., FTC v. Sequoia One, LLC*, 2015 WL 9462082 (D. Nev. Dec. 23, 2015)), and unfair tracking of consumers (*see, e.g., FTC v. Vizio, Inc.*, Dkt. 1, 17-cv-00758 (D.N.J. Feb. 6, 2017) (alleging unfair tracking of consumers' viewing habits by manufacturers of smart TVs)).

2016 WL 8849698, at *6 (C.D. Cal. Nov. 17, 2016); *see also CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 904 (S.D. Ind. 2015) (defendant's "contention that the term 'unfair … act or practice' is unconstitutionally vague falters in the face of a century's worth of legislative and judicial guidance establishing and refining the term's meaning").  Furthermore, as described above, each element of the unfairness standard is supported in the Complaint by "well-established rules and legal theories" sufficient to satisfy the fair notice doctrine.  *FTC v. Wellness Support Network, Inc.*, 2014 WL 644749, at *11 (N.D. Cal. Feb. 19, 2014).

### 4.   The Complaint Alleges Ongoing Misconduct

Kochava argues that the Commission's action further fails because it does not allege that Kochava "is violating, or is about to violate" the FTC Act.  (Def. Br. at 8-10.)  This is incorrect.  Indeed, in making this argument, Kochava selectively quotes from and misreads the Complaint.

### a.   The Conduct at Issue Is Ongoing

In support of its argument, Kochava states that "all of the FTC's allegations are concededly premised on Kochava's purported past conduct stemming from the Kochava Data Sample…." (Def. Br. at 8.)  But this is facially untrue.  As the Complaint explains, the Data Sample is a "subset of the paid data feed."  (Compl. ¶ 14.)  And nowhere does the Complaint limit the injurious conduct at issue here – disclosing precise location data associated with MAIDs that reveals consumers' visits to sensitive locations – to the Data Sample.  Rather, the Complaint directly connects this injurious conduct with the data Kochava "has sold, licensed, or otherwise transferred." (*See, e.g., id*. ¶ 36.)  Because the Data Sample is free, connecting Kochava's misconduct to, among other things, the "sale" of data plainly places the full data feed at the center of the Complaint's allegations.  (*See id*. ¶¶ 1, 12, 24.)

It is true that the Complaint uses examples drawn from the Data Sample, but even in

presenting these examples, the Complaint makes clear that the consumer injuries demonstrated by the examples are also found in the full data feed.  For example, the Complaint alleges that "the data may be used to identify consumers who have visited an abortion clinic and, as a result, may have had or contemplated having an abortion.  In fact, *in just the data Kochava made available in the Kochava Data Sample*, it is possible to identify a mobile device that visited a women's reproductive health clinic…."  (Compl. ¶ 25 (emphasis added).)

Kochava also suggests that the fact that the Data Sample is no longer available on the AWS Marketplace means that the Complaint's allegations about the Data Sample are also only historical.  (Def. Br. at 8.)  Again, this misreads the Complaint.  The Complaint alleges that "Kochava has made the Kochava Data Sample publicly available…."[9]  (Compl. ¶ 12.)  Providing the Data Sample through the AWS Marketplace is only one "example" of how this Data Sample is made publicly available by Kochava.  (*See id*. ¶ 13.)

Finally, Kochava suggests that because its location data does not reveal consumers' "real-time" locations, any injury caused by its actions is not a "present or future" injury.[10]  (Def. Br. at 9.)  This again misapprehends the injury caused by Kochava's actions.  It is the intrusions into consumers' privacy and disclosure of sensitive information that injures consumers.  Such injuries occur each time Kochava transfers its location data feeds, which it continues to do.

---

[9] The use of the present perfect tense in the Complaint indicates an ongoing activity.  *Jones v. Liberty Mut. Fire Ins. Co.*, 2008 WL 490584, at *2 (W.D. Ky. Feb. 20, 2008) ("The complaint, rather, uses the present perfect tense which can communicate a continuing situation.").

