CRAIG J. MARIAM  (SBN: 11061)
cmariam@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
999 W. Main Street, #100
Boise, ID 83702
Telephone:  (208) 49-9095
Facsimile:  (208) 957-5704

Attorneys for Defendant
KOCHAVA, INC.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## NORTHERN (COEUR D'ALENE) DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | CASE NO. 2:22-cv-00377-BLW |
| | ) | |
| Plaintiff, | ) | Honorable B. Lynn Winmill |
| | ) | |
| vs. | ) | **REPLY IN SUPPORT OF MOTION** |
| | ) | **TO DISMISS PURSUANT TO FED.** |
| KOCHAVA INC., corporation | ) | **R. CIV. P. 12(b)(6) [Dkt. 7]** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

TO THIS HONORABLE COURT:

Kochava, Inc. ("Kochava") hereby respectfully submits its Reply in support of its Motion

to Dismiss the Complaint of the Federal Trade Commission ("FTC") pursuant to Federal Rule of

Civil Procedure 12(b)(6).

/ / /

## TABLE OF CONTENTS

**Page**

I.     SUMMARY OF REPLY .................................................... 1

II.    THE FTC'S OPPOSITION CONFIRMS THE COMPLAINT FAILS TO SUFFICIENTLY PLEAD A VIOLATION OF THE FTCA............................................. 1

    A.     The FTC's Opposition Misrepresents How Federal Law Views Geolocation Data and Substitutes Its Interests Over Federal Law........................................ 1

    B.     The FTC Cites Inapplicable and Irrelevant Authorities to Conjure Its FTCA Claim in Order to Fabricate a Purported Injury Where None Exists.............................. 3

        1.     Patel Is Irrelevant to Geolocation Data And the FTCA ............................ 3

        2.     The In Re Facebook, Inc. Cases Are Inapposite to Kochava..................... 4

    C.     The FTC Fails to Link Injury Causation to Kochava's Business Activities.......... 5

III.   THE FTC FAILS TO SHOW KOCHAVA'S CONDUCT IS LEGALLY UNFAIR ........ 6

IV.    THE FTC FAILS TO SHOW KOCHAVA HAD FAIR NOTICE.................................... 6

V.     THE FTC FAILS TO SHOW AN ONGOING VIOLATION........................................... 8

VI.    THE FTC IGNORES ITS VAGUE REQUEST FOR INJUNCTIVE RELIEF ................. 9

VII.   THE FTC MISCHARACTERIZES KOCHAVA'S CONSTITUTIONAL ARGUMENTS .................................................................................. 9

VIII.  CONCLUSION............................................................................ 10

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006) .................................................................................................. 9

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ............................................................................ 2, 3, 9

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) .................................................................................................. 6

*FTC v. American National Cellular*,
  810 F.2d 1511 (9th Cir. 1987) .................................................................................. 9

*FTC v. Neovi, Inc.*,
  604 F.3d 1150 (9th Cir. 2010) ................................................................................ 10

*FTC v. Sequoia One, LLC*,
  2015 WL 9462082 (D. Nev. Dec. 21, 2015) ............................................................ 8

*FTC v. Vizio, Inc.*,
  Dkt. 1, 17-cv-00758 (D.N.J. Feb. 6, 2017) .............................................................. 8

*FTC v. Wyndham Worldwide Corp.*,
  799 F.3d 236 (3d Cir. 2015) ..................................................................................... 6

*In re Facebook, Inc. Internet Tracking Litigation*,
  956 F.3d 589 (9th Cir. 2020) .................................................................................... 4

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ..................................................................... 4

*In re Grago*,
  2019 WL 1932140 (FTC 2019) ................................................................................ 7

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) ..................................................................................... 2

*In the Matter of Int'l Harvester Co.*,
  104 F.T.C. 949 (F.T.C. 1984) ................................................................................... 6

*Patel v. Facebook, Inc.*,
  932 F. 3d 1264 (9th Cir. 2019) ................................................................................. 3

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    140 S. Ct. 2183 (2020) ............................................................................. 10

*Stasi v. Inmediata Health Grp. Corp.*,
    501 F. Supp. 3d 898 (S.D. Cal. 2020) ........................................................ 5

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 20 (2008) ..................................................................................... 9

**Statutes**

15 U.S.C. § 45(n) ............................................................................................ 1, 6

15 U.S.C. § 53(b) ................................................................................................ 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 2

**Regulations**

Black's Law Dictionary (11th ed. 2019) ............................................................. 4

Dep't of Commerce,
    *Commercial Data Privacy and Innovation in the Internet Economy: Dynamic Policy Framework*,
    Dec. 2010 ............................................................................................... 8

