UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>KOCHAVA INC.,<br><br>Defendant. | Case No. 2:22-cv-00377-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

Before the Court are Defendant Kochava, Inc.'s Motion for Sanctions Under Rule 11 (Dkt. 40) and Plaintiff Federal Trade Commission's Motion to Withdraw Motion to Seal and to Unseal the Amended Complaint (Dkt. 29). For the reasons explained below, the Court will deny Kochava's motion and grant the FTC's motion.

### BACKGROUND

On August 29, 2022, the Federal Trade Commission (FTC) filed a complaint in this Court alleging that Kochava, Inc.'s business practices violate Section 5(a) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a)(1). Dkt. 1. Specifically, the FTC claimed that Kochava violates consumers' privacy and exposes them to risks of secondary harms by linking geolocation data with Mobile

MEMORANDUM DECISION AND ORDER - 1

Device IDs (MAIDs) in data banks that its customers can access.

In October 2022, Kochava moved to dismiss the FTC's complaint on several grounds, including that the FTC had not adequately alleged a "substantial injury to consumers" as is required under Section 5(a) of the FTC Act. Dkt. 7. The Court agreed, granting Kochava's motion and dismissing the FTC's complaint. Dkt. 24. Although both of the FTC's theories of consumer injury were legally plausible, the FTC's factual allegations were insufficient. *Id.* However, because the Court concluded that those deficiencies were curable, it allowed the FTC thirty days to file an amended complaint. *Id.* at 35.

The FTC filed its First Amended Complaint (Dkt. 26) on June 5, 2023. The Amended Complaint asserts the same Section 5(a) claim and seeks the same relief as the FTC's original complaint but includes additional factual allegations to support the FTC's theories of consumer injury. *See Am. Compl.* ¶¶ 11–106, Dkt. 26. The FTC filed its Amended Complaint under seal along with a Motion to Seal (Dkt. 25) because it anticipated Kochava arguing "that some of the materials referenced, excerpted, or cited in the Amended Complaint constitute trade secrets and are entitled to confidential treatment." *Pl.'s Motion to Seal* at 1, Dkt. 25.

The FTC sought to seal its Amended Complaint "out of an abundance of caution" and only "until such time as the Court [could] rule on a motion to unseal

**MEMORANDUM DECISION AND ORDER - 2**

and decide that the materials referenced in the Amended Complaint are not entitled to confidential treatment." *Id.* One week later, on June 12, 2023, the FTC filed a Motion to Withdraw (Dkt. 29) its Motion to Seal, explaining that Kochava had failed to promptly provide it with a list of proposed redactions, or to explain its reasons for seeking to seal portions of the Amended Complaint. *Pl.'s Motion to Withdraw* at 3, Dkt. 29.

Kochava responded the next day by filing a Notice (Dkt. 30) of its intent to oppose the unsealing of the Amended Complaint and to seek Rule 11 sanctions. Shortly thereafter, Kochava filed a Motion to Seal (Dkt. 31) explaining its argument for maintaining the Amended Complaint under seal. For the time being, Kochava asked the Court to keep the Amended Complaint under seal and refrain from ruling on its unsealing until "either the withdrawal [of the Amended Complaint] by the FTC or the Court's decision on Kochava's motion for sanctions under Rule 11." *Notice* at 4, Dkt. 30. The Court granted Kochava's motion and ordered that the Amended Complaint would be kept under seal "until the merits of this disagreement can be resolved through Kochava's forthcoming Rule 11 motion for sanctions." Dkt. 36.

Today, the Court will resolve both issues by denying Kochava's Motion for Sanctions Under Rule 11 (Dkt. 40) and granting the FTC's request to unseal the

**MEMORANDUM DECISION AND ORDER - 3**

Amended Complaint.

## MOTION FOR RULE 11 SANCTIONS

Kochava asks the Court to sanction the FTC under Federal Rule of Civil Procedure 11 for filing the Amended Complaint. Dkt. 40. By way of remedies, it seeks to strike the Amended Complaint from the docket and recover all attorney fees and costs it incurred in bringing its motion. *Def.'s Memo. in Supp.* at 20, Dkt. 40-1. The Court will deny Kochava's motion.

