CRAIG J. MARIAM  (SBN: 11061)
cmariam@grsm.com
HAZEL M. B. PANGAN (Admitted *Pro Hac Vice*)
hpangan@grsm.com
ELENA A. KUZMINOVA (Admitted *Pro Hac Vice*)
ekuzminova@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
999 W. Main Street, #100
Boise, ID 83702
Telephone:  (208) 489-9095
Facsimile:  (877) 306-0043

Attorneys for Defendants
KOCHAVA INC. and
COLLECTIVE DATA SOLUTIONS, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## NORTHERN (COEUR D'ALENE) DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | CASE NO. 2:22-cv-00377-BLW |
| Plaintiff, | ) ) ) | Judge: Honorable B. Lynn Winmill |
| vs. | ) ) | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| KOCHAVA INC., a corporation | ) ) ) | |
| and | ) ) | |
| COLLECTIVE DATA SOLUTIONS, LLC, a limited liability company | ) ) ) | |
| Defendants. | ) ) | |

TO THIS HONORABLE COURT:

Defendants Kochava Inc. ("Kochava") and Collective Data Solutions, LLC ("CDS") (collectively, "Defendants") hereby respectfully submit to this Honorable Court its brief in support of its Motion to Dismiss the Second Amended Complaint ("SAC") of Plaintiff the Federal Trade Commission ("FTC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL BACKGROUND ......................................................................... 6

     A.    Kochava, Its Wholly–Owned Subsidiary CDS, and Their Services ...................... 6

         1.    Geolocation Data Feed................................................................ 6

         2.    Database Graph ............................................................................ 7

         3.    App Graph.................................................................................... 7

     B.    The FTC's Initial Complaint and the FAC .................................................. 8

III.   LEGAL STANDARD.................................................................................... 9

IV.   ARGUMENT ................................................................................................. 9

     A.    The FTC Cannot State Its Claim for Violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), (n) ........................................................ 9

         1.    Invasion of privacy by itself cannot constitute a substantial injury under Section 5(n)................................................... 10

         2.    The FTC cannot allege public disclosure of private facts that would be highly offensive to a reasonable person ................................ 11

         3.    Defendants' practices are not likely to cause substantial injury to consumers by exposure to secondary harms ............................... 14

         4.    The FTC Cannot State Its Unfairness Claim Because It Fails to Identify a Well-Established Legal Policy ................................ 16

V.    CONCLUSION.............................................................................................. 20

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
PURSUANT TO FRCP 12(b)(6)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Fin. Servs. Ass'n v. F.T.C.*,
  767 F.2d 957 (D.C. Cir. 1985) ............................................................. 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 9

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ............................................................................. 9

*Davis v. HSBC Bank Nevada*,
  691 F.3d 1152 (9th Cir. 2012) ............................................................ 16

*F.T.C. v. Wyndham Worldwide Corp.*,
  799 F.3d 236 (3d Cir. 2015) .......................................... 5, 16, 17, 18

*Fed. Trade Comm'n v. Kochava Inc.*,
  671 F. Supp. 3d 1161 (D. Idaho 2023) .......................................... passim

*Fed. Trade Comm'n v. Kochava, Inc.*,
  No. 2:22-CV-00377-BLW, 2024 WL 449363 (D. Idaho Feb. 3, 2024) ........................... 9, 16

*FTC v. Amazon.com, Inc*,
  No. 2:14-cv-1038, 2016 WL 10654030 (W.D. Wash. July 22, 2016) ................................... 16

*FTC v. Neovi*,
  604 F.3d 1150 (9th Cir. 2010) ........................................................ 15, 16

*Hancock v. Idaho Falls Sch. Dist. No. 91*,
  No. CV-04-537-E-BLW, 2006 WL 1207629 (D. Idaho May 2, 2006) ................................ 12

*Hassan v. Facebook, Inc.*,
  No. 19-CV-01003-JST, 2019 WL 3302721 (N.D. Cal. July 23, 2019) ................................ 12

*Hill v. Nat'l Collegiate Athletic Assn.*,
  7 Cal. 4th 1 (1994) ............................................................................. 11

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ............................................................. 11

*In re Google Location Hist. Litig.*,
  428 F. Supp. 3d 185 (N.D. Cal. 2019) ................................................ 12

*In re Int'l Harvester*,
104 F.T.C. 949 (1984)..................................................................................... 1

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)........................................................................... 20

*In re Smartphone Geolocation Data Application*,
977 F. Supp. 2d 129 (E.D.N.Y. 2013) ..................................................... 19, 20

*iPhone Application Litig.*, 844 F. Supp. 2d 1063........................................... 13

*James v. Allstate Ins. Co.*,
No. 3:23-CV-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023)............. 2, 11, 13, 14

*Johnson v. Riverside Healthcare Sys.*,
534 F.3d 1116 (9th Cir. 2008) ...................................................................... 18

*LabMD, Inc. v. F.T.C.*,
894 F.3d 1221 (11th Cir. 2018) ............................................................. 5, 16, 17

*LabMD, Inc. v. Fed. Trade Comm'n*,
678 F. App'x 816 (11th Cir. 2016) ............................................................ 4, 15

*Loper Bright Enterprises v. Raimondo*,
—— U.S. ——, 144 S. Ct. 2244 (2024).......................................................... 1, 9

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................ 12

*Miller v. Rykoff-Sexton, Inc.*,
845 F.2d 209 (9th Cir. 1988) ........................................................................ 6, 7

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) .......................................................... 12

*Saul v. United States*,
928 F.2d 829 (9th Cir. 1991) .......................................................................... 6

*Twombly*,
550 U.S. at 555............................................................................................ 10

