BRIAN SHULL, IL Bar No. 6293797
JULIA A. HORWITZ, DC Bar No. 1018561
DAVID WALKO, VA Bar No. 96199
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Phone: (202) 326-3734
Fax: (202) 326-3062
bshull@ftc.gov
jhorwitz@ftc.gov
dwalko@ftc.gov

ELIZABETH C. SCOTT, IL Bar No. 6278075
Federal Trade Commission
230 S. Dearborn St., Ste. 3030
Chicago, IL 60604
Phone: (312) 960-5609
Fax: (312) 960-5600
escott@ftc.gov

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>KOCHAVA INC., corporation,<br><br>and<br><br>COLLECTIVE DATA SOLUTIONS, LLC, a limited liability company<br><br>Defendants. | **Case No. 2:22-cv-00377-BLW**<br><br>**RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) [DKT. 96]** |

## **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................ 1

II. LEGAL STANDARD.................................................................................... 2

III. ARGUMENT .............................................................................................. 2

   A. Defendants' Request for Judicial Notice Should Be Denied .............................................. 2

   B. The Second Amended Complaint Meets and Exceeds the Pleading Standard .................... 3

      1. This Court Properly Concluded that Section 5(n) of the FTC Act Plainly States the Elements of an Unfairness Claim ..................................................................... 3

         i. This Court properly rejected a predicate-violation requirement............................ 4

         ii. This Court properly concluded that there are no additional elements to an unfairness claim ................................................................................. 6

         iii. The legislative history supports this Court's reading of Section 5 ....................... 7

      2. This Court Properly Concluded that the FTC Has Pled Substantial Injury ................. 7

         i. There is no ambiguity in the FTC Act's use of the term "injury" .......................... 8

         ii. Even if the Court were to look to the legislative history, it supports the Court's prior holding................................................................................ 9

         iii. This Court properly held that Defendants' violation of consumers' privacy can be the basis for a finding of substantial injury................................................. 10

         iv. The Court correctly held that the FTC has pled that Defendants' actions are likely to expose consumers to secondary harms ................................................ 16

      3. This Court Correctly Concluded the FTC Has Properly Pled the Cost-Benefit Analysis................................................................................... 18

IV. CONCLUSION............................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957 (D.C. Cir. 1985) ..................................................... 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 18

*Carpenter v. U.S.*, 585 U.S. 296 (2018) ......................................................................... 13, 15, 16

*Davis v. HSBC Bank Nevada*, 691 F.3d 1152 (9th Cir. 2012) ..................................................... 4, 5

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ........................................................... 12

*FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009) ......................................................... 5, 11

*FTC v. Accusearch, Inc.*, 2007 WL 4356786 (D. Wy. Sept. 28, 2007) ........................................ 17

*FTC v. Amazon.com, Inc.*, 2016 WL 10654030 (W.D. Wash. July 22, 2016) ........................ 5, 20

*FTC v. AT&T Mobility LLC*, 883 F.3d 848 (9th Cir. 2018) ........................................................... 9

*FTC v. Commerce Planet, Inc.*, 642 Fed. Appx. 680 (9th Cir. 2016) ............................................ 4

*FTC v. Kochava Inc.*, 671 F. Supp. 3d 1161 (D. Idaho 2023) ............................................... passim

*FTC v. Kochava Inc.*, 715 F. Supp. 3d 1319 (D. Idaho 2024) ............................................... passim

*FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010) ....................................................... 4, 5, 12, 18

*FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375 (M.D. Fla. 2018) ....................................... 9, 10, 20

*FTC v. Walmart Inc.*, 664 F. Supp. 3d 808 (N.D. Ill. 2023) ......................................................... 5

*FTC v. Wyndham Worldwide Corporation*, 799 F.3d 236 (3d Cir. 2015) ............................... 5, 19

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (N.D. Cal. 2023) ........................................... 13

*Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014) ......................................................... 7

*Holley v. Tripp*, 2024 WL 3966444 (D. Idaho Aug. 27, 2024) ..................................................... 2

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ....................... passim

*In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185 (N.D. Cal. 2019) ................................ 13

*In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021) .............................. 13

*In re iPhone Application  Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................ 13

*In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 2024 WL 4532937 (N.D. Cal. Oct. 15, 2024) ................................................................................................ 17

*James v. Allstate Insurance Company*, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .......... 13, 14

*Javier v. Assurance IQ, LLC*, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ................................. 13

*Kyllo v. U.S.*, 533 U.S. 27 (2001) ............................................................................................... 16

*LabMD, Inc. v. FTC*, 894 F.3d 1221 (11th Cir. 2018) .................................................................. 4

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ................................................ 10

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................... 13

*Mitchell v. Tillett*, 715 F. App'x 741 (9th Cir. 2018) ................................................................... 3

*Negrete v. Los Angeles Cnty.*, 2023 WL 9318501 (C.D. Cal. Dec. 14, 2023) .............................. 8

*Patel v. Facebook, Inc.* 932 F.3d 1264 (9th Cir. 2019) ......................................................... 12, 13

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................................................. 10

*Tcherepnin v. Knight*, 389 U.S. 332 (1967) ................................................................................. 9

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .................................................................... 10

*U.S. v. Enick*, 2017 WL 2531943 (D. Idaho June 9, 2017) .......................................................... 8

*U.S. v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010) .................................................................. 15, 16

*U.S. v. Ornelas*, 906 F.3d 1138 (9th Cir. 2018) .......................................................................... 9

*Valadez v. Cnty. of Los Angeles*, 2024 WL 3153207 (C.D. Cal. June 24, 2024) ......................... 2