[10] Kochava again misreads the Complaint to suggest that the Data Sample is on a latency of seven days.  (Def. Br. at 9.)  However, as the Complaint alleges, "The Kochava Data Sample included precise location data gathered *in* the seven days prior to the date Kochava approved the subscription request."  (*Id*. ¶ 19 (emphasis added).)

### b. Even if Kochava Stops the Injurious Conduct, There Would Be a Danger of Recurring Misconduct

In passing, Kochava mentions that it has introduced a feature, Privacy Block, that "enables location insights … while preserving the privacy of consumers with respect to sensitive locations." (Def. Br. at 5 n.3.)  Kochava then suggests that Privacy Block supports its argument that there is no ongoing injury here.  (*Id*. at 9.)  If Kochava's claim is that Privacy Block, which appears to have been implemented after the FTC commenced this action, stops Kochava's invasions of consumers' privacy, "fact discovery has not progressed sufficiently to determine the truth of that claim."  *U.S. v. MyLife.com, Inc.*, 499 F. Supp. 3d 757, 767 (C.D. Cal. 2020).

Even if Privacy Block limits the disclosure of consumers' visits to sensitive locations, a permanent injunction would still be warranted here.  "[I]t is actually well-settled that an action for an injunction does not become moot merely because the conduct complained of was terminated, *if there is a possibility of recurrence*, since otherwise the defendants would be free to return to [their] old ways."  *FTC v. Affordable Media*, 179 F.3d 1228, 1237 (9th Cir. 1999) (quotation omitted) (emphasis in original).

In the Ninth Circuit, in order to determine the likelihood of future recurrence of misconduct, courts consider "the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood, because of defendant's professional occupation, that future violations might occur; and the sincerity of his assurances against future violations."  *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).  Although, if Kochava stops its misconduct during the course of this litigation, it would be necessary to explore each of these factors more fully in discovery, many of the factors are already implicated here.  For example, Kochava is aware of the sensitive nature of the data it sells, yet it continues to sell the data on a massive scale.  (Compl. ¶¶ 11, 15.)  And Kochava

continues to assert that its conduct is not illegal and has made no assurances that it will stop its misconduct in the future.  (*See, e.g.,* Def. Br. at 5.)

## 5.  The Commission Has Not Yet Presented the Court with a Proposed Injunction

Kochava also makes the odd argument that the permanent injunction proposed by the Commission is "vague and uncertain."  (Def. Br. at 13-14.)  But the Commission has not submitted a proposed permanent injunction to the Court.

It appears that Kochava is mixing up the procedural posture of the case it cites, *LabMD*, where the Eleventh Circuit considered a final cease-and-desist order entered by the Commission (894 F.3d at 1224), and this matter, in which the FTC requests that this Court enter injunctive relief in the first instance.  If the Court eventually rules in the FTC's favor, the Court is well-situated to craft an appropriate injunction to stop Kochava's injurious practices.  *See, e.g., FTC v. Ideal Fin. Solutions, Inc.*, 2016 WL 756527, at *2, 8-12 (D. Nev. Feb. 23, 2016) (entering "narrowly-drawn injunction" in FTC enforcement matter).

## 6.  The FTC's Action Is Constitutional

True to the maxim of leaving no stone unturned, Kochava also adds constitutional arguments to its motion to dismiss.  Yet, similar to its substantive arguments, these arguments also lack any merit and are inapplicable to the FTC's present action.