The White House, *Consumer Data Privacy in a Networked World: A Framework for Protecting privacy and Promoting Innovation in the Global Digital Economy*, Feb. 23, 2021 ................... 7

## I.        SUMMARY OF REPLY

The FTC raises a menagerie of overtly politicized but factually inept scenarios resulting in "harms" that rely on a series of bankrupt assumptions every step of the way. The FTC misrepresents repeatedly the legal authorities it cites in order to conjure up an otherwise fictitious harm. None of the cases the FTC cites are remotely relatable to the non-existent harm alleged in the FTC's Complaint. Every single case the FTC offers involve practices or injuries to consumers already contemplated by more specific laws. The FTC also misconstrues the Federal Trade Commission Act ("FTCA") requirements and definitions to its own detriment and further fails to show an ongoing violation based on the face of the FTC's Complaint. Knowingly or not, the FTC concedes in its Opposition that its Complaint fails to state a claim against Kochava because it fails to cite a single law or authority which proscribes Kochava's legitimate business practices due to an actual (non-speculative) harm.

## II.       THE FTC'S OPPOSITION CONFIRMS THE COMPLAINT FAILS TO SUFFICIENTLY PLEAD A VIOLATION OF THE FTCA

The only authorities the FTC cites in Opposition do not interpret (or even mention) the FTCA or discuss business practices even remotely similar to Kochava's services. They are unquestionably inapplicable. The FTC fails to allege Kochava (1) causes or is likely to cause substantial injury to consumers; and (2) that Kochava's practices are not outweighed by the benefits provided. 15 U.S.C. § 45(n).

### A.       The FTC's Opposition Misrepresents How Federal Law Views Geolocation Data and Substitutes Its Interests Over Federal Law

The FTC alludes to personally identifiable information by stating that "tracking a phone to a single-family residence at night reveals the location of the phone owner's home." Opp. at 7; Compl. ¶ 22. The geolocation of a consumer's home is a far cry from the FTCA's criteria for

substantiating a harm. Nor is the trackability of a cell phone in and of itself objectionable to an ordinary person, as such trackability is a core foundation of every-day convenience, providing the ability for an individual to obtain directions on a map or through GPS navigation, or even simply to locate a lost phone.

The Ninth Circuit adopted an "ordinary person" standard in connection with a federal consumer data privacy law, the Video Privacy Protection Act ("VPPA"). The Ninth Circuit discussed what constitutes "personally identifiable information" and determined that information such as an IP address did not qualify because the term includes only information that "readily permits an ordinary person to identify a particular individual as having watching certain videos. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)). The Ninth Circuit stated the "ordinary person" test better informs video service providers of their obligations under the VPPA, which focuses more on what information a video service provider discloses, not to what the recipient of that information decides to do with it. *Id.* "Personally identifiable information" must have the same meaning without regard to its recipient's capabilities. *Id.*

In *Eichenberger*, the Ninth Circuit held that Plaintiff failed to state a claim under Rule 12(b)(6). *Id.* at 986. Plaintiff, there, alleged the defendant provided his personally identifying information to third parties for purposes of targeting advertising and analytics. *Id.* at 981. The information that was purported disclosed unlawfully was Plaintiff's unique device ID and his viewing history. *Id.* at 985. The Ninth Circuit reasoned that the unique device ID only created a sizeable pool of possible viewers – those who owned that type of device – and did not sufficiently identify Plaintiff individually. *Id.* at 985-86. *Eichenberger* is analogous here for analyzing the test of actual harm resulting from disclosure of potentially "personally identifiable information."

Applying the same analysis from *Eichenberger* to the FTC's Complaint reveals that the FTC is mistaken as to the federal definition of "personally identifiable information." Kochava provides anonymized geolocation data associated with a mobile advertising ID ("MAID"). Compl. at ¶ 10. A MAID consists of 32 hyphen-separated characters associated with a certain device. Under the Ninth Circuit's "ordinary person" test, it would be nearly impossible to identify the consumer absent additional information or resources. The most the MAID can provide is a pool of Apple/iOS or Google/Android or Microsoft devices without identifying any single individual. The coupling of the geolocation data with the MAID does not readily permit an ordinary person to identify a particular individual. *Eichenberger* applied to the FTC's Complaint shows that Kochava cannot be responsible as alleged.

## B.   The FTC Cites Inapplicable and Irrelevant Authorities to Conjure Its FTCA Claim in Order to Fabricate a Purported Injury Where None Exists

None of the allegations raised by the FTC are more than mere conclusory statements. The crux of each illusionary harm (i.e. tracking consumers) requires an unknown third-party to manipulate Kochava's data utilizing other resources not provided by Kochava.