**1.      Legal Standard**

Rule 11 authorizes courts to impose a variety of sanctions to "deter baseless filings and curb abuses." *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 534, 534 (1991). Sanctions are appropriate when a party or attorney files a pleading or paper that is "frivolous, legally unreasonable, or without factual foundation," or one that is "brought for an improper purpose." *Estate of Blue v. City of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997); FED. R. CIV. P. 11(b)(1)-(4). The standard for Rule 11 sanctions is objective and asks whether the pleader, "after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005).

Motions for Rule 11 sanctions are not a proper avenue for testing the

plausibility of a complaint or the strength of a plaintiff's evidence. There are other litigation tools suited for those tasks, such as motions to dismiss under Rule 12(b)(6) and motions for summary judgment under Rule 56. Rule 11 sanctions, in contrast, are "reserve[d] . . . for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Id.* at 1345.

**2.     Analysis**

With its Motion for Sanctions (Dkt. 40), Kochava essentially challenges the plausibility of the FTC's factual assertions and the strength of its evidence. But, as explained above, neither is an appropriate argument in favor of Rule 11 sanctions. The plausibility analysis is one the Court must perform independently in resolving Kochava's separate Motion to Dismiss (Dkt. 33), which is currently pending before this Court. And, after discovery, the Court may be asked to weigh the strength of the FTC's evidence through a Rule 56 motion for summary judgment. But, at this stage, the Court must only determine whether the FTC's Amended Complaint is "frivolous, legally unreasonable, or without factual foundation, or [was] brought for an improper purpose." *Estate of Blue*, 120 F.3d at 985; FED. R. CIV. P.

**MEMORANDUM DECISION AND ORDER - 5**

11(b)(1)-(4).

### A. The Amended Complaint is not legally unreasonable.

This Court held in its prior Memorandum Decision and Order (Dkt. 24) that both of the FTC's theories of consumer injury are legally plausible. That is, either a severe privacy intrusion or an increased risk of secondary harms could plausibly constitute "substantial injury to consumers" under Section 5(a) of the FTC Act. With its Amended Complaint, the FTC has simply realleged those plausible theories with additional factual allegations. Doing so is not unreasonable.

### B. The Amended Complaint is not factually baseless.

Sanctions may be imposed on a party or attorney who files a pleading containing allegations that utterly lack a "factual foundation." *Estate of Blue*, 120 F.3d at 985. It is important, however, to distinguish this standard from the standard for dismissal under Rule 12(b)(6). FED. R. CIV. P. 12(b)(6). If the Rule 11 and Rule 12(b)(6) standards were the same, "every Rule 12(b)(6) motion would be accompanied by a motion for sanctions." *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1054 (N.D. Cal. Jan. 5, 2021). It is also important to distinguish the Rule 11 standard from one, like the Rule 56 standard for summary judgment, that involves weighing the sufficiency of a party's evidence. *MetLife Bank, N.A. v. Badostain*, No. 1:10–CV–118–CWD, 2010 WL 5559693, at *10 (D. Idaho Dec.

MEMORANDUM DECISION AND ORDER - 6

30, 2010) ("Defendants certainly are entitled to challenge the sufficiency of [Plaintiff's] evidence through a motion for summary judgment once [Plaintiff] has had the opportunity to conduct discovery. As the Advisory Committee makes perfectly clear, however, a motion for sanctions is not the proper mechanism through which a party may permissibly conduct such an inquiry.").

Rule 11's standard for factual support "is not a high one." *MetLife Bank*, 2010 WL 5559693, at *6 (citing *Calif. Architectural Bldg. Prods. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1987)). All that is needed is "some evidence" to support the party's factual allegations. *MetLife Bank*, 2010 WL 5559693, at *6 (quoting *Brubaker v. City of Richmond*, 943 F.2d 1363, 1377 (4th Cir. 1991)). That includes both "circumstantial evidence" and "the reasonable inferences drawn from that evidence." *MetLife Bank*, 2010 WL 5559693, at *6 (quoting *Lucas v. Duncan*, 574 F.3d 772, 777 (D.C. Cir. 2009)).