*Virgil v. Time, Inc.*,
527 F.2d 1122 (9th Cir. 1975) .................................................................. 12, 13

**Other Authorities**

15 U.S.C. § 20.................................................................................................. 6

15 U.S.C. § 45(a) ........................................................................................... 17

15 U.S.C. § 45(n) ................................................................................. 1, 5, 17, 18

15 U.S.C. § 46 ................................................................................................. 6

15 U.S.C. § 49 ................................................................................................. 6

15 U.S.C. § 57b-1(c) ...................................................................................... 6

FTC Act § 5 ........................................................................................... passim

FTC Act § 5(a) ........................................................................... 5, 16, 18, 20

FTC Act § 5(n) ...................................................................................... passim

FTC Act § 6 ..................................................................................................... 5

FTC Act § 9 ..................................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................ 9

**Treatises**

1993 Senate Report, 1993 WL 322671 (1993) ......................................... 2, 11

Black's Law Dictionary ............................................................................... 15

FTC Statement of Policy on the Scope of the Consumer Unfairness Jurisdiction
  (Dec. 17, 1980) .......................................................................................... 1

Merriam-Webster .......................................................................................... 15

Restatement (Second) of Torts § 652D (1977) ................................... passim

## I.      INTRODUCTION

The FTC's   allegations that: (1) Defendants' practices cause substantial injury to consumers by invading their privacy (SAC, ¶ 91) and (2) Defendants' practices are "likely to cause" substantial injury to consumers through exposure to secondary harms fail on their face as a matter of **law** (explained herein) and should be rejected by this Court, which must exercise its own judgment over whether the FTC has acted within its statutory authority.  *Loper Bright Enterprises v. Raimondo*, —— U.S. ——, 144 S. Ct. 2244, 2273 (2024).[1]  As explained below, the FTC has not.

The FTC's first theory of consumer harm fails because invasion of privacy by itself cannot constitute a substantial injury under Section 5(n) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(n), which is a statutorily-mandated *negative* limitation on the FTC's authority.  As evidenced by the FTC's own statements at the time Section 5(n)'s enactment, the FTC defined the term "substantial injury" to require "tangible injury."[2] FTC Statement of Policy on the Scope of the Consumer Unfairness Jurisdiction (Dec. 17, 1980) *appended to In re Int'l Harvester*, 104 F.T.C. 949, 1070, 1074 (1984) (FTC's own "statements make clear that, as of the enactment of Section 5(n), the FTC defined 'substantial injury' to require 'tangible injury.'").  The

---

[1] The United States Supreme Court recently overruled the *Chevron* doctrine, holding that the Courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. And, when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enterprises*, 144 S. Ct. at 2273.

[2] The FTC's 1980 Policy Statement regarding unfair practices provides that "[e]motional impact and other more subjective types of harm . . . will not ordinarily make a practice unfair," and that "emotional effects might possibly be considered as the basis for unfairness" only "**where tangible injury could be clearly demonstrated**." FTC Statement of Policy on the Scope of the Consumer Unfairness Jurisdiction (Dec. 17, 1980) *appended to In re Int'l Harvester*, 104 F.T.C. 949, 1070, 1074 (1984) (emphasis added)  (*1980 Policy Statement*).

expressed intent of Congress when enacting Section 5(n) was to specifically exclude intangible harms and subjective injuries.  *See* 1993 Senate Report, 1993 WL 322671, at *13 (1993) ("Emotional impact and more subjective types of harm alone are not intended to make an injury unfair.").  Thus, an intangible harm such as an invasion of privacy, as a matter of law, constitutes neither a "substantial injury" nor a predicate for a violation under Section 5(n), and no legal authority so holds.

Even if an intangible injury could be actionable under Section 5(n), the common law tort of invasion of privacy requires "public disclosure of private facts" concerning "the private life of another" that are so private that their public disclosure "would be highly offensive to a reasonable person."  Restatement (Second) of Torts § 652D (1977).  ("Publicity … means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.").  The FTC cannot meet this legal standard because the FTC cannot show that the data at issue is so private that its disclosure would be highly offensive to a reasonable person, or that it could be communicated to the public at large.  *See James v. Allstate Ins. Co.*, No. 3:23-CV-01931-JSC, 2023 WL 8879246, at *6 (N.D. Cal. Dec. 22, 2023) (the Court determined Allstate's collection and disclosure to a third-party of plaintiff's "identity, email address, zip code, age, height, weight, use of prescription medications and tobacco products, and other [Personally Identifiable Information] PII and [Personal Health Information] PHI" was not "highly offensive as a matter of law"); *see* Request for Judicial Notice filed concurrently herewith and Ex. B to Declaration of Douglas Meal filed concurrently herewith (collectively "Meal Article") at 7 ("the injury alleged by the FTC … did not involve any *public* disclosure on Kochava's part. Nor, as the District Court recognized, did it

involve any disclosure of private facts (much less facts that were so private that their disclosure would be highly offensive to a reasonable person).").