*Wilcox v. Swapp*, 360 F. Supp. 3d 1140 (E.D. Wash. 2019) ....................................................... 6

**Statutes**

15 U.S.C. § 45(n) .............................................................................................................. passim

15 U.S.C. § 45(a) ..................................................................................................................... 6

15 U.S.C. § 57b(a)(2) ................................................................................................................ 7

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) ........................................................................... 9

FTC Statement of Policy on the Scope of the Consumer Unfairness Jurisdiction ................. 8, 10

Restatement (Second) of Torts § 652B cmt. b (Am. Law Inst. 1977) .......................................... 12

S. Rep. 103-130, 1993 WL 322671 (1993)............................................................................. 7, 8, 9

## I.    INTRODUCTION

In the middle of this litigation, Defendant Kochava Inc. ("Kochava") transferred its data broker business, the business that is at the heart of this matter, to a subsidiary, Collective Data Solutions, LLC ("CDS" and, collectively with Kochava, "Defendants"). As a result, Plaintiff Federal Trade Commission ("FTC") filed a Second Amended Complaint for Permanent Injunction and Other Relief, Dkt. 86, ("Second Amended Complaint" or "SAC") naming CDS as a defendant to ensure that any relief entered by this Court covered Defendants' unfair practices.

The FTC limited the additions made to the Second Amended Complaint because this Court had already issued two well-reasoned and thorough opinions on Kochava's motions to dismiss, ultimately concluding that the FTC had alleged sufficient facts to permit this case to move forward. Indeed, the Second Amended Complaint keeps the same allegations as the prior complaint regarding Kochava, while only adding new allegations to demonstrate that CDS has continued Kochava's unlawful practices.

Instead of accepting this Court's prior holdings by answering the Second Amended Complaint, Defendants waste the Court's and the parties' time and resources by again arguing that the FTC has failed to plead the elements of an unfairness claim. But this Court has already thoroughly addressed and rejected these arguments and Defendants do not rely on a change in the law as a reason to re-raise their faulty arguments. Rather, Defendants improperly request judicial notice of and repeatedly cite to an unpublished law review article that criticizes the Court's prior opinions but adds nothing new to the discussion.

As this Court has already determined, Defendants' arguments are contrary to the law and common sense. *FTC v. Kochava Inc.*, 671 F. Supp. 3d 1161 (D. Idaho 2023); *FTC v. Kochava Inc.*, 715 F. Supp. 3d 1319 (D. Idaho 2024). The Court should deny Defendants' motion.

## II.    LEGAL STANDARD

To survive a motion to dismiss, "the facts alleged must plausibly give rise to an entitlement to relief." *In re Facebook, Inc. Internet Tracking Litig. ("Facebook Tracking")*, 956 F.3d 589, 601 (9th Cir. 2020) (quotation omitted). "[A]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party."[1] *Id*.

Additionally, "[t]he party requesting judicial notice bears the burden of showing the particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source whose accuracy cannot reasonably be questioned." *Holley v. Tripp*, 2024 WL 3966444, at *2 (D. Idaho Aug. 27, 2024) (cleaned up).

## III.    ARGUMENT

### A.  Defendants' Request for Judicial Notice Should Be Denied

Along with their Memorandum in Support of Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), Dkt. 96-1, ("Motion" or "Mot."), Defendants request the Court take judicial notice of a yet-to-be-published law review article. (Request for Judicial Notice in Support of Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Request for Judicial Notice"), Dkt. 96-2.) However, courts routinely reject parties' attempts to seek judicial notice of law review articles. *Valadez v. Cnty. of Los Angeles*, 2024 WL 3153207, at *10 (C.D. Cal. June 24, 2024) (collecting cases). Indeed, the Ninth Circuit rejected a request for judicial notice of a law review article because a law review article "is a source whose accuracy may be debated and questioned." *Mitchell v. Tillett*, 715 F. App'x 741,

---

[1] Throughout their brief, Defendants make factual arguments that misrepresent and are contradicted by the Second Amended Complaint. For example, Defendants repeatedly claim their data feeds do not contain personally-identifiable information ("PII"). (*See, e.g.,* Mot. at 6-8, 14; *but see, e.g.,* SAC ¶¶ 80-90, 123.) Such factual arguments are improper at this stage.

742 n.1 (9th Cir. 2018).

Defendants' attempted sleight-of-hand here demonstrates precisely this point. Although Defendants ask the Court to take notice of the "fact" that the law review article makes certain statements (Request for Judicial Notice at ¶¶ 2-13), Defendants do not rely on the existence of these statements in the Motion. Rather, Defendants rely on the *content* of the statements as the basis for their arguments (*see, e.g.,* Mot. at 10) and, as laid out below, the FTC very much debates and questions the accuracy of those arguments.

Defendants' improper request for judicial notice should be denied.

### B.    The Second Amended Complaint Meets and Exceeds the Pleading Standard

Relying almost entirely on this improperly noticed law review article that offers nothing new, Defendants again raise arguments this Court has already rejected. Specifically, Defendants argue that the FTC has failed to plead: 1) all necessary elements of an unfairness claim; 2) substantial injury; and 3) a cost-benefit analysis.[2] As this Court has previously held and as further explained below, each of these arguments remains unpersuasive.