Kochava's first constitutional argument is that the make-up of the FTC's Commission as an independent agency violates the separation of powers doctrine.  (Def. Br. at 14-17.)  As Kochava correctly points out, the Supreme Court already upheld the FTC's structure in 1935 in *Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935).[11]  (Def. Br. at 15.)  Unsatisfied with this

---

[11] Contrary to Kochava's insinuations, none of the caselaw cited in its brief supports the conclusion that the Supreme Court has reversed the holding of *Humphrey's Executor*.  To the

answer, Kochava suggests that the authority of the FTC to seek injunctive relief from the federal courts, which was added to the FTC Act in 1973 as Section 13(b) of the Act and under which the FTC proceeds in this action, violates the Constitution.  (*Id*. at 16-17.)  However, this argument, too, has already been decided by controlling precedent.  In *FTC v. American National Cellular*, the Ninth Circuit held, "We conclude that the FTC's current power to seek injunctive relief pursuant to section 13(b) does not so materially differ from the power to seek cease and desist orders as to render *Humphrey's Executor* inapposite.  We hold, therefore, that the enforcement provisions of the Act are constitutional, under *Humphrey's Executor*."[12]  810 F.2d 1511, 1514 (9th Cir. 1987).  Indeed, both the Supreme Court and the Ninth Circuit continue to recognize the FTC's authority to seek permanent injunctions from the courts.  *See, e.g., AMG Capital*, 141 S. Ct. at 1344; *FTC v. Elegant Solutions, Inc.*, 2022 WL 2072735, at *2 (9th Cir. June 9, 2022) ("The district court properly granted injunctive relief under section 13(b) of the FTC Act.").

The remaining two purported constitutional issues raised in Kochava's brief are likewise easily disposed of.  As Kochava notes, the non-delegation doctrine holds that Congress "may not transfer to another branch powers which are strictly and exclusively legislative."  *Gundy v. U.S.*, 139 S. Ct. 2116, 2123 (2019) (plurality opinion) (quotation omitted).  Kochava asserts that Congress violated this doctrine by authorizing the FTC to declare an act or practice unfair.  (Def. Br. at 17-18.)  The FTC, however, is not itself declaring an act unfair here – it is the Court that will apply the FTC Act to the facts of this case.  Further, "[p]revailing on a non-delegation challenge is thus a tall order" as the doctrine is met if Congress provides a "general policy" and

---

contrary, the Supreme Court continues to treat *Humphrey's Executor* as settled precedent.  *See, e.g., Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192 (2020).

[12] The Ninth Circuit's reasoning – that the Supreme Court already considered the FTC's enforcement power in *Humphrey's Executor* – makes clear that, although Kochava dresses it up in different clothing, its argument here is really an attack on *Humphrey's Executor*.

"boundaries of … authority." *U.S. v. Melgar-Diaz*, 2 F.4th 1263, 1266-67 (9th Cir. 2021).  Here, there can be no doubt that Congress provided the FTC (and courts) with a general policy and boundaries of authority.  *See Comm. Fin. Serv. Ass'n of Am. v. CFPB*, 51 F.4th 616, 634-35 (5th Cir. 2022) (holding that an unfairness standard similar to that in the FTC Act was sufficient to meet the requirements of the non-delegation doctrine).  Indeed, as Kochava itself points out, the elements of an unfairness claim "limits" the FTC's authority.  (Def. Br. at 12.)

Kochava's invocation of the major questions doctrine fails for similar reasons.  (Def. Br. at 19.)  Contrary to Kochava's contention, Congress *did* expressly authorize the FTC to address unfair acts or practices.  *See, e.g.,* 15 U.S.C. § 45(a); 15 U.S.C. § 53(b).  More basically, however, the FTC is, again, not itself making the adjudication here.  It is the Court that will determine whether Kochava's acts or practices fall within the ambit of the unfairness standard as expressed by Congress and the courts.

### IV.    CONCLUSION[13]

For the foregoing reasons, the FTC respectfully requests the Court deny Kochava's motion to dismiss.

Respectfully submitted,

Dated: November 18, 2022                    /s Brian Shull_____

BRIAN SHULL
JULIA A. HORWITZ
ELIZABETH C. SCOTT

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

---

[13] Kochava requests that the Court take judicial notice of two documents.  (Dkt. 7-2.)  While the documents are fully consistent with the FTC's allegations against Kochava, they are irrelevant to the Court's analysis at this stage of the litigation.