### 1.   *Patel Is Irrelevant to Geolocation Data And the FTCA*

The FTC cites *Patel v. Facebook, Inc.* as a foundational basis to conjure a privacy right (where none otherwise exists). Opp., 3. However, *Patel* did not discuss geolocation data; rather it discussed a very different privacy right issue – the development of a face template using facial recognition technology without a user's consent applying Illinois' Biometric Information Protection Act ("BIPA"). *See Patel v. Facebook, Inc.*, 932 F. 3d 1264, 1273 (9th Cir. 2019). As a further overreach, the FTC misrepresents the *Patel* court as stating "an intrusion into privacy right by itself makes a defendant subject to liability" when, in fact, the court was squarely focused on biometric face templates, analyzed under BIPA. Opp. 4. *Patel* at 1274.

KOCHAVA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 7]

### 2.    *The In Re Facebook, Inc. Cases Are Inapposite to Kochava*

The FTC further cites to *In re Facebook, Inc., Consumer Privacy User Profile Litigation* as another foundational authority. Opp. at 4. This case is not germane because it dealt with the Cambridge Analytica scandal whereby third-parties were allowed access to users' information, without their knowledge, and information regarding user's friends intended to share with only a limited audience, such as photographs, videos, stated religious preferences, posts, and private one-on-one messages within Facebook. 402 F. Supp. 3d 767, 779-80 (N.D. Cal. 2019). This was a disclosure of intentionally made private information. *Id*. 786-87.

The FTC also cites *In re Facebook, Inc. Internet Tracking Litigation* for the proposition that an injury occurred here just as when Facebook compiled profiles that included "a user's employment history and political and religious affiliations." 956 F.3d 589, 599 (9th Cir. 2020). However, there, Facebook was collecting data of its user after they intentionally logged off the social media platform and compiled their personally identifiable browsing history with user profiles that also revealed an individual's likes, dislikes, and interests in violation of California state laws. *Id*. at 598-99.

Kochava does none of this, nor is there a legitimate allegation anywhere that it does so. Unlike the *Facebook* cases, the FTC, here, entirely relies on an assumptive inference about geolocation data without actually knowing who the person is- or even if the data represents a human being. For example, the FTC flat out assumes (speculatively) the device is not for a vehicle or an employer's device.

The FTC also openly admits the geolocation data *may*[1] be used to track consumers by some other actor using additional tools and resources not provided by Kochava. *See* Compl. ¶ 8, 20. The

---

[1] May is an expression of the existence of a possibility. *See* Black's Law Dictionary (11th ed. 2019).

KOCHAVA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 7]

FTC never claims this is indeed happening or that an actual harm is occurring. The FTC admits in its Complaint that Kochava does not track individuals; thus, the Opposition is nothing more than a contradicted conclusory statement without any meaningful support.

### C.  The FTC Fails to Link Injury Causation to Kochava's Business Activities

The FTC grossly exaggerates the conclusion of what the location data may or may not reveal about consumers. The FTC wants the Court to believe that "Kochava's data reveals . . . what medical condition the consumer suffers from" based on where a consumer seeks "medical help" as though medical results are being broadcast in real time. Opp. at 5. This is a baseless assumption that obviates the possibility that the consumer is perhaps visiting another business in the same building, visiting a doctor's office as a sales representative or vendor, a delivery person, or a multitude of reasons. The FTC provides no facts to support its illogical leap that a geolocation at a treatment center automatically equals an immediate harmful disclosure of a medical condition.

The FTC's reliance on *Stasi v. Inmediata Health Group Corporation* is disjointed and unpersuasive. There, the defendant suffered a data breach resulting in a disclosure of personal and medical information posted on the internet. *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 905-06 (S.D. Cal. 2020).  This, of course, has nothing to do with the instant matter.

It is axiomatic that a data breach resulting in the disclosure of confidential personal and medical information would result in a privacy issue. However, the FTC provides zero facts or reasoning to elucidate how geolocation data is substantively analogous to health records. The FTC never claims Kochava experienced a data breach or exposed *actual* health records. Yet, the FTC claims "Kochava invades consumers' privacy and causes substantial injury to them by disclosing such sensitive information" while providing zero authoritative support. Opp. at 5-6.