Kochava argues that ten paragraphs in the FTC's Amended Complaint contain allegations that are "knowingly false." However, after reviewing each of those allegations, the Court cannot identify a single one that appears false or misleading. Moreover, the Court concludes that the FTC's other allegations and the exhibits filed with its response brief do provide at least some evidence to support those factual allegations. The Court will proceed with a one-by-one review of each

**MEMORANDUM DECISION AND ORDER - 7**

challenged allegation.

> **¶ 12—"Kochava's collection, use, and disclosure of precise geolocation data invade consumers' privacy by revealing their movements throughout a day, week, month, year, or even more, including their visits to sensitive locations—for example, locations associated with medical care, reproductive health, religious worship, mental health, temporary shelters, such as shelters for the homeless, domestic violence survivors, or other at-risk populations, and addiction recovery."**

Kochava claims this allegation is false because Kochava has never tied its geolocation data to sensitive locations like medical facilities or shelters. Read carefully, however, the FTC does not allege that Kochava itself links the location coordinates to sensitive locations by name. Rather, it alleges that Kochava's data disclosures "reveal[]" consumers' movements to and from sensitive locations because those coordinates can easily be plotted on a map. *Am. Compl.* ¶ 83, Dkt. 26. That assertion will be subject to the rigors of the discovery process and may ultimately be disproved, but at this stage, it has at least some factual support.

Kochava also argues that the FTC's allegation is false in light of Kochava's implementation of a new Privacy Block feature, which blocks its receipt of any MAIDs associated with geolocation data near healthcare facilities, places of worship, shelters for the unhoused, and recovery centers. But, as the Court explained in its prior Memorandum Decision and Order

MEMORANDUM DECISION AND ORDER - 8

(Dkt. 24), Kochava's implementation of the Privacy Block feature *after* the FTC initiated its investigation does not summarily foreclose the FTC's request for injunctive relief. *See* Dkt. 24 at 8 n.2 (citing *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1237 (9th Cir. 1999)).

> **¶ 14—"Kochava ensures that MAIDs provide no anonymity for consumers. Kochava sells data that directly links MAIDs to individual consumers' identifying information, and Kochava expressly encourages its customers to use this data. As a result, Kochava's customers can learn sensitive information about individual consumers who are identifiable without inference or additional steps."**

Kochava argues that a "competent review" of its services shows that nothing in its "*location data feed* identifies any person." *Def.'s Memo. in Supp.* at 9, Dkt. 40-1 (emphasis added). But again, Kochava's description of the FTC's claim is not accurate. The FTC does not claim that Kochava's location data feed specifically links location coordinates to specific consumers. Rather, it alleges that separate data feeds, including the Database Graph, do so. That allegation, in turn, does not utterly lack a factual foundation. *See Pl.'s Resp.* at 8, Dkt. 47.

> **¶ 23—"Customers can and do purchase any and all of this data. Thus, Kochava's data identifies, for example, a woman who visits a particular building, the woman's name, email address, and home address, and whether the woman is African-American, a parent (and if so, how many children), or has an app identifying symptoms of cancer on her phone."**

Kochava argues that its customers cannot purchase all of this data

**MEMORANDUM DECISION AND ORDER - 9**

together, because the data points are sold in distinct, non-overlapping data feeds "without linkages to one another." *Def.'s Memo. in Supp.* at 9, Dkt. 40-1. Kochava also explains that it "affirmatively blocks transmittal of name, address, and email, along with ethnicity to customers who purchase U.S. geolocation data." *Id.* However, as the FTC points out, Kochava's own advertisements and customer communications arguably contradict Kochava's position. Kochava advertises that its customers will unlock a "360-degree perspective" on device users, including "precision geo" with "email," "demographics," "devices," "household," and "channels." *Am. Compl.* ¶ 17, Dkt. 26. Moreover, the FTC cites numerous examples of Kochava communicating with customers about the sale of multiple data feeds, including geolocation data, without any suggestion that use restrictions would apply. *Pl.'s Response* at 10–11, Dkt. 47.

The allegation in paragraph 23 has at least some factual support, although the Court makes no determination as to the truth or falsity of that allegation.