As this Court already recognized, "the information that can be inferred from Kochava's geolocation data is generally accessible through other, lawful means." *Fed. Trade Comm'n v. Kochava Inc.*, 671 F. Supp. 3d 1161, 1175 (D. Idaho 2023) ("*Kochava*"). There is "no liability for giving further publicity to what the plaintiff himself leaves open to the public eye." Restatement (Second) of Torts § 652D (1977). The type of information at issue is not private on its face, and the FTC cannot allege that the consumers do not reveal their information to the public at large "through other, lawful means," and "any private information that is revealed in Kochava's data bank can be ascertained only by *inference*." *Kochava* at 1175; *see* SAC at ¶ 64 (FTC's allegations regarding information included as part of Kochava's App Graph, which includes app-level and device-level data, but not the contents of the app or PII); ¶¶ 50-52 (FTC's allegations that Kochava's Database Graph identifies "consumers' sensitive characteristics," including "ethnicity," "status as a minor," and "date of birth," but consumers routinely leave these characteristics "open to the public eye"); ¶ 68 (FTC's allegations regarding Audience Segments and a purported "graphic from a Kochava webpage" that show only the following data is included: device-level data via app engagement, attribution information, geolocation data and demographics data, but no PII or PHI.[3])

---

[3] The FTC's quantification of the alleged risk based on the number of mobile advertising IDs (or "MAIDs") is a false equivalence to substantiality because it illogically assumes each MAID corresponds to one identifiable person for whom private or "sensitive" data is received. But the FTC's own allegations belie this conclusion because as pled, not all MAIDs are associated with any data for apps touching on medical issues such as "pregnancy, ovulation, and menstruation" or visits to "sensitive locations." SAC ¶¶ 95-99. The FTC's improper extrapolation of this data as applying to "millions" of MAIDs cannot withstand scrutiny.

Even if *arguendo* intangible injuries were actionable (they are not) the FTC's theory that Defendants' practices "cause" or are "likely to cause" substantial injury to consumers because they expose them to secondary harms such as "stigma, discrimination, physical violence, [and] emotional distress" (SAC, ¶ 100), fails as a matter of law. The only examples in the SAC of such purported injury were not caused by Defendants but by some unknown, unrelated third parties *not using Defendants' data*. *See* SAC at ¶¶ 90, 104, 107, & 108 (citing the disclosure of a priest's "sexual preferences" by some unidentified group using location data from a third party, not Kochava; citing "journalists" who purchased geolocation data from a third party data broker (not Kochava) to identify "military officials, law enforcement officers, and others," and a person attending prayer service at a church; and "a data broker" sending "targeted advertisements about abortion and alternatives to abortion.").

Further, the FTC cannot plausibly allege that Defendants' practices are "likely to cause" secondary harms because the FTC misinterprets the term "likely to cause" in Section 5(n).  The plain meaning of "likely" is "having a high probability of occurring or being true" and "reasonably expected." *LabMD, Inc. v. Fed. Trade Comm'n*, 678 F. App'x 816, 821, fn. 2 (11th Cir. 2016); *see* Meal Article at 17 (The plain meaning of "likely" is "having a high probability of occurring . . .[,] very probable," or "in all probability … As the Eleventh Circuit recognized in *LabMD,* given the dictionary definition of the word 'likely,' the phrase 'likely to cause' in Section 5(n) cannot reasonably be read 'to include something that has a low likelihood.'"). The only allegations in the SAC concern a mere "significant risk" of harm and cannot legally establish a probability that Defendants' practices would cause the alleged secondary harms to consumers.  *See* SAC at ¶ 105 (Kochava's practices "put[] individuals at significant risk of [secondary harms].")

The SAC contains no plausible allegations that Defendants' practices "are not outweighed by countervailing benefits to consumers or competition." 15 U.S.C. 45(n); *see F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 255 (3d Cir. 2015) ("This standard informs parties that the relevant inquiry here is a cost-benefit analysis."); *see* Meal Article at 23 ("under the third prong of Section 5(n)'s test, an act or practice may not be declared unfair 'unless it is injurious in its net effects.'").   In fact, other than conclusory recitation of the statutory language, there are no allegations related to the "reasonable cost and expenditure of resources" for the "safeguards" that the SAC claims Defendants "could implement." SAC at ¶ 114.

All aside, the FTC fails to tether its Section 5(a) unfairness claim to a "well-established legal policy" embodied in a "statute, judicial decisions —*i.e.*, the common law—or the Constitution." *LabMD, Inc. v. F.T.C.,* 894 F.3d 1221 (11th Cir. 2018).  The only court squarely addressing this issue held that to be unfair, an act or practice should be grounded in a "well-established legal policy." *Id*.; *see* Meal Article at 34 ("the 1980 Policy Statement made clear that, *at least as far as the FTC was concerned,* 'an act or practice's "unfairness" must be grounded" not only in the injury that it causes, but also the defendant's culpability in causing that injury, with the result being that '[a]n act or practice that causes substantial injury but lacks such grounding is not unfair within Section 5(a)'s meaning.'")

The FTC has had sufficient time and information, through two prior iterations of its complaint, a series of pre-suit civil investigative demands, and the benefit of discovery directed to Defendants, to sufficiently plead its claim.  Its failure to do so demonstrates the futility of any amendment, which should not be allowed.[4]

---

[4] Under the FTC Act Sections 6 and 9, the FTC has broad authority to conduct pre-suit investigations, including the issuance of civil investigative demands, which it did issue to Kochava.  With this third iteration of its complaint, the FTC cannot claim that it needs additional

## II.     FACTUAL BACKGROUND

### A.     Kochava, Its Wholly–Owned Subsidiary CDS, and Their Services

Kochava provides a range of digital analytics services to its clients and until approximately July 2023, Kochava's services included the Kochava Collective that served as an aggregator of certain data made available through Kochava's proprietary data marketplace. *See* SAC at ¶ 23. In or around July 2023, CDS assumed operation of Kochava's Collective services. *See id*. at ¶ 6. The SAC includes allegations that conflate Defendants' services that the FTC knows to be distinct, independent, and non-overlapping: (1) geolocation data feed, (SAC at ¶¶ 28-46); (2) Database Graph (SAC at ¶¶ 47-59); (3) App Graph (SAC at ¶¶ 60-66); and (4) Audience Segments (SAC at ¶¶ 67-79).