### 1.    This Court Properly Concluded that Section 5(n) of the FTC Act Plainly States the Elements of an Unfairness Claim

The FTC's Second Amended Complaint alleges a single count of unfairness under Section 5 of the FTC Act, similar to its two predecessor complaints. (SAC ¶ 134.) As this Court has previously held, "an act or practice is 'unfair' under Section 5(a)" if it "[1] causes or is likely to cause substantial injury to consumers which is [2] not reasonably avoidable by consumers themselves and [3] not outweighed by countervailing benefits to consumers or to competition." *Kochava*, 715 F. Supp. 3d at 1322 (insertions in original).

---

[2] Defendants do not appear to offer any argument that the injury was "reasonably avoidable by consumers themselves." *See* 15 U.S.C. § 45(n).

Despite the Court rejecting Defendants' interpretation of Section 5 almost a year and a half ago (*Kochava*, 671 F. Supp. 3d at 1169-71), Defendants once again argue that these three elements are insufficient to plead an unfairness claim under the FTC Act. (Mot. at 5, 16-18, 20.) Defendants make this argument in two different ways, neither of which is persuasive.

### i. This Court properly rejected a predicate-violation requirement

Defendants first argue that an unfairness claim must be grounded in a "well-established legal policy." (*Id*. at 16.) In making this argument, Defendants rely solely on the Eleventh Circuit's opinion in *LabMD, Inc. v. FTC*, 894 F.3d 1221 (11th Cir. 2018). (Mot. at 16-18.) Yet this Court already reviewed the *LabMD* decision and rejected imposing a predicate-violation requirement on an unfairness count. *Kochava*, 671 F. Supp. 3d at 1170-71. The Court correctly grounded its decision in two distinct conclusions.

First, the Court concluded that expanding the elements of an unfairness claim beyond the three elements identified in Section 5 of the FTC Act was contrary to Circuit precedent. *Id*. at 1170. As this Court noted, the Ninth Circuit has limited the elements of an unfairness claim to the statutorily listed three elements. *Id*. (citing *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1155 (9th Cir. 2010) and *Davis v. HSBC Bank Nevada*, 691 F.3d 1152, 1168 (9th Cir. 2012)); *see also FTC v. Commerce Planet, Inc.*, 642 Fed. Appx. 680, 681 (9th Cir. 2016). Defendants attempt to rebut the Court's conclusion by arguing that those decisions did not address the predicate-violation theory. (Mot. at 16 n.8.) But the Court was well aware of this point when it issued its opinion and still determined that the *LabMD* "approach is inconsistent with Ninth Circuit precedent." *Kochava*, 671 F. Supp. 3d at 1170.

This Court's prior analysis and conclusion are well founded. Although Defendants suggest that the predicate-violation requirement arises from the "plain meaning" of Section 5(n)

(Mot. at 17), the Ninth Circuit's definitive pronouncements of the elements of unfairness

contradict that suggestion. In *Neovi*, the Ninth Circuit directly quoted from Section 5(n) in

providing the elements of an unfairness claim. *Neovi*, 604 F.3d at 1155. And in *Davis*, the Ninth

Circuit expressly stated, "[a] practice is 'unfair' under Section 5 *only if* it 'causes or is likely to

cause substantial injury to consumers which is not reasonably avoidable by consumers

themselves and not outweighed by countervailing benefits to consumers or to competition.'" 691

F.3d at 1168 (quoting 15 U.S.C. § 45(n)) (emphasis added). In short, as another district court in

this Circuit has concluded, "[t]he three-part test for whether a practice is 'unfair' under the FTC

Act, found in the statute itself, is followed without embellishment by courts in this Circuit." *FTC*

*v. Amazon.com, Inc.*, 2016 WL 10654030, at *6 (W.D. Wash. July 22, 2016).[3]

This Court also rejected Defendants' argument as contrary to the text of the FTC Act.

*Kochava*, 671 F. Supp. 3d at 1170-71; *see also FTC v. Accusearch Inc.*, 570 F.3d 1187, 1194

(10th Cir. 2009) (holding that the "premise" of defendant's argument "appears to be that a

practice cannot be an unfair one unless it violates some law independent of the FTCA. But the

FTCA imposes no such constraint."); *FTC v. Walmart Inc.*, 664 F. Supp. 3d 808, 833 n.27 (N.D.

Ill. 2023) (declining to follow *LabMD* because, among other reasons, "§ 5(n) suggests that public

policy considerations are an optional analysis"). Defendants' attempt to rebut this holding rests

on an argument that the second and third sentences of Section 5(n) somehow compel the

conclusion that the FTC *must* allege a predicate-violation as part of an unfairness claim. (Mot. at

---

[3] Defendants criticize the *Amazon* opinion as incorrectly applying *FTC v. Wyndham Worldwide Corporation*, 799 F.3d 236 (3d Cir. 2015). (Mot. at 16 n.8.) Defendants state that the *Wyndham* court agreed with the *LabMD* analysis. But this is incorrect. *Wyndham*, 799 F.3d at 244 ("*Arguably*, § 45(n) *may* not identify all of the requirements for an unfairness claim.") (emphasis added). Moreover, the *Amazon* court did not rely on *Wyndham* when it concluded that courts in the Ninth Circuit follow the three-element test. 2016 WL 10654030, at *6.

17-18.) But this Court previously explained those sentences are a reason to *reject* Defendants'

argument: "Congress easily could have added such a requirement when it enacted Section 5(n),

but it did not. Instead, it specified that public policy may only serve as 'evidence to be

considered with all other evidence,' but 'may not serve as a primary basis,' for deeming an act or

practice unfair." *Kochava*, 671 F. Supp. 3d at 1170 (quoting 15 U.S.C. § 45(n)).[4]

### ii.  This Court properly concluded that there are no additional elements to an unfairness claim

Defendants also argue that an unfair act or practice under the FTC Act must be "marked

by injustice, partiality, or deception." (Mot. at 20.) Defendants do not, however, provide any

reasoning to support this conclusion and it should be rejected. Indeed, this Court has already

rejected a similar argument. *Kochava*, 671 F. Supp. 3d at 1171 (rejecting argument that an unfair

practice must be "immoral, unethical, oppressive, or unscrupulous."). As this Court explained,

"neither the statutory text nor Ninth Circuit precedent supports adding elements to the standard

set forth in Section 5(n)." *Id*.