/ / /

## III.      THE FTC FAILS TO SHOW KOCHAVA'S CONDUCT IS LEGALLY UNFAIR

The FTC's argument that the 1994 amendment to the FTCA codified a "three part test" misapprehends plain language and statutory construction. Section 5(n) states that "[t]he [FTC] shall have no authority . . . to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice" satisfies the stated requirements. 15 U.S.C. § 45(n). This phrase is not a comprehensive definition as the FTC wants this Court to believe. To the contrary, the phrase is a negative limitation on the FTC's authority, specifically that the FTC "shall have *no* authority" to deem a practice unfair "*unless*" it satisfies the statutory criteria. *Id.* (emphasis added); *see also FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 259 (3d Cir. 2015). Indeed, the same 1980 statement cited by the FTC implies unfairness must be shown because an "[u]njustified consumer injury … by itself can be sufficient to warrant a finding of unfairness . . . but that does not mean every consumer injury is *legally* 'unfair'". *See id.*, at 244; *see also In the Matter of Int'l Harvester Co.*, 104 F.T.C. 949, 1073 (F.T.C. 1984) ("The [FTC] is not concerned with trivial or merely speculative harms. … Emotional impact and other more subjective types of harm [] will not ordinarily make a practice unfair.").

## IV.      THE FTC FAILS TO SHOW KOCHAVA HAD FAIR NOTICE

Due process requires the law to be clear enough that parties can "know what is required of them so they may act accordingly." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Here, however, no statute or regulation gave Kochava fair notice that its business practice was so deficient that it qualifies as "unfair" conduct under Section 5.

To the contrary, on February 23, 2012, the White House released its Consumer Data Privacy in a Networked World: A Framework for Protecting Privacy and Promoting Innovation in

KOCHAVA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 7]

the Global Digital Economy.[2] The Privacy Blueprint directed the National Telecommunications and Information Administration (*not* the FTC) to convene a multistakeholder process to develop legally enforceable codes of conduct that specify how the Consumer Privacy Bill of Rights applies in specific business contexts. *See* Privacy Blueprint. The Privacy Blueprint specifically addressed data brokers and third-parties such as Kochava:

> [A] company that uses personal data only to calculate statistics about how consumers use its services may not implicate significant consumer privacy interests and may not need to provide consumers with ways to prevent data collection for this purpose. … data brokers and other companies that collect personal data without direct consumer interactions or a reasonably detectable presence in consumer-facing activities should seek innovative ways to provide consumers with effective individual control.

*See* Privacy Blueprint, at 12-13.

The FTC does not accuse Kochava of failing to provide individual control, or of violating the Consumer Privacy Bill of Rights concept. The FTC does not controvert Kochava's position that the data it collects is with consent from device users and third-party suppliers. *See* Def. Br. at 3, n.1. Instead, the FTC claims that the very activity endorsed by the Executive Branch (seeking innovative ways to provide consumers with effective privacy controls) is now suddenly "unfair" and in need of an injunction. This defies the concept of "fair notice" and the FTC's reliance on a Third Circuit case dictating that the FTC's past actions serve as additional information for companies. *See* Opp. at 14, n.8.

The additional case the FTC cites as support for "fair notice" in fact have little, if anything, to do with the instant matter. *Compare id*. *with In re Grago*, 2019 WL 1932140 (FTC 2019) (case only involving a data breach as a result of known substandard cybersecurity standards); *and FTC*

---

[2] *See* The White House, *Consumer Data Privacy in a Networked World: A Framework for Protecting privacy and Promoting Innovation in the Global Digital Economy*, Feb. 23, 2021, https://obamawhitehouse.archives.gov/sites/default/files/privacy-final.pdf (the ''Privacy Blueprint'').

KOCHAVA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 7]

*v. Sequoia One, LLC*, 2015 WL 9462082 (D. Nev. Dec. 21, 2015) (a written decision exclusively discussing the procedure for a Motion to Stay a civil proceeding due to a concurrent criminal case); *and FTC v. Vizio, Inc.*, Dkt. 1, 17-cv-00758 (D.N.J. Feb. 6, 2017) (case involving deceptive representations and concealed monitoring business practices). None of these cases involve data brokers, geolocation data collection, association with MAIDs, and are indisputably irrelevant to Kochava's business practices.

Further defying the FTC's belief that Kochava has fair notice, the Department of Commerce Internet Policy Task Force[3] directly endorses the business practices of data brokers:

> The social importance and economic value of recent digital communications innovations … such as geolocation data collected from cell phones and content stored in cloud computing systems, cannot be overstated. These technologies allow companies tremendous flexibility in how they manage and store data, relate to customers, and assemble their workforces. They are also providing new avenues for everything from forming friendships to organizing for political action.

*See* Dep't of Commerce Policy Framework at 65.