> **¶¶ 39, 40, 41 & 42—Each of these four paragraphs in the Amended Complaint alleges that Kochava's sale of precise geolocation data and associated MAIDs enables third parties to track consumers to a different kind of sensitive location.**

Kochava argues that each of these paragraphs is "knowingly false" because Kochava has implemented a Privacy Block feature "which prevents the distribution

**MEMORANDUM DECISION AND ORDER - 10**

of location data associated with sensitive locations," and its location data is "anonymized." *Def.'s Memo. in Supp.* at 10, Dkt. 40-1. As noted above, however, the fact that Kochava adopted a new policy does not automatically moot the FTC's suit for injunctive relief. *See* Dkt. 24 at 8 n.2 (citing *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1237 (9th Cir. 1999)). Instead, "more factual development is necessary to determine the impact the Privacy Block feature may have on the FTC's request for an injunction." *Id.*

Nor is the Court persuaded by Kochava's characterization of its location data as "anonymized." The FTC plausibly asserts that, although anonymous on its face, Kochava's location data is linked to MAIDs in a way that enables third parties to identify specific individuals by plotting the coordinates on a map. Indeed, Kochava's own marketing materials suggest identifying device users' residences "by looking at the resting lat/long of a given device between the hours of 10pm and 6am and omit[ting] known business locations." *Pl.'s Resp.* at 16, Dkt. 47. Ultimately, Kochava may dispute the truth of the FTC's allegations, but it has not shown that paragraphs 39, 40, 41 and 42 lack a factual foundation.

### ¶ 54—"Consumers routinely pay Kochava to access all of the information Kochava has about individual consumers."

Kochava argues that this allegation is false because Kochava's customers cannot purchase "all of Kochava's discrete data sets" without being subject to

**MEMORANDUM DECISION AND ORDER - 11**

Kochava's "use restrictions." *Def.'s Memo. in Supp.* at 11, Dkt. 40-1. The FTC responds that Kochava is again taking its allegations out of the context. Paragraph 54 is within the section of the Amended Complaint that specifically addresses Kochava's "Database Graph" product, which "creates comprehensive profiles on consumers," including MAIDs, names, email addresses, home addresses, and phone numbers. *Am. Compl.* ¶¶ 44, 47, Dkt. 26. According to the FTC, paragraph 54 alleges only that customers[1] routinely access all of the information *in the Database Graph*.

The Court agrees that paragraph 54 could be clearer. On its own, it does appear to allege that Kochava's customers routinely purchase all of the data in all of Kochava's databases, not just the Database Graph. That said, however, a minor lack of clarity is not a reason to impose Rule 11 sanctions. Moreover, the context surrounding paragraph 54 does support the FTC's limited understanding of that paragraph as relating only to the information in Kochava's Database Graph. Ultimately the FTC's allegation is not so baseless or misleading so as to justify imposing Rule 11 sanctions.

### ¶ 61—"All of this information is linked to the consumer's MAID

---

[1] As the FTC explained in its response brief, paragraph 54 of the Amended Complaint contains a typographical error, using the term "consumers" instead of "customers." *Pl.'s Memo. in Opp.* at 14 n.7, Dkt. 47.

**MEMORANDUM DECISION AND ORDER - 12**

> and, as alleged above, Kochava connects MAIDs to consumers' precise geolocation as well as names, addresses, phone numbers, email addresses, and other identifying information."

Kochava argues that this paragraph is "knowingly false" because its customers cannot purchase "all of Kochava's discrete data sets without restrictions." *Def.'s Memo. in Supp.* at 11, Dkt. 40-1. For example, Kochava explains that it "employs programmatic and business process controls" to prevent the disclosure of consumers' information under certain circumstances. *Id.*

Once again, Kochava will have an opportunity to set the record straight, but at this stage, the FTC's assertions do not appear baseless. Whether or not Kochava's data sets are distinct, there is at least some support for the FTC's allegation that each of the listed data points is tied to a MAID in one or more of Kochava's data sets.

> ¶ 83— "Moreover, even if Kochava did not link consumers' MAIDs to their names, email addresses, and other identifying information, MAIDs in combination with the precise geolocation data sold by Kochava in its data feeds also reveal the identity of consumers. The location data sold by Kochava typically includes multiple timestamped location signals for each MAID. By plotting each of these signals on a map, the identification of consumers is straightforward."