#### 1.     Geolocation Data Feed

Geolocation data is obtained from third-party data suppliers (completely independent of anonymized device data obtained through Kochava's SDK), with consent from device users. *See* SAC at ¶¶ 23, 28, and 111 ("Kochava obtains [the data] from a myriad of sources, including from mobile apps and other data brokers"; "Kochava acquires … geolocation data from other data brokers"; screenshot of a required affirmative consent screen provided to a prospective customer).

The FTC does not allege (and in good faith cannot allege) that Defendants' location data feeds identify or could identify any *person*, as the FTC is aware that it is implausible to infer information about a device or end user of such device from the data points, and that inferred

---

discovery in order to plead sufficient facts to cure the SAC's deficiencies.  15 U.S.C. §§ 20, 46, 49; 15 U.S.C. 57b-1(c).  Further amendment would thus be futile. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (Leave to amend properly denied "where the amendment would be futile ... or where the amended complaint would be subject to dismissal."); *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.").

information is, if anything at all, is probabilistic (meaning, pure speculation). *See* SAC at ¶ 31 (the

FTC's allegations describing data points, which do not include any PII); ¶ 46 (FTC concedes

"location data [is used] to make ***inferences*** about [consumers].").

### 2. Database Graph

As its name implies, Database Graph feed contains *consented* data from public database

records and "off-line" records. *See Kochava* at 1175 ("a third party may also discover a person's

home address by reviewing publicly accessible property records.")  This service is distinct from

Defendants' other services and as the FTC concedes it does not contain geographic coordinates.

*See S*AC at ¶¶ 50, 52, 56, 119 (the FTC's allegations describing the Database Graph, which does

not include geolocation data.).  Further, the Database Graph "data points" are not disclosed to the

public and in fact, the FTC confirms this data is only available to Kochava's "customers."  *See*

SAC at ¶¶ 57, 59 ("Customers … pay Kochava to access [Database Graph data]"; Kochava's

customers are "advertisers").

### 3. App Graph

The FTC concedes Kochava "stopped using FAA SDK data in the App Graph feed."  SAC,

¶ 126.  Yet, the FTC continues to allege that Kochava obtains App Graph data from the FAA

SDK.[5]  SAC, ¶¶ 61-63.  Data points in App Graph include only *consented* device-level data,

without any PII.  *See* SAC at ¶ 64 (FTC's allegations regarding information included as part of

Kochava's App Graph, which includes app-level and device-level data, but not the contents of the

---

[5] As part of Kochava's mobile attribution and analytics business service, Kochava offers its
proprietary software development kits, or "SDKs," which prior to October 2022, included Free
App Analytics ("FAA") SDK, to maintain and improve the performance of clients' software,
including mobile applications ("apps").  *See* SAC at ¶¶ 61-64. Using anonymized device data,
including advertising identifiers such as MAIDs, Kochava's SDK permits cross-device attribution
for marketing and analytics purposes for customer relationship management and point-of-sale
systems maintained by Kochava's clients (namely, app developers).  *See id.*

app or PII); *see id.* (FTC's allegations that the generic app events include "the date of the usage" of the app and "how long, in seconds, the app is used.").

### B. The FTC's Initial Complaint and the FAC

The FTC's initial Complaint alleged impropriety relative to geolocation tracking to "sensitive locations," which the FTC alleges are "places of religious worship, places that may be used to infer an LGBTQ+ identification, domestic abuse shelters, medical facilities, and welfare and homeless shelters, women's reproductive health clinics, and other sensitive locations." Comp., Dkt. 1, ¶ 20. According to the FTC, Kochava's offering of geolocation data violates Section 5 of the FTC Act. *Id.* at ¶¶ 38-39.

In its Order granting Kochava's Motion to Dismiss, in part, this Court noted that the FTC's allegations are hypothetical—the alleged tracking of consumers to sensitive locations and "secondary harms" like "stigma, discrimination, physical violence, [and] emotional distress" are pled as merely "theoretically possible" as opposed to probable or actual. *Kochava* at 1171-72. This Court further concluded that to the extent that the claim is based on a privacy invasion intrusion *per se*, it is not severe enough to be a "substantial injury" under Section 5(n) of the FTC Act. *Id.* at 1171. This Court also rejected the FTC's requested inference of probable consumer injury based on disclosure of "sensitive information" because the disclosed information at issue in this case is not the same as "personal facts" that, on their face, are tied to an individual. *Id.* at 1175. The Court dismissed the Complaint but gave the FTC an opportunity to file an amended complaint. *Id.*

On June 26, 2024, the FTC filed its First Amended Complaint ("FAC"). Dkt. No. 26. The FAC was predicated on the same theories but the FTC added allegations regarding Kochava's other services. *Id.* Kochava moved to dismiss the FAC, and on February 3, 2024, the Court issued

an Order denying Kochava's motion.  *Fed. Trade Comm'n v. Kochava, Inc.*, No. 2:22-CV-00377-BLW, 2024 WL 449363 (D. Idaho Feb. 3, 2024).

## III.    LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ARGUMENT

### A.    The FTC Cannot State Its Claim for Violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), (n)

On June 28, 2024, the Supreme Court of the United States ("SCOTUS") overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)**,** that for forty years instructed federal courts to defer to agency interpretation of statutory language. *Loper Bright*, 144 S. Ct. 2244.  The *Loper Bright* Court, abolishing the two-step *Chevron* deference analysis, reaffirmed that "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Id.* at 2257.  The Administrative Procedure Act, "a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices," could not be reconciled with *Chevron* for multiple reasons.  *Id.* at 2261.  First, the "best" reading of a statute is the one the court—not the agency—concludes is best "after applying all relevant interpretive tools." *Id.* at 2266.  Second, courts have the expert competence necessary to resolve statutory ambiguities.  *Id.*  Agencies do not. *Id.*  Lastly, courts are expected to handle technical statutory questions.  *Id.* at 2267.