In addition, requiring an unfair act to also be deceptive would impermissibly conflate

Section 5's prohibition on both "unfair or deceptive acts or practices." 15 U.S.C. § 45(a); *Wilcox

v. Swapp*, 360 F. Supp. 3d 1140, 1145 (E.D. Wash. 2019) ("Courts should interpret statutes as a

whole, giving meaning to each word and avoiding interpretations that render other words or

provisions of the statute inconsistent, meaningless, or superfluous."). Furthermore, Defendants'

argument is contrary to other provisions of the FTC Act. Section 19 of the Act creates a process

---

[4] Defendants argue that the second and third sentences of Section 5(n) cannot be reconciled with limiting the elements of an unfairness claim to the three elements in the first sentence. (Mot. at 17-18.) But this is incorrect. The second and third sentences of Section 5(n) allow courts and the FTC to consider public policy in determining what is a substantial injury but prohibit public policy from being the sole evidence. *See Kochava*, 671 F. Supp. 3d at 1170-71. Indeed, this is the most natural reading of sentences that refer to public policy as "evidence."

by which the FTC can seek specific relief from district courts for unfair or deceptive practices "which a reasonable man would have known under the circumstances [were] dishonest or fraudulent[.]" 15 U.S.C. § 57b(a)(2). Thus, the FTC Act specifically anticipates that there are unfair acts or practices that are neither dishonest nor fraudulent.

### iii.   The legislative history supports this Court's reading of Section 5

The Court's prior opinions rely on its well-reasoned interpretation of Section 5. Because there is no room for ambiguity in the interpretation of the statute, there is no need to resort to legislative history. *See Haro v. City of Los Angeles*, 745 F.3d 1249, 1257-58 (9th Cir. 2014). However, even if a review of the legislative history were necessary, it supports the Court's conclusion. The Senate Report, cited and relied upon by Defendants, states that the purpose of Section 5(n) is to "limit unlawful 'unfair acts or practices' *to only those* which cause or are likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or competition." S. Rep. 103-130, at 4, 1993 WL 322671, at *4 (1993) ("Senate Report") (emphasis added).

In short, the elements of an unfairness claim are those set forth in Section 5(n) and Defendants' arguments to the contrary should be rejected.

### 2.   This Court Properly Concluded that the FTC Has Pled Substantial Injury

In its Second Amended Complaint, the FTC alleges the same two theories of injury to consumers caused by Defendants' actions as in its prior complaints: "First, by putting them at an increased risk of suffering secondary harms, such as stigma, discrimination, physical violence, and emotional distress. And second, by invading their privacy." *Kochava*, 715 F. Supp. 3d at 1323. And after reviewing the FTC's allegations, this Court concluded, "The FTC has alleged facts sufficient to proceed under both theories." *Id*. The Second Amended Complaint continues to allege those same sufficient facts, while adding new allegations limited to Kochava's transfer

of its data broker business to its subsidiary, CDS.

Crucially, Defendants do not challenge the sufficiency of these new allegations. Instead, they focus on challenging this Court's prior conclusion that the FTC's theories of injury are viable under the FTC Act. (*See* Mot. at 9-20.) Yet this Court's prior conclusion was well-reasoned and Defendants offer no reason for the Court to revisit it. *See, e.g., Negrete v. Los Angeles Cnty.*, 2023 WL 9318501, at *6 (C.D. Cal. Dec. 14, 2023) ("Similarly, the Court previously analyzed Plaintiff's IIED claim and denied Defendants' motion to dismiss the claim. As such, the Court declines to rehash this analysis and DENIES the Motion as to Claims Two and Three.") (internal citation omitted). In any event, as explained below, Defendants' arguments are, once again, unpersuasive.

### i.  There is no ambiguity in the FTC Act's use of the term "injury"

Defendants argue that intangible harms cannot constitute substantial injury under Section 5 of the FTC Act. (Mot. at 1-2, 9-11.) In making this argument, Defendants rely, incorrectly, on the FTC Statement of Policy on the Scope of the Consumer Unfairness Jurisdiction (Dec. 17, 1980) (*appended to In re Inter'l Harvester Co.*, 104 F.T.C. 949, 1070 (FTC 1984) ("1980 Unfairness Statement")) and the Senate Report. (Mot. at 1-2, 9-11.) But Defendants skip a step. In the Ninth Circuit, "[i]f the plain meaning of the statute is unambiguous, that meaning is controlling" and a court should not look beyond the statute, including to legislative history, "to determine if Congress meant something else." *U.S. v. Enick*, 2017 WL 2531943, at *2 (D. Idaho June 9, 2017) (quotation omitted). Defendants never argue, let alone show, that Section 5's use of the term "injury" is ambiguous such that resort to the legislative history is necessary.