## V.      THE FTC FAILS TO SHOW AN ONGOING VIOLATION

The FTC provides this Court with zero additional allegations and relies on a rule of grammar rather than a rule of law to support its contention that a violation is ongoing. This is woefully inadequate. The FTC is only able to obtain injunctive relief if Kochava "is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission."  *See* 15 U.S.C. § 53(b); Compl. ¶ 33. A grammatical caveat falls far short. The FTC only cites that the data was made available on the AWS marketplace and provides zero facts or inferences of other

---

[3] *See* Dep't of Commerce, *Commercial Data Privacy and Innovation in the Internet Economy: Dynamic Policy Framework*, Dec. 2010, available at http://www.ntia.doc.gov/report/2010/commercial-data-privacy-and-innovationinterneteconomy-dynamic-policy-framework  ("Dep't of Commerce Policy Framework").

KOCHAVA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 7]

platforms where it may or may not be available. Compl. ¶ 9, 12-13, 15. Yet, the FTC concedes in the same breath that the data is no longer publicly available. Compl. ¶ 9, 13.

The FTC's claim that it needs to undertake discovery in order to assess Kochava's Privacy Block feature is a red herring and a bona fide fishing expedition. The Privacy Block and the geolocation data are not related to a specific act or practice that is considered injurious because geolocation is federally defined as *not* an intrusion into consumers' privacy or sensitive information capable of injuring consumers. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (only information that "readily permits an ordinary person to identify a particular individual" constitutes "personally identifiable information").

## VI.    THE FTC IGNORES ITS VAGUE REQUEST FOR INJUNCTIVE RELIEF

A plaintiff must address (not simply state as threadbare recitals) equitable factors for granting injunctive relief: (1) irreparable injury, (2) no adequate remedy at law, (3) a likelihood of success on the merits, (4) the balance of hardship, and (5) the effect on the public interest. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The FTC has failed to allege each of these mandatory factors. Moreover, the FTC cannot allege that an irreparable injury is imminent because the very basis of the FTC's theory of harm is the mere possibility of an injury, which may or may not be irreparable, which is not sufficient; irreparable injury must be likely. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 20, 22 (2008).

## VII.    THE  FTC  MISCHARACTERIZES  KOCHAVA'S  CONSTITUTIONAL ARGUMENTS

The FTC relies on *American National Cellular* as its basis that its action for injunctive relief is proper. *See* Opp. at 19. There, the Ninth Circuit held, "we conclude that the FTC's current power to seek injunctive relief pursuant to section 13(b) does not so materially differ from the power to seek cease and desist orders as to render *Humphrey's Executor* inapposite. 810 F.2d 1511,

KOCHAVA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 7]

1514 (9th Cir. 1987). However, this was prior to the holding in *Seila Law*, which described *Humphrey's Executor* and the 1935 FTC quite differently: "rightly or wrongly, the [*Humphrey's Executor*] Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power,'" but rather at most "'quasi-legislative or quasi-judicial powers.'" *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2198 (2020); *see id.* at 2200 ("unlike the New Deal-era FTC . . . the CFPB Director is hardly a mere legislative or judicial aid.").

The FTC is "conducting civil litigation in the courts of the United States for vindicating public rights" which is an executive power that may not be granted to officers the President cannot appoint, such litigation authority may not be granted to officers the President cannot remove, in order to ensure "control[] [of] those who execute the laws." *Seila Law*, at 2197.

## VIII.   CONCLUSION

The FTC hyper-sensationalizes the factually irrelevant cases imploring the Court to feel rather than to think in order to further a political agenda instead of protecting consumers.[4] The FTC cites a variety of irrelevant cases that do not show Kochava's business practices are unfair to the degree that they "cause or [are] likely to cause substantial injury to consumers." *See FTC v. Neovi, Inc.*, 604 F.3d 1150, 1153 (9th Cir. 2010). Every single case the FTC offers involve practices or injuries to consumers already contemplated by more specific laws. The FTC cannot simultaneously argue no specific law is required, then exclusively rely unsuccessfully on cases interpreting entirely unrelated specific laws, and still survive this challenge.

/ / /

---

[4] *See* Caleb Symons, *FTC Slams Kochava Over 'Staggering' Data-Sharing Practices*, Law360 (Nov. 21, 2022, 6:57 PM), https://law360.com/articles/1551064/print?section=consumerprotection.

Dated: December 2, 2022               Respectfully submitted,

                                      By:  */s/ Craig J. Mariam*
                                           Craig J. Mariam
                                           GORDON REES SCULLY MANSUKHANI, LLP
                                           999 W. Main Street, Suite 100
                                           Boise, ID 83702
                                           (208) 489-9095
                                           *cmariam@grsm.com*

                                           **Attorneys for Defendant Kochava Inc.**