Kochava argues that linking MAIDs and geolocation data does not reveal consumers' identities. And Kochava is entitled to take that position. But again, this boils down to a mere disagreement with the FTC's analysis rather than a reason to

MEMORANDUM DECISION AND ORDER - 13

impose Rule 11 sanctions.

### C. No Improper Purpose

Kochava also claims that the FTC filed its Amended Complaint for an improper purpose. The Court is unpersuaded. First, as a threshold matter, "[w]here a complaint is in question, the 'improper purpose' analysis is not necessary because a non-frivolous complaint cannot be said to be filed for an improper purpose." *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987) (citation omitted). Here, the Court concludes that the FTC's legal and factual allegations are not frivolous, so an in-depth analysis of improper purpose is unnecessary.

Second, Kochava's claim of an improper purpose is long on hyperbole and short on facts. According to Kochava, the FTC filed the Amended Complaint to "harass" it and generate "negative publicity." *Def.'s Memo. in Supp.* at 18, Dkt. 40-1. But the only evidence it provides in support of that theory is a press release the FTC issued just after it filed this action. Dkt. 40-5. Unsurprisingly, that press release stresses the FTC's belief in the importance of this lawsuit and confidence in its success. Nevertheless, nothing in that release suggests that the FTC filed the Amended Complaint for any improper purpose.

### 3. Conclusion

The allegations in the FTC's Amended Complaint are not baseless or

objectively unreasonable. Rather, Kochava simply disagrees with the FTC's characterization of its services and how those services may or may not harm consumers. Accordingly, the Court will deny Kochava's motion for Rule 11 sanctions.

The FTC requests an award of attorney fees and costs against Kochava for bringing this motion. Although Rule 11(c)(2) authorizes courts to award reasonable expenses to the prevailing parties "[i]f warranted," the Court will not do so here.

## MOTIONS TO SEAL & UNSEAL AMENDED COMPLAINT

**1.    Legal Standard**

The decision whether to keep a document under seal is "left to the sound discretion of the trial court." *Nixon v. Warner Communications Inc.*, 435 U.S. 589, 599 (1978). But "[u]nless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point." *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation and quotation marks omitted). To overcome that presumption, the proponent of sealing "bears the burden" of showing either good cause or compelling reasons to do so. *Kamakana*, 447 F.3d at 1179–81.

The lower "good cause" standard generally applies to documents attached to non-dispositive motions, while the higher "compelling reasons" standard generally

applies to documents accompanying dispositive motions. *Id.* However, the Ninth Circuit has made clear that those general, categorical rules should not "morph into mechanical classifications." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098 (9th Cir. 2016); *see also Simmons v. Battelle Energy Alliance, LLC*, Case No. 4:14-cv-294-BLW, 2016 WL 3552182, at *2–3 (D. Idaho June 23, 2016). Instead, the key question is simply whether the judicial record "at issue is more than tangentially related to the underlying cause of action." *Ctr. For Auto Safety*, 809 F.3d at 1099. If it is, the "strong presumption of public access" applies, and the higher "compelling reasons" test governs. *Id.* at 1096–99.

Examples of compelling reasons for sealing judicial records include where the record is used for "improper purposes," such as to "gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1097 (citing *Nixon*, 435 U.S. at 598–99). Conversely, the mere fact that disclosing a judicial record may lead to "embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179 (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003)).

2.  **Analysis**

The FTC argues that Kochava has not satisfied its burden of showing a

compelling reason to keep the Amended Complaint under seal. In response, Kochava essentially re-states its reasons for seeking Rule 11 sanctions, arguing that the allegations in the Amended Complaint are "knowingly false" because they "intentionally conflate separate and distinct services offered by Kochava." *Def.'s Memo. in Supp. of Motion to Seal* at 3, Dkt. 31-1. By "weav[ing] a false narrative," Kochava argues, the Amended Complaint, if made public, would put Kochava at a "competitive disadvantage in the marketplace" and hinder its ability to "protect its, brand, market share, and reputation." *Id.* at 4.