As discussed below, the legislative history of Section 5 ensures that the FTC's claims against Defendants fail as a matter of law in that it limits substantial injury **to include only tangible harms.** The FTC readily admits the foregoing *clear* legislative history; itself admitting

the term "substantial injury" requires "tangible injury." *1980 Policy Statement* ("[e]motional impact and other more subjective types of harm . . . will not ordinarily make a practice unfair," and that "emotional effects might possibly be considered as the basis for unfairness" only "where tangible injury could be clearly demonstrated.").

There is no tangible injury[6] here, and this case therefore ends as a matter of law.  The *additional* apparent (inappropriate) interpretation by the FTC (that because certain locations are "sensitive" and certain data points contain "sensitive" information or characteristics about consumers, substantial injury exists) is exactly what *Loper Bright* found inappropriate, and should not be considered by this Court in light of the clear and unambiguous legislative history on point.

> ### 1.   Invasion of privacy by itself cannot constitute a substantial injury under Section 5(n)

The FTC claims that Defendants' collection, disclosure, and use of "sensitive information about consumers … invades consumers' privacy."  SAC at ¶ 91.  There is no tangible injury alleged in the SAC, and a common law invasion of privacy cannot form a "substantial injury" under Section 5 of the FTC Act.  Given the FTC admits the term "substantial injury" requires "tangible injury," there does not appear to exist any dispute on this issue, and the legal result is the claims cannot stand.  *See* Meal Article at 10 (as of the enactment of Section 5(n), the FTC defined "substantial injury" to require "tangible injury.").  The FTC's 1980 Policy Statement regarding unfair practices provides that "[e]motional impact and other more subjective types of harm . . . will not ordinarily make a practice unfair," and that "emotional effects might possibly be considered

---

[6] FTC alleges Defendants' practices "cause" or are "likely to cause" substantial injury to consumers because they expose them to secondary harms such as "stigma, discrimination, physical violence, [and] emotional distress."  SAC, ¶ 100.  With the exception of "physical violence" the alleged secondary harms are all intangible. As to the "physical violence," the SAC offers no allegations where physical violence purportedly resulted because other brokers engaged in practices similar to Defendants' challenged practice. Under *Twombly*, such unsupported conclusory allegations must be rejected. *Twombly*, 550 U.S. at 555.

as the basis for unfairness" only "where tangible injury could be clearly demonstrated." *1980 Policy Statement; see* Meal Article at 10 (FTC admits "that, as of the enactment of Section 5(n), the FTC defined 'substantial injury' to require 'tangible injury.'").

The 1993 Senate Report, 1993 WL 322671, at *13 (1993) provides that "emotional impact and more subjective types of harm alone are not intended to make an injury unfair." *See* Meal Article at 11 ("Section 5(n)'s legislative history … states expressly that intangible injuries cannot *by themselves* constitute 'substantial injury' under Section 5(n).").   The expressed intent of Congress when enacting Section 5(n) was to specifically <u>exclude</u> intangible harms and subjective injuries.

### 2.   The FTC cannot allege public disclosure of private facts that would be highly offensive to a reasonable person

Assuming *arguendo* an intangible injury could be actionable under Section 5 (it is not), the common law tort of invasion of privacy requires "public disclosure of private facts" concerning "the private life of another" that are so private that their public disclosure "would be highly offensive to a reasonable person."  Restatement (Second) of Torts § 652D (1977).  "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Allstate Ins. Co.*, 2023 WL 8879246, at *6 (quoting *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994)).  "While analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id.* (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020)).

First, the FTC does not (and cannot) allege any *public* disclosure on Defendants' part.  "It is not an invasion of the right of privacy … to communicate a fact concerning the plaintiff's private

life to a single person or even to a small group of persons."  Restatement (Second) of Torts § 652D (1977); *see* Meal Article at 7 ("the injury alleged by the FTC … did not involve any *public* disclosure on Kochava's part.").  The FTC in fact states only that the data at issue is provided to Defendants' "customers" and not to the "public at large."  *See id.* ("Publicity … means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."); *see Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1062 (N.D. Cal. 2014) (same); *Hancock v. Idaho Falls Sch. Dist. No. 91*, No. CV-04-537-E-BLW, 2006 WL 1207629, at *6 (D. Idaho May 2, 2006) (citing to the *Restatement* and granting summary judgment on claim for invasion of privacy because there was no public disclosure when "the private information was communicated to a small group of [people]."); *Hassan v. Facebook, Inc.*, No. 19-CV-01003-JST, 2019 WL 3302721, at *3 (N.D. Cal. July 23, 2019) (dismissing claim for public disclosure of private facts because "[l]iability for the common-law tort [of public disclosure of private facts] requires publicity; disclosure to a few people in limited circumstances does not violate the right."); *Virgil v. Time, Inc.*, 527 F.2d 1122, 1126 (9th Cir. 1975) (citing the *Restatement* in the Court's analysis of "publicity.")

Second, the FTC cannot meet the high bar required to plead an invasion of privacy because the FTC fails to allege that the data at issue is so private that its disclosure would be highly offensive to a reasonable person.  Courts have held that data collection and disclosure to third parties that is "routine commercial behavior" is not a "highly offensive" intrusion of privacy.  *See In re Google Location Hist. Litig.,* 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) ("[a] person's general location is not the type of core, value, informational privacy explicated in *Hill*."); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (LinkedIn's disclosure of users' browser

history to third parties was not highly offensive); *iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (disclosures of unique device identification number, personal data, and geolocation information without consent were not an egregious breach of social norms).