Indeed, this Court has already interpreted the "plain language of Section 5(n)" to include "any tangible or intangible invasion of a legally protected interest." *Kochava*, 671 F. Supp. 3d at

1173. As this Court explained, "'injury' … is a term of art in the legal field that refers broadly to any 'actionable invasion of a legally protected interest.'" *Id*. (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)); s*ee also U.S. v. Ornelas*, 906 F.3d 1138, 1143 (9th Cir. 2018) ("[W]hen Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, we presume that Congress knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken.") (quotation omitted). Defendants have pointed to nothing in the "plain language" of Section 5 to challenge this Court's well-reasoned conclusion.[5] Because the text of the statute is clear, the Court's analysis should end here.

### ii. Even if the Court were to look to the legislative history, it supports the Court's prior holding

Although the Court need not look to the legislative history given the unambiguous nature of the statute, the Court has already reviewed the same legislative history that Defendants cite in support of their argument. (*Compare* Mot. at 1-2 (citing Senate Report) with *Kochava*, 671 F. Supp. 3d at 1174 (citing Senate Report).) And after reviewing that legislative history, the Court rightly concluded that the "generalizations" contained in it "do not limit Section 5(n)'s reach only to tangible harms." *Kochava*, 671 F. Supp. 3d at 1174; *see also FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1395 (M.D. Fla. 2018) ("[N]either the legislative history nor the current law

---

[5] This Court's holding also comports with two additional observations made by the Ninth Circuit in connection with the FTC Act. First, the Ninth Circuit explained that "[i]n drafting Section 5, Congress deliberately gave the FTC broad enforcement powers." *FTC v. AT&T Mobility LLC*, 883 F.3d 848, 854 (9th Cir. 2018). Second, in the same case, the Ninth Circuit further held that "[b]ecause the FTC Act is a remedial statute, we are 'guided by the familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes.'" *Id*. (quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967)). It would be illogical to conclude that Congress gave the FTC broad enforcement powers to prevent substantial injury to consumers, but only in the narrow way that Defendants argue.

requires proof of tangible harm to the exclusion of intangible harm[.]"). Defendants fail to raise any new arguments regarding this history that could alter the Court's analysis.

Instead, Defendants attempt to confuse the issue by conflating "subjective injury" with "intangible injury"—a fallacy the Supreme Court has expressly rejected. (Mot. at 1-2, 9-11.) As the Supreme Court clarified in another context, an intangible injury can be a concrete injury: "[W]e have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("Various intangible harms can also be concrete."); *Kochava*, 671 F. Supp. 3d at 1172 ("[A] defendant can cause substantial injury under Section 5(n) merely by creating a significant risk of concrete harm.") (quotation omitted).

In their brief, Defendants argue that the FTC "admit[s] the term 'substantial injury' requires 'tangible injury'" in the 1980 Unfairness Statement. (Mot. at 9-10; *see also id*. at 1 (misquoting the 1980 Unfairness Statement).)[6] But this assertion is inaccurate. The relevant part of the Unfairness Statement deals with the subjectivity, not the tangibility, of substantial harm: "Emotional impact and other more *subjective* types of harm, on the other hand, will not ordinarily make a practice unfair." 104 F.T.C. at 1073 (emphasis added). The 1980 Unfairness Statement does not "state[] that intangible injury is excluded from the definition of substantial injury." *Roca Labs*, 345 F. Supp. 3d at 1397.

### iii. This Court properly held that Defendants' violation of consumers' privacy can be the basis for a finding of substantial injury

Next, Defendants argue the Second Amended Complaint fails because the FTC did not

---

[6] Ironically, Defendants rely heavily on the 1980 Unfairness Statement despite their own citation to *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). (Mot. at 1.) In any event, *Loper Bright* is inapplicable. As this Court previously held, "Here, the FTC is simply asking a court to interpret and apply a statute, as written." *Kochava*, 671 F. Supp. 3d at 1180.

plead the elements of the common law tort of invasion of privacy. (Mot. at 2-3, 11-14.) But the FTC is not alleging a violation of the common law. Rather, it is alleging a violation of the FTC Act. And this Court previously concluded that "under the plain language of the FTC Act, a defendant whose acts or practices violate consumer privacy may be said to inflict an 'injury' upon consumers within the meaning of Section 5(n)." *Kochava*, 671 F. Supp. 3d at 1174; *see also Accusearch*, 570 F.3d at 1194 (noting the FTC alleged substantial injury "partly by the subversion of consumer privacy protections afforded by the Telecommunications Act"). There is no additional requirement that the FTC allege that the acts or practices in question also meet the elements of the common law tort of invasion of privacy. This stands to reason: the elements of a violation of the FTC Act are defined in Section 5 and not in the common law.

Improperly relying on the elements of the common law tort, Defendants argue that the FTC's allegations fail because 1) there is no public disclosure by Defendants of consumers' data; 2) the data at issue is insufficiently sensitive to constitute substantial injury; and 3) the data at issue is public. (Mot. at 11-14.) As explained below, each of these arguments runs contrary to the law and the Court's prior holdings.

**Public Disclosure**. Defendants improperly seek to impose a new rule that a consumer's privacy is not violated unless the consumer's information is widely distributed to the public. (Mot. at 11-12.) Under Defendants' view, a party can take any number of invasive actions with a consumer's personal information as long as they do not publish it to the world. This is incorrect.

As this Court previously held, "privacy has long been a legally protected interest at the state, local, and federal levels" and thus "an invasion of privacy may constitute an injury that gives rise to liability under Section 5(a)." *Kochava*, 715 F. Supp. 3d at 1324. There is nothing in the caselaw that requires such an invasion to include public disclosure. To the contrary, the Ninth

Circuit has explained that "an intrusion into privacy rights by itself makes a defendant subject to liability." *Patel v. Facebook, Inc.* 932 F.3d 1264, 1274 (9th Cir. 2019); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("[P]rivacy torts do not always require additional consequences to be actionable."); Restatement (Second) of Torts § 652B cmt. b (Am. Law Inst. 1977) (under the tort of intrusion upon seclusion, liability is based on the "intrusion itself").