The "compelling reasons" standard governs here, because the allegations within the Amended Complaint are not merely tangentially related to the FTC's case—rather, they are the very "foundation of [the] lawsuit."[2] *Beverly Hills Teddy Bear Co. v. GennComm, LLC*, Case No.: SACV 20-02849-CJC(JEMx), 2020 WL 13200978, *2 (C.D. Cal. Aug. 26, 2020).

Kochava has not offered any compelling reason to maintain the Amended Complaint under seal. As explained above, the Court disagrees with Kochava's characterization of the FTC's allegations as "knowingly false" or "misleading."

---

[2] Both parties appear to agree that the "compelling reasons" standard applies here. *See Pl.'s Memo. in Supp. of Motion to Withdraw* at 3–4, Dkt. 29-1; *Def.'s Memo. in Supp. of Motion to Seal* at 2, Dkt. 31-1.

Certainly, the FTC's allegations cast Kochava's services in an unfavorable light. But that is no reason to shield the complaint from public view.

Nor is the Court persuaded that unsealing the Amended Complaint would put Kochava at a competitive disadvantage in the marketplace. Kochava has not argued that the complaint contains sensitive business information, trade secrets, or other information of important competitive value. Instead, it makes the broader argument that public opinion might be swayed against it if the FTC's allegations are believed. But that is not a compelling reason to maintain a judicial record under seal.

Kochava also argues that the Amended Complaint contains "inflammatory anecdotes . . . that concern incendiary issues intended to inflame prejudice against Kochava." *Def.'s Memo. in Supp. of Motion to Seal* at 2, Dkt. 31-1. The Court disagrees. The challenged allegations are not misleading and do serve a legitimate purpose. The Court dismissed the FTC's original complaint because the FTC failed to allege more than a mere possibility that Kochava's data sales could result in secondary harms to consumers. In attempting to cure that factual deficiency, the FTC included allegations in its Amended Complaint purportedly showing that geolocation data of the kind Kochava sells has been used in other instances to track device users to specific locations. *Am. Compl.* ¶¶ 87, 104–05, Dkt. 26. Those

**MEMORANDUM DECISION AND ORDER - 18**

examples serve a legitimate purpose, and their presence is not a compelling reason to seal the Amended Complaint.

Ultimately, Kochava has not shown any compelling reason to maintain any portion of the FTC's Amended Complaint under seal. The Court will therefore grant the FTC's Motion to Withdraw and Unseal the Amended Complaint (Dkt. 29).

**3.     Unsealing Additional Motions and Briefing**

After granting Kochava's initial motion to temporarily seal the Amended Complaint pending a decision on its Rule 11 motion for sanctions, the Court granted several requests by each party to file motions and briefs under seal. *See* Dkts. 36, 43, 46, 50, 54, 58, & 61. The Court did so because the briefing surrounding the Motion to Dismiss (Dkt. 33) and Motion for Sanctions Under Rule 11 (Dkt. 40) "necessarily include[d] intricate discussion[s] of the allegations contained in the [Amended Complaint]." *Def.'s Memo. in Supp. of Motion to Seal* at 2, Dkt. 32-1.

Now, having denied Kochava's motion for Rule 11 sanctions and ordered that the FTC's Amended Complaint be unsealed, the Court intends to unseal the documents that it previously sealed pending the outcome of the Rule 11 motion. Dkts. 33, 40, 45, 47, 51, 55, 60, & 62.  Before doing so, however, the Court will

**MEMORANDUM DECISION AND ORDER - 19**

give the parties fourteen days in which to object to the unsealing of any of those documents on grounds not addressed in this Order. If any such objections are filed, the non-objecting party must respond, if at all, within seven days.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion for Sanctions Under Rule 11 (Dkt. 40) is **DENIED**, each party to bear its own attorney fees and costs in supporting or opposing this motion.

2. Plaintiff's Motion to Withdraw Motion to Seal and Unseal the Amended Complaint (Dkt. 29) is **GRANTED**. Plaintiff's Motion to Seal (Dkt. 25) is hereby deemed withdrawn, and the Clerk of Court is direct to unseal the Amended Complaint (Dkt. 26).

DATED: November 3, 2023

_____
B. Lynn Winmill
U.S. District Court Judge