The allegations, even if true, cannot legally support a finding that the disclosure of the data at issue would be "highly offensive" to a reasonable person.  *See* Meal Article at 7 ("the injury alleged by the FTC … did not involve any *public* disclosure on Kochava's part. Nor, as the District Court recognized, did it involve any disclosure of private facts (much less facts that were so private that their disclosure would be highly offensive to a reasonable person).").  Nor can the FTC allege that the disclosure of consumer's information is "highly offensive" when the consumers consent to share their data (SAC, ¶ 111 (consent screen seeking affirmative consent to share location data)) and "there is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye."  Restatement (Second) of Torts § 652D (1977)*; see Virgil*, 527 F.2d at 1126.

For example, in *Allstate Ins. Co.*, 2023 WL 8879246, at *6, the court determined Allstate's collection and disclosure to a third-party of plaintiff's "identity, email address, zip code, age, height, weight, use of prescription medications and tobacco products, and other [Personally Identifiable Information] PII and [Personal Health Information] PHI" was not "highly offensive as a matter of law" because plaintiff voluntarily provided this information to Allstate.  Similarly, here, the FTC alleges Defendants collect and disclose consumers' geolocation data and "sensitive and identifying information about consumers, including their names, MAIDs, addresses, phone numbers, email addresses, gender, age, ethnicity," and other socio-economic factors.  SAC at ¶¶ 14, 19.

The FTC also concedes that consumers consented to the alleged collection of data.  SAC at ¶ 111 (consent screen seeking affirmative consent to share location data).  Accordingly, any

subsequent disclosure to third-parties of *consented-to* data does not rise to "highly offensive" conduct. *Allstate Ins. Co.*, 2023 WL 8879246, at *6 (Allstate's collection and disclosure to a third-party of plaintiff's "identity, email address, zip code, age, height, weight, use of prescription medications and tobacco products, and other [Personally Identifiable Information] PII and [Personal Health Information] PHI" was not "highly offensive as a matter of law").

There is "no liability for giving further publicity to what the plaintiff himself leaves open to the public eye." Restatement (Second) of Torts § 652D (1977). Consumers reveal their information to the public at large "through other, lawful means" and "any private information that is revealed in Kochava's data bank can be ascertained only by *inference*." *Kochava* at 1175 (emphasis added); *see* SAC at ¶ 64 (FTC's allegations regarding information included as part of Kochava's App Graph, which includes app-level and device-level data, but not the contents of the app or PII); ¶¶ 50-52 (FTC's allegations that Kochava's Database Graph identifies "consumers' sensitive characteristics," including "ethnicity," "status as a minor," and "date of birth," but consumers routinely leave these characteristics "open to the public eye"); ¶ 68 (FTC's allegations regarding Audience Segments and a purported "graphic from a Kochava webpage" that show only the following data is included: device-level data via app engagement, attribution information, geolocation data and demographics data, but no PII or PHI.)

### 3. Defendants' practices are not likely to cause substantial injury to consumers by exposure to secondary harms

The FTC claims that Defendants' practices cause or are "likely to cause" substantial injury to consumers because they expose them to (non-actionable) secondary harms such as stigma, discrimination, physical violence, and emotional distress. SAC, ¶ 100. But, as discussed above, intangible injuries as a matter of law cannot constitute "substantial injury" within the meaning of Section 5(n).

The FTC fails to provide a single account of Defendants or even Defendants' customers actually causing the alleged injury or harm – the only examples in the SAC of such purported injury were not caused by Defendants but by some unknown, unrelated third parties.  *See* SAC at ¶¶ 90, 104, 107, & 108 (citing the disclosure of a priest's "sexual preferences" by some unidentified group using location data from a third party, not Kochava; citing "journalists" who purchased geolocation data from a third party data broker (not Kochava) to identify "military officials, law enforcement officers, and others," and a person attending prayer service at a church; and "a data broker" sending "targeting advertisements about abortion and alternatives to abortion.").

The FTC also misinterprets the term "likely to cause" in Section 5(n).  The FTC appears to allege that because targeting of consumers based on geolocation data "has and does occur" by other third parties, Kochava's practices are also likely to cause substantial injury to consumers. SAC at ¶ 100, 104.

The FTC's interpretation is incorrect. For example, in *LabMD*, the court recognized that in light of the dictionary definition of the word "likely," the phrase "likely to cause" in Section 5(n) cannot reasonably be read "to include something that has a low likelihood."  678 F. App'x at 821. The plain meaning of "likely" is "having a high probability of occurring or being true" and "reasonably expected."  *Id*. at fn. 2 (citing Merriam-Webster and Black's Law Dictionary.); *see* Meal Article at 17 (The plain meaning of "likely" is "having a high probability of occurring . . .[,] very probable," or "in all probability.").[7]

---

[7] In its ruling on Kochava's Motion to Dismiss the FTC's Complaint, the Court determined that Section 5(n) requires the FTC to allege more than a mere possibility of consumer injury but a defendant can cause substantial injury by creating "a significant risk of concrete harm."  *Kochava* at 1172.  The Court relied on *FTC v. Neovi*, 604 F.3d 1150, 1157 (9th Cir. 2010), to adjudge that the FTC must allege that Kochava's practices create a "significant risk" that third parties will

4.      **The FTC Cannot State Its Unfairness Claim Because It Fails to Identify a Well-Established Legal Policy**

An "act or practice's 'unfairness' must be grounded in" a "well-established legal policy"

embodied in a "statute, judicial decisions —*i.e.*, the common law—or the Constitution." *LabMD*,