In a case that this Court noted is "more factually similar to this one" (*Kochava*, 715 F. Supp. 3d at 1325), the Ninth Circuit held that compiling "highly personalized profiles from sensitive browsing histories and habits" plausibly constituted an invasion of privacy. *Facebook Tracking*, 956 F.3d at 604, 606. Similar to the allegations in the Second Amended Complaint, the *Facebook* plaintiffs alleged that Facebook was compiling these profiles and selling them to third parties. (*Compare* SAC ¶¶ 2, 21, 26, 67, 83, 95, 116, *with Facebook Tracking*, 956 F.3d at 596.) The Ninth Circuit did not impose a prerequisite of public disclosure before alleging a privacy harm and Defendants have provided no reason for the Court to do so.

**Substantiality of Injury**. In this case, this Court has already held that the FTC's "alleged invasion of privacy—which is substantial both in quantity and quality—plausibly constitutes a 'substantial injury' to consumers." *Kochava*, 715 F. Supp. 3d at 1325 (citing *Neovi*, 604 F.3d at 1157). Nonetheless, Defendants attempt to impose another new requirement on the FTC's unfairness claim – that to constitute "substantial injury," Defendants' invasion of privacy must be "highly offensive to a reasonable person." (Mot. at 12-14.) This is incorrect. "Highly offensive" is not an element of an unfairness claim.

Undeterred by this Court's clear ruling, Defendants erroneously argue that courts have concluded that the types of data at issue here are not sensitive. (Mot. at 12-13.) For example, Defendants again cite the first decision on a motion to dismiss in *In re Google Location Hist.*

*Litig.* for the proposition that "[a] person's general location" is not sensitive. (Mot. at 12, *citing* 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019).) But the FTC alleges a far more detailed invasion of privacy than "a person's general location." Moreover, Defendants ignore the *Google* court's second opinion on the *amended* complaint in which the court concluded that the plaintiffs *had* adequately stated claims based on alleged invasions of privacy because, "[m]uch like the continual GPS tracking in *Jones* and the geolocation records created when calls occurred in *Carpenter*, Google's alleged collection and storage of location data creates a detailed and comprehensive record of a users' [sic] individual movements over time." *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021).[7] The same is true here.

Defendants also cite to *James v. Allstate Insurance Company*, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) for the proposition that the "disclosure to third-parties of *consented-to* data" is not "highly offensive." (Mot. at 13-14 (emphasis in original).) Defendants apparently believe that as long as consumers consent to *one* use of their data, consumers consent to all uses. But that is not the law. *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1039 (N.D. Cal. 2023) ("Plaintiff gave consent for data collection to app developers, but not to Defendant."); *see also Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021) ("Consent is … generally limited to the specific conduct authorized."). Nor is that what *James* states. As the

---

[7] The other cases cited by Defendants for this argument are unpersuasive. (Mot. at 12-13.) Both *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) and *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) have had their holdings limited by the Ninth Circuit. *See Facebook Tracking*, 956 F.3d at 606 n.8. Moreover, the data at issue in this case is much more similar to the data addressed in more recent controlling authority. *See, e.g., Carpenter v. U.S.*, 585 U.S. 296, 311 (2018) ("A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales."); *Patel*, 932 F.3d at 1273 (holding facial-recognition technology invaded consumers' privacy when it could be used to "obtain information that is detailed, encyclopedic, and effortlessly compiled") (cleaned up).

*James* court explained, Allstate transferred the data at issue to a third party, but "plaintiff alleges no use by the third party other than storing that information for [Allstate] to refer back to." 2023 WL 8879246, at *6 (alteration in original) (quotation omitted). Here, the Second Amended Complaint makes clear that consumers do not consent to Kochava's practices. (*See, e.g.,* SAC ¶¶ 2, 46, 58, 66, 111-12.) Indeed, the fact that Defendants believe that the consent screen included at paragraph 111 of the Second Amended Complaint provides Defendants with sufficient consent for their unfair practices is further evidence of the need for this action.

Defendants also argue, again contrary to this Court's prior holding, that the FTC has not alleged that the substantial injury is quantitative in nature. (Mot. at 3 n.3.) Despite acknowledging that the Second Amended Complaint alleges that their actions affect millions of consumers, Defendants argue that this is insufficient because not every consumer will be linked to sensitive information. (*Id*.) In addition to attempting to hold the FTC to a level of specificity incompatible with the motion to dismiss standard, Defendants simply ignore that the Second Amended Complaint contains specific examples of Defendants' practices violating millions of consumers' privacy. For example, the Second Amended Complaint alleges that Defendants' Database Graph product contains sensitive information for about 300 million U.S. consumers. (SAC ¶¶ 49-52.) Likewise, the Second Amended Complaint alleges Defendants used information from pregnancy, ovulation, and menstruation tracking apps to classify 11.4 million consumers as "expecting parents." (*Id*. ¶ 74.) As yet another example, the Second Amended Complaint alleges that Defendants track consumers to their homes and advertise having over 180 million households associated with email addresses, phone numbers, and MAIDs. (*Id.* ¶ 88-89.)

The Second Amended Complaint adequately pleads that the injury caused by Defendants' actions is substantial, both qualitatively and quantitatively.