894 F.3d at 1229. "An act or practice that . . . lacks such grounding is not unfair within Section

5(a)'s meaning." *LabMD*, 894 F.3d at 1229.[8]  The FTC contends that Defendants' practices are

---

identify and harm consumers.  Similarly, in its ruling on Kochava's Motion to Dismiss FAC, the
Court also cited to *Neovi* to determine that Kochava's practices "are likely to cause consumer
injury."  *See FTC v. Kochava, Inc.,* 2024 WL 449363 at fn. 3 ("'[A] defendant can 'cause'
substantial injury under Section 5(n) merely by creating 'a significant risk of concrete harm.'")
(quoting *Neovi, Inc.,* 604 F.3d at 1157)). However, the *Neovi* Court did not interpret the term
"likely to cause" in Section 5(n). The *Neovi* Court's statement that "[a]n act or practice can cause
'substantial injury' … 'if it raises a significant risk of concrete harm,'" was made in the context
of evaluating whether the alleged injury was "substantial," not whether it was "likely" – which are
two distinct issues. 604 F.3d at 1157. Therefore, *Neovi* is distinguishable and inapposite to
interpreting the meaning of the word "likely" in Section 5(n). *See* Meal Article at 16-17 (discussing
why *Neovi* is inapposite).

[8] This Court declined "to follow the Eleventh Circuit and add a predicate-violation requirement to
Section 5(a)" because the Court instead relied on the Ninth Circuit precedent *Neovi*, 604 F.3d at
1155 and *Davis v. HSBC Bank Nevada*, 691 F.3d 1152, 1168 (9th Cir. 2012), rejecting the Eleventh
Circuit's position.  *Kochava* at 1170.  Respectfully, Defendants disagree with the Court's position.
Neither in *Neovi*, nor in *Davis*, did the parties or the Court raise whether a Section 5(a) unfairness
claim must be grounded in an additional culpability element such as a violation of a well-
established law or public policy and the Ninth Circuit made no express ruling on that issue.  *Neovi,*
604 F.3d at 1155; *Davis*, 691 F.3d at 1168.  And, none of the cases cited by this Court in footnote
4 actually address this issue.  *See Kochava* at fn. 4; Meal Article at 31 (whether a Section 5(a)
unfairness claim must be grounded in an additional culpability element such as a violation of a
well-established law or public policy was neither raised nor ruled upon in *Neovi* or *Davis*.).  The
only decision that discussed the issue of additional requirements for a practice to be deemed unfair
is *FTC v. Amazon.com, Inc,* No. 2:14-cv-1038, 2016 WL 10654030 (W.D. Wash. July 22, 2016),
but the *Amazon* Court held only that "unscrupulous or unethical behavior" is not required for
Section 5 claim, not a "well-established legal policy" embodied in a "statute, judicial decisions …
or the Constitution."  Further, *Wyndham*, 799 F.3d at 244, on which the *Amazon* Court relied,
agreed with the *LabMD* court that,"[a]rguably, § [5](n) may not identify all of the requirements
for an unfairness claim" and found that the FTC had sufficiently alleged any additionally required
element.  799 F.3d at 244-45; *see also id.* at 259 ("The three requirements in § [5](n) may be
necessary rather than sufficient conditions of an unfair practice….").  *See* Meal Article at 32 ("the
*Amazon.com* court badly misread the *Wyndham* decision on this point … [F]ar from rejecting the
argument, the *Wyndham* court *agreed* that, '[a]rguably, § [5](n) may not identify all of the
requirements for an unfairness claim.'")

"unfair" because they "have used and disclosed data gathered from consumers' mobile devices and other sources, including precise geolocation data, app usage, and personally-identifying information, that reveals sensitive and private information about consumers." SAC at ¶ 132. The FTC's allegations have no support in any "'clear and well-established' policies that are expressed in the Constitution, statutes, or the common law." *LabMD*, 894 F.3d at 1231.

Yet, the SAC does not identify any settled constitutional, statutory, or common law policy supporting the FTC's position. Other than the FTC's non-specific reference to Section 5, the SAC contains no mention of an existing law, rule, regulation, or policy specifically prohibiting the challenged practices. Indeed, 15 U.S.C. §45(a), (n) contain no reference to collection of geolocation data or any other challenged practices that the FTC here has arbitrarily deemed as "unfair."

As acknowledged by this Court, "the three requirements set forth in Section 5(n) are written as negative limitations on the FTC's authority rather than as an exhaustive list of elements. *Kochava* at 1171 (citing *Wyndham*, 799 F.3d at 244). Therefore, based on the plain meaning of Sections 5(n), the three requirements do not set "an exhaustive list of elements" necessary to prove unfairness claim. And, this is further clarified by the second and third sentences of Section 5(n), which expressly authorize the FTC to "consider established public policies," and to make such policies part of the basis for "determining whether an act or practice is unfair." 15 U.S.C. 45(n); *see* Meal Article at 32-33 (Section 5(n)'s three prongs "are written as negative limitations on the FTC's authority rather than as an exhaustive list of elements" with the second and third sentences of Section 5(n) expressly authorizing the FTC to "consider established public policies," and to make such policies a basis (though not a primary basis), for "determining whether an act or practice is unfair."). It would not make sense for Congress to include the last two sentences of Section 5(n)

if the three-prong test was indeed intended to be "exhaustive" of the elements necessary to establish "unfairness" under Section 5(a).