**Public Nature of Data**. Finally, Defendants once again argue that the data they collect is already in the public eye and therefore cannot be sensitive. (Mot. at 14.) But Defendants ignore the FTC's allegations that the information revealed by the data is not readily ascertainable through physical observation. For example, Defendants' geolocation data is often precise to less than 10 meters – precise enough to identify not just what building someone is in, but also what room. (SAC ¶¶ 3, 29.) As the Supreme Court noted in *Carpenter*, a "cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." 585 U.S. at 311.

Moreover, the comprehensive, "encyclopedic" nature of Defendants' data is something that is beyond the accessibility of the general public through other means. *Id.* at 309; *see also U.S. v. Maynard*, 615 F.3d 544, 560 (D.C. Cir. 2010) ("It is one thing for a passerby to observe or even follow someone during a single journey…. It is another thing entirely for that stranger to pick up the scent the next day and the day after that, week in and week out….") *aff'd sub nom. U.S. v. Jones*, 565 U.S. 400 (2012). Using multiple data points to build comprehensive profiles of consumers is the very purpose of Defendants' 360-degree perspective. *See Facebook Tracking*, 956 F.3d at 603-04.

Likewise, Defendants cite to this Court's first opinion that "any private information that is revealed in Kochava's data bank can be ascertained only by *inference*." (Mot. at 14 (quoting *Kochava*, 671 F. Supp. 3d at 1175) (emphasis in original).) But they simply ignore the Court's second opinion that the new allegations added by the FTC, included in the Second Amended Complaint, satisfied the Court's concern in this regard. *Kochava*, 715 F. Supp. 3d at 1325.

Further, the Court's holding that the data collected, used, and disclosed by Defendants can be the basis of a substantial injury under the FTC Act is consistent with the caselaw. In

*Carpenter*, the Supreme Court held that individuals have an expectation of privacy in their mobile location data *because of* the inferences to be drawn from that data, that is "the time-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but *through them* his 'familial, political, professional, religious, and sexual associations.'" 585 U.S. at 311 (citation omitted) (emphasis added). The Ninth Circuit has likewise concluded that "individuals have a reasonable expectation of privacy in collections of information *that reveal* 'familia[l], political, professional, religious, and sexual associations.'" *Facebook Tracking*, 956 F.3d at 604 n.7 (emphasis added) (*quoting Carpenter*); *see also Maynard*, 615 F.3d at 562 ("A person who knows all of another's travels can deduce whether he is a weekly church goer, a heavy drinker, a regular at the gym, an unfaithful husband, an outpatient receiving medical treatment, an associate of particular individuals or political groups – and not just one such fact about a person, but all such facts."). Concluding that inferences cannot serve as the basis of privacy invasions would give a pass to modern privacy-invading technology. *See Kyllo v. U.S.*, 533 U.S. 27, 36 (2001) (explaining such a conclusion "would validate even the 'through-the-wall' technologies").

Moreover, Defendants specifically market that their data can be used to identify and target consumers based on inferences drawn from its data. (*See, e.g.,* SAC ¶¶ 71, 74-76, 121-22.) Defendants cannot argue these inferences are strong enough to be the foundation of their business model, but too weak to sustain a claim that their use of these inferences is unfair.

### iv.  The Court correctly held that the FTC has pled that Defendants' actions are likely to expose consumers to secondary harms

This Court previously concluded that "the FTC plausibly alleges that Kochava causes or is likely to cause substantial injury to consumers by selling massive amounts of private and encyclopedic information that puts consumers at a significant risk of suffering secondary harms."

*Kochava*, 715 F. Supp. 3d at 1324 (quotation omitted). Yet despite the Second Amended Complaint containing identical allegations, Defendants attempt three baseless challenges.

First*,* Defendants argue that the secondary harms alleged, which include stigma, discrimination, physical violence, and emotional distress, are "intangible" harms and thus excluded from the FTC Act. (Mot. at 10 n.6, 14.) But, for the reasons explained above, "substantial injury" as used in Section 5 includes intangible injuries. Moreover, these injuries are not speculative ones and courts have concluded that similar injuries may constitute "substantial injury" under the FTC Act. *See FTC v. Accusearch, Inc.*, 2007 WL 4356786, at *8 (D. Wy. Sept. 28, 2007) (finding substantial injury element satisfied, *inter alia*, by evidence of "a host of emotional harms that are substantial and real and cannot fairly be classified as either trivial or speculative"); *In re: Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 4532937, at *29 (N.D. Cal. Oct. 15, 2024) (allegations of "body image and eating *disorders*" and "youth addiction" met substantial injury element under Section 5) (emphasis in original).

Second*,* Defendants argue that the FTC misapplies the "likely to cause" standard. (Mot. at 15-16.) Defendants suggest that the definition of "likely to cause" excludes "something that has a low likelihood." (Mot. at 15.) But Defendants do not explain how or why the FTC's allegations do not meet their proposed definition, nor do they explain what the FTC would need to plead to meet it. In short, Defendants simply supply their preferred definition of "likely" and offer the conclusory assertion that the FTC has not met that definition. However, the FTC has adequately pled that Defendants' conduct causes or is likely to cause substantial injury and the Court should reject Defendants' argument to the contrary.

Third, Defendants also take issue with this Court following Ninth Circuit precedent that "substantial injury" includes "creating 'a significant risk of concrete harm.'" *Kochava*, 671 F.