Regardless, the FTC may not declare an act or practice to be "unfair" within the meaning of Section 5(a) of the FTC Act unless the act or practice is "not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. 45(n). "This standard informs parties that the relevant inquiry here is a cost-benefit analysis … that considers a number of relevant factors, including the probability and expected size of reasonably unavoidable harms to consumers [that would be prevented through cessation of the challenged practice] … and the costs to consumers that would arise from [cessation of the challenged practice]." *Wyndham*, 799 F.3d at 255; *see* Meal Article at 23 ("under the third prong of Section 5(n)'s test, an act or practice may not be declared unfair "unless it is injurious in its net effects."). The courts also consider "the potential costs that the proposed remedy would impose on the parties and society in general." *Am. Fin. Servs. Ass'n v. F.T.C.*, 767 F.2d 957, 975 (D.C. Cir. 1985).

All that the FTC claims is "Kochava could implement safeguards to protect consumer privacy, such as blacklisting sensitive locations from its data feeds or removing sensitive characteristics from its data. Such safeguards could be implemented at a reasonable cost and expenditure of resources … Thus, the harms described above are not outweighed by countervailing benefits to consumers or competition." SAC at ¶ 114; *see id*. at ¶ 125 ("this substantial injury is not reasonably avoidable by consumers and is not outweighed by any countervailing benefits to competition or consumers."). This is the entirety of the FTC's allegations regarding the cost-benefit element of Section 5(n). *Compare Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116,

1121 (9th Cir. 2008) ("dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.").[9]

Nor does the SAC acknowledge any facts about the consumer benefits currently enjoyed by millions of consumers—for example, relevant advertising to consumers versus lack of filtration of vast junk or inapplicable content—that would no longer be available if Defendants will have to cease their challenged practices.  For example, the benefits of geolocation data services are undisputed for ad-tech companies, governments, and consumers. *See In re Smartphone Geolocation Data Application*, 977 F. Supp. 2d 129, 138-139 (E.D.N.Y. 2013) ("Geolocation technology provides a broad range of functions, from the vital to the prosaic"; listing vital services such as "enhanced 9–1–1 systems transmit geolocation data to 9–1–1 dispatchers"; "turn-by-turn driving directions", "localized weather information"; "recovery of lost or stolen smartphones"; "parental monitoring of children"; and "allowing advertisers access to geolocation data to promote nearby businesses.") Geolocation services serve pro-competitive, legitimate, and essential

---

[9] In ruling on Kochava's Motion to Dismiss the FTC's Complaint, this Court determined that because "the FTC seeks only an injunction requiring Kochava to 'implement safeguards to remove data associated with sensitive locations from its data feeds,'" the FTC "has adequately alleged that the purported injury to consumers is not outweighed by the countervailing benefits of that narrow subset of data."  Respectfully, the fact that the FTC's complaint "only" seeks an injunction is not part of the cost-benefit test nor does the FTC's requested remedy dispense with the requirement that the FTC sufficiently plead this element. *See* Meal Article at 24 ("The mere fact that the FTC's complaint 'only' seeks to require the defendant to cease and desist from its allegedly unfair practice says nothing whatever as to whether the challenged practice fails Section 5(n)'s cost-benefit test. Nor does the FTC's follow-on assertion that Kochava could cease including in its geolocation data feeds data associated with 'sensitive locations' by implementing 'safeguards' that would have a 'reasonable' cost.  That assertion merely re-states the legal conclusion that the costs of ceasing Kochava's challenged practice do not outweigh the benefits expected to be derived from such a cessation.").  As discussed above, the costs and benefits must be evaluated and pled to determine whether the challenged practice is unfair under Section 5(n). Further, the Court's reasoning was clearly only narrowly applicable to the location data at issue in the FAC, and not any other challenged practices in the SAC.  The Court's Order on Kochava's Motion to Dismiss FAC is completely silent on this issue. *See* Dkt. No. 71.

purposes in the modern-day commerce ecosystem. *In re Smartphone Geolocation Data Application*, 977 F. Supp. 2d at 138-139; *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 266 (3d Cir. 2016) ("Most of us understand that what we do on the Internet is not completely private. How could it be? We ask large companies to manage our email, we download directions from smartphones that can pinpoint our GPS coordinates, and we look for information online by typing our queries into search engines. We recognize, if only intuitively, that our data has to be going somewhere. And indeed it does, feeding an entire system of trackers, cookies, and algorithms designed to capture and monetize the information we generate.").

Taken together, Sections 5(a) and 5(n) confirm that meeting the three elements of Section 5(n)'s first sentence does not suffice to make an act or practice "unfair" within the meaning of Section 5(a). Section 5(a)'s plain language makes it clear that to be "unfair" an act or practice must be "marked by injustice, partiality, or deception," and under Section 5(n), to be found "unfair," an act or practice must also violate an established public policy. *See* Meal Article at 36 ("Section 5(a)'s plain language teaches that to be 'unfair' an act or practice must be 'marked by injustice, partiality, or deception,' and the plain language of Section 5(n)'s second and third sentences teach that where, in addition to satisfying the three prongs of Section 5(n)'s first sentence, an act or practice violates an established public policy (and thus would be 'marked by injustice') it can be found unfair.").

## V.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court dismiss with prejudice the FTC's Second Amended Complaint.

Dated: October 7, 2024                     Respectfully submitted,


By:   */s/ Craig J. Mariam*
      Craig J. Mariam
      Hazel M.B. Pangan
      Elena A. Kuzminova
      GORDON REES SCULLY MANSUKHANI, LLP
      999 W. Main Street, Suite 100
      Boise, ID 83702
      (208) 489-9095
      *cmariam@grsm.com*
      *hpangan@grsm.com*
      *ekuzminova@grsm.com*

      **Attorneys for Defendants Kochava Inc. and
      Collective Data Solutions, LLC**