17

Supp. 3d at 1172 (quoting *Neovi*, 604 F.3d at 1157). Defendants argue this Court erred because the "significant risk" standard is to determine when substantial injury exists rather than when one is "likely." (Mot. at 15-16 n.7.) But Defendants' argument is irrelevant. Even under Defendants' theory, the FTC can plead that Defendants *cause* substantial injury by creating a significant risk of injury. And that is precisely what this Court previously held: "In sum, the FTC plausibly alleges that Kochava causes or is likely to cause substantial injury to consumers by selling massive amounts of private and encyclopedic information that puts consumers at a significant risk of suffering secondary harms."[8] *Kochava*, 715 F. Supp. 3d at 1324 (quotation omitted).

Ultimately, Defendants want this Court to impose a pleading standard far beyond the plausibility standard imposed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The FTC has alleged that Defendants' practices cause or are likely to cause substantial injury by exposing consumers to secondary harms. (SAC ¶¶ 100-09, 124.) The FTC further supports these allegations by demonstrating that the same type of data sold by Defendants has been used in the marketplace to injure consumers. (*Id.* ¶¶ 107-08). Indeed, Defendants themselves allow their customers to target consumers based on sensitive characteristics. (*See, e.g., id.* ¶¶ 71, 121.) These allegations are sufficient at the pleading stage of this matter. *Kochava*, 715 F. Supp. 3d at 1324.

### 3. This Court Correctly Concluded the FTC Has Properly Pled the Cost-Benefit Analysis

Finally, Defendants argue this Court was wrong in previously concluding that the FTC had adequately pled the third element of an unfairness claim: that the substantial injury is "not outweighed by countervailing benefits to consumers or to competition." (Mot. at 18 (quoting 15 U.S.C. § 45(n)).) In reaching its conclusion, the Court explained that, in making the cost-benefit

---

[8] Defendants also fail to explain how a "significant risk" differs from "likely" or even their preferred definition of "likely."

analysis, "courts consider 'the potential costs that the proposed remedy would impose on the parties and society in general.'" *Kochava*, 671 F. Supp. 3d at 1176 (quoting *Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 975 (D.C. Cir. 1985)). And the remedy sought by the FTC – an injunction that Defendants implement safeguards to protect consumers' privacy – is sufficiently narrow as to not outweigh any purported benefits. *Kochava*, 671 F. Supp. 3d at 1176.[9]

The caselaw cited by Defendants does not conflict with this Court's conclusion. Indeed, Defendants themselves cite to *American Financial Services Association* for the very same proposition as this Court. (Mot. at 18.) They also point to the Third Circuit's opinion in *Wyndham* that noted that the cost-benefit analysis "considers a number of relevant factors, including" the "probability and expected size" of the harm and the "costs to consumers that would arise" from stopping the harm. 799 F.3d at 255. But this is precisely what the FTC alleges. The FTC alleges that the injury caused by Defendants is substantial, both qualitatively and quantitatively. (SAC ¶¶ 91-109.) The FTC further alleges that this injury could be corrected through safeguards that could be implemented at a reasonable cost and expenditure of resources and even gives examples of such safeguards. (*Id*. ¶ 114.) Finally, the Second Amended Complaint alleges that consumers do not know about, consent to, or even want Defendants' purported services. (*See, e.g., id*. ¶¶ 46, 58-59, 66, 110-12, 114, 125.) Thus, the cost to consumers of stopping Defendants' illegal practices that consumers do not know about, consent to, or want is low. Defendants ignore these allegations.

As a last gasp, Defendants argue that the Second Amended Complaint does not address

---

[9] The FTC's original complaint, on which this opinion is based, was focused on Kochava's location data practices. Although the Amended Complaint and, now, the Second Amended Complaint have expanded the allegations to include additional data feeds, the Court's reasoning remains applicable – the injunctive relief sought by the FTC would focus on Kochava's use and disclosure of consumers' sensitive data.

the purported benefits of their unfair practices. (Mot. at 19-20.) But this is again an argument this Court has already considered and rejected. *Kochava*, 671 F. Supp. 3d at 1176. Defendants add nothing new for the Court to consider.

Whether there are benefits to Defendants' illegal activities is a question of fact unsuitable for consideration at this stage. Indeed, although Defendants provide a list of purported benefits offered by location data, it is a question of fact whether any of the purported uses even apply to Defendants' practices.[10] (Mot. at 19.) Indeed, contrary to their suggestion, Defendants are not providing data to "9-1-1 dispatchers" or giving consumers "turn-by-turn driving directions." (*Id*.)

This Court properly concluded the FTC had adequately pled the cost-benefit analysis required by Section 5(n). *Kochava*, 671 F. Supp. 3d at 1176. In the end, Defendants' arguments to the contrary are baseless attempts to impose a pleading standard that is much higher than the law requires. *See Roca Labs*, 345 F. Supp. 3d at 1396 (holding, at summary judgment, that "the Court is unpersuaded that such a quantitatively precise cost-benefits analysis is required").

## IV.    CONCLUSION

For the foregoing reasons, the FTC respectfully requests the Court deny Kochava's motion to dismiss.

Respectfully submitted,

Dated: October 28, 2024

/s Brian Shull

BRIAN SHULL
JULIA A. HORWITZ

---

[10] The FTC disputes whether there are *any* countervailing benefits to Defendants' practices. In the cost-benefit analysis, Defendants cannot claim a purported benefit that would still be available if consumers were presented with a free and informed choice. *See Amazon*, 2016 WL 10654030, at *10 (discounting proffered benefit because it was "not incompatible with the practice of affirmatively seeking a customer's authorized consent to a charge"). Each of the purported benefits improperly identified by Defendants in their brief (Mot. at 19) would still be available to consumers if consumers were provided with the ability to consent to them.

ELIZABETH C. SCOTT
DAVID WALKO

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION